## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **COMMODITY FUTURES TRADING COMMISSION,** | |
| **Plaintiff,** | |
| v. | Case No.: |
| **EDDY ALEXANDRE and EMINIFX, INC.** | |
| **Defendants.** | |

## COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL MONETARY PENALTIES AND OTHER EQUITABLE RELIEF

The Commodity Futures Trading Commission ("CFTC" or "Commission"), an independent federal agency, by and through its attorneys hereby alleges as follows:

### I.     INTRODUCTION

1.     From at least September 2021 through the present ("Relevant Period"), Defendant Eddy Alexandre, individually and as principal and agent of EminiFX, Inc. ("EminiFX"), has fraudulently solicited, accepted, and pooled at least $59 million from hundreds of members of the general public ("participants") to purportedly trade foreign currency exchange ("forex") and cryptocurrencies as well as futures and options in an investment club, when in fact the Defendants misappropriated the vast majority of participant funds to pay participants in a Ponzi-like scheme or for Alexandre's personal expenses.

2.     Defendants, by and through Alexandre and other promoters, have been making misrepresentations of material fact when soliciting funds from existing and prospective participants, such as promising that participants were guaranteed a return of at least 5% "every

1

single week" from trading commodity interests.  In addition, Defendants have omitted material

facts such as:  (1) they traded only a portion of the participants' funds; (2) Defendants suffered

large trading losses in the funds that were actually traded on behalf of participants;

(3) Defendants commingled and misappropriated participants' funds; and (4) neither Defendant

was registered with the CFTC as required by federal law.

3.     By engaging in this conduct and the conduct further described herein, Defendants

have engaged, are engaging, or are about to engage in violations of the Commodity Exchange

Act ("Act"), 7 U.S.C. §§ 1-26, and CFTC Regulations ("Regulation"), 17 C.F.R. pts. 1-190

(2021), including, but not limited to:  solicitation fraud and fraud by misappropriation, in

violation of Sections 4b(a)(1)-(2) of the Act, 7 U.S.C. § 6b(a)(1)-(2), and Regulation 5.2(b),

17 C.F.R. § 5.2(b); fraud by a commodity pool operator ("CPO"), in violation of Section

4o(1)(A) and (B), 7 U.S.C. § 6o(1)(A), (B); the employment, or attempted employment, of

manipulative or deceptive devices and contrivances, in violation of Section 6(c)(1) of the Act,

7 U.S.C. § 9(1) and Regulation 180.1(a)(1)-(3), 17 C.F.R. § 180.1(a)(1)-(3) (2021).

4.     Furthermore, by engaging in a business that is of the nature of a commodity pool

and soliciting and accepting funds for the purpose of trading in commodity interests, EminiFX

acted as a CPO without registering with the CFTC, thereby escaping regulatory scrutiny into its

activities and violating Sections 2(c)(2)(C)(iii)(I)(cc) and 4m(1) of the Act, 7 U.S.C.

§§ 2(c)(2)(C)(iii)(I)(cc), 6m(1), and Regulation 5.3(a)(2)(i), 17 C.F.R. § 5.3(a)(2)(i) (2021).

5.     Similarly, Defendant Alexandre solicited funds for participation in a pooled

investment vehicle for the purpose of trading in commodity interests while associated with

Defendant EminiFX as an officer, employee, or agent, without being registered with the

Commission as an associated person ("AP") of EminiFX, in violation of Sections

2(c)(2)(C)(iii)(I)(cc) and 4k(2) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6k(2), and 17 C.F.R. § 5.3(a)(2)(ii) (2021).

6.     Unless immediately restrained and enjoined by this Court, Defendants are likely to continue engaging in the acts and practices alleged in this Complaint, and funds they fraudulently obtained are likely to be misappropriated or otherwise dissipated.  Accordingly, the CFTC brings this action pursuant to Section 6c of the Act, 7 U.S.C. §13a-1, to enjoin Defendants' unlawful acts and practices and to compel their compliance with the Act.  The CFTC also seeks civil monetary penalties and remedial ancillary relief, including restitution to defrauded participants, disgorgement, pre- and post-judgment interest, and such other equitable relief as this Court may deem necessary.

## II.     JURISDICTION AND VENUE

7.     This Court has jurisdiction over this action under 28 U.S.C. § 1331 (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).  In addition, Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a), provides that U.S. district courts have jurisdiction to hear actions brought by the Commission for injunctive and other relief or to enforce compliance with the Act whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

8.     Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), because Defendants transacted business in this District, EminiFX has a business

address in this district, and certain of the acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this District, among other places.

### III.    PARTIES

9.      Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with administering and enforcing the Act and CFTC Regulations.

10.      Defendant **Eddy Alexandre** resides in Valley Stream, New York.  Alexandre has never been registered with the CFTC in any capacity.  Alexandre has twice previously filed voluntary Chapter 13 Bankruptcy actions in the U.S. Bankruptcy Court for the Eastern District of New York under the name Eddy Alexandre.  *See In re Eddy Alexandre*, Pet. No. 8-19-71208-reg (Brktcy. E.D.N.Y.) (dismissed for other reason May 24, 2019), and *In re Eddy Alexandre*, Pet. No. 8-17-72196-las (Brktcy. E.D.N.Y.) (dismissed for other reason May 30, 2017).

11.      Defendant **EminiFX, Inc.** was incorporated in New York on September 20, 2021. During the Relevant Period, EminiFX operated out of Alexandre's residence in Valley Stream, New York, and also out of an office in Manhattan, New York.  EminiFX has never been registered with the CFTC in any capacity.

### IV.    FACTUAL ALLEGATIONS

12.      On September 21, 2021, Alexandre opened a business bank account at Bank A in the name of EminiFX.  The account was opened identifying Alexandre as the main contact and identified Alexandre's home address as EminiFX's address.  Alexandre was the sole signatory on the account.

4

13.     Ultimately, EminiFX opened several bank accounts at Bank A (the "EminiFX Accounts").  Alexandre was the sole signatory on all of the EminiFX accounts until February 25, 2022, when another individual was added as a signatory on some accounts.

14.     Beginning in October 2021, Alexandre solicited participants to submit contributions to himself and/or EminiFX for the purpose of trading commodity interests in a purported investment club.  On the EminiFX website, Defendants represented that funds would be used to trade forex and cryptocurrencies.  In other promotional materials, Defendants also suggested that they would trade options and futures as well.

15.     Thus far, Defendants have accepted at least $59 million into the EminiFX Accounts from hundreds of participants.  These contributions were made by participants depositing cash to an EminiFX Account in at least 99 separate Bank A branches, by participants writing checks to EminiFX, by wire transfer, by participants sending funds through Zelle to Alexandre's personal bank account, and by other means.

16.     References for some of the participant deposits include "investment," "business," "other club investment," "business matters," "open account," "repay loan," "funding account," "transfer for investment," "capital investment," "market investment," "deposit into currency trading account," "payment," "group investment," "services for club investments," "services," "Eminifx," and "investment in cryptocurrencies," and often included various participant user IDs.

17.     Despite Defendants' representations that they would use participants' funds to trade forex and cryptocurrency, only about $9 million appears to have been sent to a futures commission merchant ("FCM 1") for trading purposes.  The funds were deposited in an account in Alexandre's name at FCM 1 but were not actually used to trade forex or cryptocurrencies.

Rather, they were used to trade stocks, broad-based index futures, including E-mini S&P 500 futures contracts, E-mini Nasdaq 100 futures contracts, E-mini Russell 2000 futures contracts, and Dow Futures Mini contracts.

18.     Much of the remaining funds were used to pay expenses, including Alexandre's personal expenses.  At least $14,700,000 in participant funds was send to Alexandre's personal checking account, and other amounts appear to have been sent to Alexandre's associates.

*Misrepresentations, Omissions and False Statements*

19.     Throughout the Relevant Period,  Defendants solicited prospective participants to contribute to the "investment club" through the EminiFX website, weekly Zoom webinars, in-person meetings and events, and through a network of promotors on YouTube and social media.

20.     According to the EminiFX website, participants could build wealth "with investments in the crypto and forex trading business by signing on with eminiFX."  The EminiFX website also touted its "Robo-Advisor Assisted account" that allowed for "automated trading."

21.     Defendants promised potential participants that they would receive guaranteed returns of at least 5% "every single week," on any amounts contributed to EminiFX.  In fact, after participants created and funded accounts with EminiFX, each Friday their online accounts showed that the participants' balances increased by between 5% and 9.99% over the prior week.

22.     The participants' increasing account balances gave the impression that EminiFX was profitably trading the participants' contributions.  This was false.  The vast majority of participants' contributions were not traded, but rather were kept in EminiFX accounts at Bank A, spent by Alexandre, transferred to others, or transferred to accounts in the name of Alexandre.

23.     Only about $9 million in participant contributions were transferred to an account in Alexandre's name at FCM 1.  Alexandre used these funds, transferred in December 2021 and January 2022, to trade securities futures and options and stock index futures with disastrous results.  By April 27, 2022, Alexandre had lost nearly 70% of the amount he had transferred—about $6.2 million—through unprofitable trading and fees.  But Defendants did not inform participants that a large portion of their funds had been lost in unprofitable trading.  Rather, Defendants continued to report to participants that their account balances were actually increasing by 5% to 9.99% every week.

24.     On at least one Zoom webinar on April 7, 2022, Alexandre encouraged potential participants to make large contributions to EminiFX in order to quickly become millionaires due to the weekly compounding interest.  Alexandre reported, falsely, that 10 EminiFX participants had become millionaires in the past week and that Alexandre had called each of those participants personally to give them tips on how to live the "millionaire lifestyle."

25.     Prior to founding EminiFX and misappropriating participant funds, Alexandre was not himself a millionaire.  In fact, he had declared bankruptcy in 2019.  According to Alexandre's bankruptcy filing, his net worth was negative $122,838.92, and his total financial assets—including cash, checking accounts, accounts, and retirement accounts—amounted to only $6,000.

26.     In sum, Defendants made at least the following false statements to participants and potential participants:

   a.  Trading would be done through a "Robo-Advisor Assisted account" that allowed for automatic trading;

   b.  Participants were guaranteed returns of 5% per week;

   c.  Participants' account balances were actually growing;

27.    Defendants omitted the following information from participants and potential

participants:

   a.   Most of the amounts contributed would actually not be used to trade, but rather
        would be used to pay Defendants' expenses, misappropriated by Alexandre sent
        to Alexandre's friends and associates, or simply held in checking or savings
        accounts at Bank A;

   b.   Alexandre did not have a history of financial success, and had declared
        bankruptcy in 2019;

   c.   Alexandre was not registered to trade participant funds;

   d.   Alexandre incurred enormous losses in the participant funds that he actually did
        trade;

   e.   Any returns obtained by EminiFX would come from contributions of other
        participants in the manner of a Ponzi scheme;

28.    Defendants made these misrepresentations and omissions willfully or with

reckless disregard for their truth and by use of the mails or other means or instrumentalities of

interstate commerce.

29.    Defendants made these misrepresentations and omissions in order to solicit

participants and potential participants to contribute funds to Alexandre and EminiFX.

30.    Based on Defendants' misrepresentations and omissions, hundreds of participants

contributed tens of millions of dollars to Alexandre and EminiFX.

*Misappropriation of Participant Funds*

31.    During the Relevant Period, Alexandre misappropriated participant funds by use

of the mails or other means or instrumentalities of interstate commerce.  Among the

unauthorized and improper uses of participant funds have been funds that he sent to his personal

bank accounts, used to pay personal expenses, sent to associates, donated to charities of his

choosing, and used to pay other participants in the manner of a Ponzi scheme.

32.     At least $14,700,000 of participant funds deposited into and commingled in the EminiFX Accounts has been transferred to Alexandre's personal accounts at Bank A (the "Personal Accounts").

33.     Additionally, the participant funds transferred to FCM 1 for trading purposes were sent to an account in the name of Alexandre, not EminiFX or the names of any individual participants.

34.     Some participant funds were distributed to individuals, including at least $200,000 to one individual.  Additional participant funds were donated to charities selected by Alexandre.

35.     Alexandre also used participant funds to pay for business and personal expenses. For example, Alexandre used participant funds to make payments to BMW, Mercedes Benz, Saks Fifth Avenue, flights, luxury hotels and apparel, and occupational and physical therapy. Alexandre also used substantial participant funds to rent and furnish office space for EminiFX and to throw "galas" on behalf of EminiFX, which Defendants used to solicit additional contributions from participants.

*EminiFX Acted as an Unregistered CPO, and Alexandre Acted as an Unregistered AP of a CPO*

36.     During the Relevant Period, EminiFX, through Alexandre, acted as a CPO by operating or soliciting funds for a pooled investment vehicle and that engages in retail forex transactions without limiting participation to Eligible Contract Participants ("ECPs").  For an individual to qualify as an ECP, he or she must have invested on a discretionary basis at least $10 million, or at least $5 million if the investments are in order to hedge risk.  Section 1a(18)(A)(xi) of the Act.

37.     During the Relevant Period, Alexandre acted in a capacity requiring registration as an AP of a CPO by soliciting customers and prospective customers for participation in a

pooled investment vehicle, while associated with EminiFX as a partner, officer, employee, or similar agent.

38.     During the Relevant Period, EminiFX was not registered with the Commission as a CPO, and Alexandre was not registered with the Commission as an AP of a CPO as required by the Act and Regulations.

## V.     VIOLATIONS OF THE COMMODITY EXCHANGE ACT

### COUNT I – AGAINST ALEXANDRE AND EMINIFX

**Violations of 7 U.S.C. § 6b(a)(1)(A), (C)**
**Fraud by Misrepresentations, Material Omission and Misappropriation in connection with a commodity for future delivery on or subject to the rules of a designated contract market**

39.     The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

40.     Section 4b(a)(1)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(1)(A) and (C), in relevant part, makes it unlawful for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person:  (A) to cheat or defraud or attempt to cheat or defraud such other person or (C) willfully to deceive or attempt to deceive such other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for such other person.

41.     Defendants violated 7 U.S.C. § 6b(a)(1)(A) and (C) during the Relevant Period by making misrepresentations and omissions of material fact to participants and prospective participants, including, among other things, mispresenting the expected profits and risk of loss; failing to disclose that Alexandre's trading had resulted in large losses; and failing to disclose

that Alexandre was misappropriating participant funds for personal benefit and that he used participant funds to pay other participants, in the manner of a Ponzi scheme; and failing to disclose that EminiFX was not registered with the CFTC as a CPO and Alexandre was not registered with the CFTC as an AP.

42.     Defendants also violated 7 U.S.C. § 6b(a)(1)(A) and (C) during the Relevant Period by misappropriating participant funds for personal benefit, including paying for luxury vehicles and apparel and using participant funds to pay other participants, in the manner of a Ponzi scheme.

43.     Alexandre directly or indirectly controls EminiFX, and did not act in good faith or knowingly induced, directly or indirectly, EminiFX's violations alleged in this Count, and is thus liable for EminiFX's violations pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b).

44.     The foregoing acts, omissions and failures of Alexandre as alleged in this Count, and of all other agents of EminiFX, occurred and are occurring within the scope of their employment, office or agency with EminiFX; therefore, EminiFX is liable for these acts, omissions and failures pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2 (2021).

45.     Each act of misrepresenting and omitting material information, including, but not limited to, those specifically alleged herein, and each act of misappropriation, constitutes a separate and distinct violation of 7 U.S.C. § 6b(a)(1)(A) and (C).

### COUNT II – AGAINST ALEXANDRE AND EMINIFX

**Violations of 7 U.S.C. § 6b(a)(2)(A), (C) and 17 C.F.R. § 5.2(b)(1), (3):**
**Fraud by Misrepresentations, Material Omission and Misappropriation in connection with forex other than on or subject to the rules of a designated contract market**

46.     The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

11

47.     Section 4b(a)(2)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(2)(A) and (C), in relevant part, makes it unlawful for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery that is made, or to be made, other than on or subject to the rules of a designated contract market, for or on behalf of any other person:  (A) to cheat or defraud or attempt to cheat or defraud such other person or (C) willfully to deceive or attempt to deceive such other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for such other person.

48.     Section 2(c)(2)(C) of the Act, 7 U.S.C. § 2(c)(2)(C), among other things, contains three grants which make clear that the CFTC has jurisdiction over, and that certain antifraud provisions in the Act apply to, retail forex:

    a.   Pursuant to 7 U.S.C. § 2(c)(2)(C)(ii)(I), forex agreements, contracts, or transactions described in 7 U.S.C. § 2(c)(2)(C)(i) "shall be subject to" the antifraud provisions of 7 U.S.C. §§ 6b and 6*o*, among other Sections of the Act;

    b.   Pursuant to 7 U.S.C. § 2(c)(2)(C)(iv), 7 U.S.C. § 6b "shall apply to" the forex agreements, contracts, or transactions described in 7 U.S.C. § 2(c)(2)(C)(i) "as if" they were a contract of sale of a commodity for future delivery; and

    c.   Pursuant to 7 U.S.C. § 2(c)(2)(C)(vii), "[t]his Act applies to, and the Commission shall have jurisdiction over an account or pooled investment vehicle . . . that is offered for the purpose of trading, or that trades," forex agreements, contracts, or transactions described in 7 U.S.C. § 2(c)(2)(C)(i).

49.     The foreign currency transactions offered by Defendants are retail forex transactions pursuant to Regulation 5.1(m), 17 C.F.R. § 5.1(m) (2021).  Regulation 5.2(b)(1) and (3), 17 C.F.R. § 5.2(b)(1), (3) (2021), makes it unlawful "for any person, by use of the mails or by any means or instrumentality of interstate commerce, directly or indirectly, in or in connection with any retail forex transaction:  (1) [t]o cheat or defraud or attempt to cheat or defraud any person; or (3) [w]illfully to deceive or attempt to deceive any person by any means whatsoever."

50.     Defendants violated 7 U.S.C. § 6b(a)(2)(A) and (C) and 17 C.F.R. § 5.2(b)(1) and (3) during the Relevant Period by, among other things, making misrepresentations and omissions of material fact to participants and prospective participants, including, among other things, mispresenting the expected profits and risk of loss; failing to disclose that Alexandre's trading had resulted in large losses; and failing to disclose that Alexandre was misappropriating participant funds for personal benefit and that he used participant funds to pay other participants, in the manner of a Ponzi scheme; and failing to disclose that EminiFX was not registered with the CFTC as a CPO and Alexandre was not registered with the CFTC as an AP.

51.     Defendants also violated 7 U.S.C. § 6b(a)(2)(A) and (C) and 17 C.F.R. § 5.2(b)(1), (3) during the Relevant Period by misappropriating participant funds for personal benefit, including paying for luxury vehicles and apparel and using participant funds to pay other participants, in the manner of a Ponzi scheme.

52.     Alexandre directly or indirectly controls EminiFX, and did not act in good faith or knowingly induced, directly or indirectly, EminiFX's violations alleged in this Count, and is thus liable for EminiFX's violations pursuant to 7 U.S.C. § 13c(b).

53.     The foregoing acts, omissions and failures of Alexandre as alleged in this Count, and of all other agents of EminiFX, occurred and are occurring within the scope of their employment, office or agency with EminiFX; therefore, EminiFX is liable for these acts, omissions and failures pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2.

54.     Each act of misrepresenting and omitting material information, including, but not limited to, those specifically alleged herein, and each act of misappropriation, constitutes a separate and distinct violation of 7 U.S.C. § 6b(a)(2)(A) and (C).

## COUNT III – AGAINST ALL DEFENDANTS

**Violations of 7 U.S.C. § 6*o*(1)(A)-(B): Fraud by a CPO and an Associated Person of a CPO**

55.     The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

56.     Section 4*o*(1)(A)-(B) of the Act, 7 U.S.C. § 6*o*(1)(A)-(B), makes it unlawful for any commodity pool operator or associated person of a commodity pool operator, "by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly" (A) "to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant" or (B) "to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant."

57.     During the Relevant Period, EminiFX, through Alexandre, acted as a CPO by being engaged in a business that is the nature of a commodity pool and in connection with soliciting funds for the purpose of trading in futures, options, and forex, and actually trading pooled funds in futures.

58.     Alexandre acted as an AP of a CPO because he was associated with a CPO as a partner, officer, employee, consultant, or agent in a capacity that involved the solicitation of funds, securities, or property for participation in a pooled investment vehicle.

14

59.     EminiFX, through Alexandre, and Alexandre in his individual capacity, violated 7 U.S.C. § 6*o*(1)(A)-(B) during the Relevant Period by making misrepresentations and omissions of material fact to participants and prospective participants, including, among other things, mispresenting the expected profits and risk of loss; failing to disclose that Alexandre's trading had resulted in large losses; and failing to disclose that Alexandre was misappropriating participant funds for personal benefit and that he used participant funds to pay other participants, in the manner of a Ponzi scheme; and failing to disclose that EminiFX was not registered with the CFTC as a CPO and Alexandre was not registered with the CFTC as an AP.

60.     Alexandre also violated 7 U.S.C. § 6*o*(1)(A)-(B) during the Relevant Period by misappropriating participant funds for personal benefit, including to make payments to BMW, Mercedes Benz, Saks Fifth Avenue, flights, luxury hotels and apparel, and occupational and physical therapy.

61.     Alexandre directly or indirectly controls EminiFX, and did not act in good faith or knowingly induced, directly or indirectly, EminiFX's violations alleged in this Count, and is thus liable for EminiFX's violations pursuant to 7 U.S.C. § 13c(b).

62.     The foregoing acts, omissions and failures of Alexandre as alleged in this Count, and of all other agents of EminiFX, occurred and are occurring within the scope of their employment, office or agency with EminiFX; therefore, EminiFX is liable for these acts, omissions and failures pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2.

63.     Each act of misrepresenting and omitting material information, including, but not limited to, those specifically alleged herein, and each act of misappropriation, constitutes a separate and distinct violation of 7 U.S.C. § 6*o*(1)(A)-(B).

## COUNT IV – AGAINST ALL DEFENDANTS

**Violations of 7 U.S.C. § 9(1), and 17 C.F.R. § 180.1(a)(1)-(3) (2021): Fraud by use of a manipulative device or contrivance.**

64.     The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

65.     Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) makes it unlawful for any person, directly or indirectly, to use or employ, or attempt to use or employ, in connection with any swap or contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance, including in contravention of Regulation 180.1 (a)(1)-(c), 17 C.F.R. § 180.1(a)(1)-(c).

66.     The Regulations at 17 C.F.R. § 180.1(a) provide, in relevant part, that it shall be unlawful for any person, directly or indirectly, in connection with any contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly:  (1) use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud; (2) make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; or (3) engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person.

67.     Defendants, directly or indirectly, in connection with contracts of sale of commodities in interstate commerce, and contracts for future delivery on or subject to the rules of a registered entity, intentionally or recklessly:  used or employed, or attempted to use or employ, a scheme or artifice to defraud; including by making misrepresentations and omissions of material fact to participants and prospective participants, including, among other things,

16

mispresenting the expected profits and risk of loss; failing to disclose that Alexandre's trading

had resulted in large losses; and failing to disclose that Alexandre was misappropriating

participant funds for personal benefit and that he used participant funds to pay other participants,

in the manner of a Ponzi scheme; and failing to disclose that EminiFX was not registered with

the CFTC as a CPO and Alexandre was not registered with the CFTC as an AP

68.     As a result of the foregoing conduct, Defendants' fraudulent conduct violated

7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)-(3).

69.     Alexandre directly or indirectly controls EminiFX, and did not act in good faith or

knowingly induced, directly or indirectly, EminiFX's violations alleged in this Count, and is thus

liable for EminiFX's violations pursuant to 7 U.S.C. § 13c(b).

70.     The foregoing acts, omissions and failures of Alexandre as alleged in this Count,

and of all other agents of EminiFX, occurred and are occurring within the scope of their

employment, office or agency with EminiFX; therefore, EminiFX is liable for these acts,

omissions and failures pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2.

71.     Each use or employment or attempted use or employment of any manipulative

device, scheme, or artifice to defraud; untrue or misleading statement of fact, omission of

material fact necessary to make statements not untrue or misleading; or act of engaging, or

attempting to engage, in acts, practices or courses of business that operated or would have

operated as a fraud or deceit on participants and potential participants during the Relevant Period

is alleged as a separate and distinct violation of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)-(3).

## COUNT V – AGAINST EMINIFX

**Violations of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc) and 6m(1), and 17 C.F.R. § 5.3(a)(2)(i):
Failure to Register as a CPO**

72.     The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

73.     Section 1a(10) of the Act, 7 U.S.C. § 1a(10), defines the term "commodity pool" to mean "any investment trust, syndicate, or similar form of enterprise operated for the purpose of trading in commodity interests, including any—(i) commodity for future delivery, security futures product, or swap; (ii) agreement, contract, or transaction described in section 2(c)(2)(C)(i) or section 2(c)(2)(D)(i); (iii) commodity option authorized under section 4c; or (iv) leverage transaction authorized under section 19 [of the Act]."

74.     7 U.S.C. § 1a(11) defines a CPO as any person "engaged in a business that is of the nature of a commodity pool, investment trust, syndicate or similar form of enterprise and who, in connection therewith, solicits, accepts, or receives from others, funds, securities or property . . . for the purpose of trading in commodity interests."

75.     Section 2(c)(2)(C)(iii)(I)(cc) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc) makes it unlawful for any person, unless registered as a CPO, to operate or solicit funds for any pooled investment vehicle in connection with any forex contract that accepts non-ECPs.  In addition, Section 4m(1) of the Act, 7 U.S.C. § 6m(1), makes it unlawful for any CPO, unless registered with the CFTC, to make use of the mails or any means or instrumentality of interstate commerce in connection with its business as a CPO, and Regulation 5.3(a)(2)(i), 17 C.F.R. § 5.3(a)(2)(i), requires anyone acting as a CPO for a pooled investment vehicle that engages in retail forex transactions to register as a CPO.

76.     EminiFX acted as a CPO by soliciting potential pool participants to contribute funds to be used to supposedly trade commodity futures and retail forex transactions.  EminiFX further acted as a CPO by actually using pooled participant funds to trade commodity futures, including E-mini S&P 500 futures contracts, E-mini Nasdaq 100 futures contracts, E-mini Russell 2000 futures contracts, and Dow Futures Mini contracts in the FCM A accounts.

77.     During the Relevant Period, EminiFX, which was not exempt from registration as a CPO, acted as a CPO and made use of the mails or any means or instrumentality of interstate commerce in connection with its business as a CPO by operating or soliciting funds from non-ECPs for a pooled investment vehicle.  EminiFX engaged in this conduct without being registered with the Commission as a CPO in violation of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc) and 6m(1), and 17 C.F.R. § 5.3(a)(2)(i).

### COUNT VI – AGAINST ALEXANDRE

**Violations of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc) and 6k(2), and 17 C.F.R. § 5.3(a)(2)(ii): Failure to Register as an AP of a CPO**

78.     The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

79.     During the Relevant Period, Defendant Alexandre acted as an associated person of a CPO by accepting or soliciting funds, securities, or property from non-ECPs for the EminiFX pooled investment vehicle, in connection with forex and commodity futures transactions.  Alexandre engaged in this conduct without being registered with the Commission as an AP of CPO EminiFX, in violation of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6k(2), and 17 C.F.R. § 5.3(a)(2)(ii).

## VI.    RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by

Section 6c of the Act, 7 U.S.C. § 13a-1, and pursuant to its own equitable powers:

A.    Find that Defendants Alexandre and EminiFX violated Sections 2(c)(2)(C)(iii)(I)(cc),

4b(a)(1)(A), (C), 4b(a)(2)(A), (C), 4o(1)(A)-(B), and 6(c)(1) of the Act, 7 U.S.C.

§§ 2(c)(2)(C)(iii)(I)(cc), 6b(a)(1)(A), (C), 6b(a)(2)(A), (C), 6o(1)(A)-(B), 9(1) and

Regulations 5.2(b)(1)-(3) and 180.1(a)(1)-(3), 17 C.F.R. §§ 5.2(b) (1)-(3), 180.1(a)(1)-

(3) (2021);

B.    Find that Defendant EminiFX violated Sections 2(c)(2)(C)(iii)(I) and 4m(1) of the

Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc) and 6m(1), and 5.3(a)(2)(i), 17 C.F.R.

§5.3(a)(2)(i) (2021);

C.    Find that Defendant Alexandre violated Sections 2(c)(2)(C)(iii)(I) and 4k(2) of the

Act, 7 U.S.C. § 6k(2), and 17 C.F.R. § 5.3(a)(2)(ii) (2021);

D.    Enter an order of permanent injunction restraining, enjoining, and prohibiting

Defendant Alexandre, and his affiliates, agents, servants, employees, successors,

assigns, attorneys, and all persons or entities in active concert with him, who receive

actual notice of such order by personal service or otherwise, from engaging in the

conduct described above, in violation of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6b(a)(1)(A)

and (C), 6b(a)(2)(A) and (C), 6o(1)(A)-(B), 6k(1), and 6(c)(1), and 17 C.F.R.

§§ 5.2(b) (1) and (3), 5.3(a)(2)(ii), and 180.1(a)(1)-(3);

E.    Enter an order of permanent injunction restraining, enjoining, and prohibiting

Defendant EminiFX, and its affiliates, agents, servants, employees, successors,

assigns, attorneys, and all persons or entities in active concert with it, who receive

actual notice of such order by personal service or otherwise, from engaging in the

conduct described above, in violation of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6b(a)(1)(A) and (C), 6b(a)(2)(A) and (C), 6o(1)(A)-(B), 6m(1), and 6(c)(1), and 17 C.F.R. §§ 5.2(b) (1) and (3), 5.3(a)(2)(i), and 180.1(a)(1)-(3);

F.    Enter an order of permanent injunction enjoining Alexandre and EminiFX, and their affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons or entities in active concert with them, who receive actual notice of such order by personal service or otherwise, from directly or indirectly:

  a.    Trading on or subject to the rules of any registered entity (as that term is defined by Section la(40) of the Act, 7 U.S.C. § la(40));

  b.    Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2021)) or digital assets for accounts held in the name of Alexandre or EminiFX or for accounts in which Alexandre or EminiFX has a direct or indirect interest;

  c.    Having any commodity interests or digital assets traded on Alexandre's or EminiFX's behalf;

  d.    Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests or digital assets;

  e.    Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests or digital assets;

  f.    Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or

exemption from registration with the CFTC, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2021); and

g.   Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2021)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the CFTC, except as provided for in 17 C.F.R. § 4.14(a)(9).

G.   Enter an order directing Alexandre and EminiFX, as well as any third-party transferee and/or successors thereof, to disgorge, pursuant to such procedure as the Court may order, all benefits received, including, but not limited to, salaries, commissions, loans, fees, revenues, and trading profits derived, directly or indirectly, from acts or practices which constitute violations of the Act and Regulations as described herein, including pre-judgment and post-judgment interest;

H.   Enter an order requiring Alexandre and EminiFX, as well as any successors thereof, to make full restitution to every person who has sustained losses proximately caused by the violations described herein, including pre-judgment and post-judgment interest;

I.   Enter an order directing Alexandre and EminiFX, as well as any successors thereof, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between, with, or among Defendants and any of the participants whose funds were received by Defendants as a result of the acts and practices that constituted violations of the Act and Regulations, as described herein;

J.   Enter an order directing Alexandre and EminiFX to pay a civil monetary penalty assessed by the Court, in an amount not to exceed the penalty prescribed by Section

6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1), as adjusted for inflation pursuant to the

Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L.

114-74, tit. VII, § 701, 129 Stat. 584, 599–600, see Regulation 143.8, 17 C.F.R.

§ 143.8 (2022), for each violation of the Act and Regulations, as described herein;

K.    Enter an order requiring the Alexandre and EminiFX to pay costs and fees as

permitted by 28 U.S.C. §§ 1920 and 2413(a)(2); and

L.    Enter an order providing such other and further relief as this Court may deem

necessary and appropriate under the circumstances.


Dated: May 11, 2022                    Respectfully submitted,


                                       COMMODITY FUTURES TRADING
                                       COMMISSION

                                       Elizabeth Streit
                                       Douglas Snodgrass
                                       U.S. Commodity Futures Trading Commission
                                       Division of Enforcement
                                       77 W Jackson Blvd, Suite 800
                                       Chicago, Illinois 60604
                                       (312) 596-0537 (Streit)
                                       (312) 596-0663 (Snodgrass)
                                       estreit@cftc.gov
                                       dsnodgrass@cftc.gov