

**FORCHELLI DEEGAN TERRANA**

GERARD R. LUCKMAN
PARTNER
DIRECT DIAL: (516) 812-6291
GLUCKMAN@FORCHELLILAW.COM

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 08/01/2022
```

**MEMO ENDORSED**

July 27, 2022

**VIA ECF**

Hon. Valerie E. Caproni
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

    Re:    *CFTC v. Alexandre and EminiFX, Inc.*, No. 22 Civ. 3822 (VEC)
             Receiver's Response to 34th Street Suites LLC's Letter [Docket No. 69]

Dear Judge Caproni:

    We are counsel to David Castleman, the court-appointed receiver (the "Receiver") over Defendant EminiFX, Inc. ("EminiFX") and certain assets of Defendant Eddy Alexandre ("Alexandre"). Pursuant to Your Honor's instruction, we are respectfully responding to the letter filed by 34th Street Suites LLC ("Suites") dated July 14, 2022, ECF Doc. No. 69.

    Contrary to Suites' assertions, and as addressed more fully below, by letters dated June 30, 2022, the Receiver properly rejected EminiFX's license agreement ("License Agreement") with Suites for certain space at 31 West 34th Street, New York, New York and returned the keys to the space. Copies of such letters are found attached hereto at Exhibits A and B, respectively. Further, in the letter rejecting the License Agreement, the Receiver requested that Suites provide a full accounting of the significant deposit ("Deposit") paid to Suites by EminiFX and sought its return. To date, Suites has not provided this information.

    Suites claims that the Deposit is owned by Suites. New York law, however, provides that a tenant's deposit "with interest accruing thereon, if any, until repaid or so applied, shall continue to be the money of the person making such deposit or advance and shall be held in trust by the person with whom such deposit or advance shall be made and shall not be mingled with the personal moneys or become an asset of the person receiving the same." N.Y. Gen. Obl. Law § 7-103(1). New York law expressly prohibits any agreement to allow a landlord to comingle tenant deposits as a matter of public policy. *See* N.Y. Gen. Obl. Law § 7-103(3) (any contractual

Page 2

provision "whereby a person who deposits or advances money waives any provision of this section is absolutely void"); *see also Jeffrey v. J.I.M. Mgmt. Co.*, 31 Misc. 3d 141(A), 929 N.Y.S.2d 200 (App. Term 2011) ("commingling of a security deposit with a landlord's personal funds is a conversion, which gives a tenant an immediate right of recovery"); *LeRoy v. Sayers*, 217 A.D.2d 63, 68 (N.Y. App. Div. 1995) (obligation not to commingle survives purported repudiation of lease). In its letter, Suites argues that the Deposit was a payment made by EminiFX which was a "payment in good faith, in the ordinary course of business and for valuable consideration". The Deposit was not a payment, but rather was specifically defined as a "Security Deposit" on page 1 of the lease (Ex. A, ¶ 1(m)).

The Deposit is, at present, the money of EminiFX (*i.e.*, "the person making such deposit"). Pursuant to Paragraph 43(a) of the Consent Preliminary Injunction entered into in this matter (the "Consent PI," Dkt. No. 56), which requires turnover to the Receiver of "all funds, assets, property, and all other assets, owned beneficially or otherwise, *wherever situated*, by the EminiFX Receivership Defendants, the Receiver appropriately demanded that the Deposit be turned over to him.

Suites also takes exception to the Receiver's rejection of the License Agreement. Suites conflates the issue of whether the License Agreement is an executory contract with whether it is a complete agreement. The Receiver, as well as courts in this Circuit, adopted the definition proposed by Professor Vern Countryman, who in 1973 defined an executory contract as "[a] contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." Vern Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn. L. Rev. 439, 460 (1973). Here, EminiFX had an obligation to pay a monthly fee and Suites had an obligation to continue to provide access to the licensed space and certain services, making the License Agreement a clear example of an executory contract.

It is well-settled law that receivers may repudiate contracts and leases. *See Pa. Steel Co. v. N.Y.C. Ry. Co.*, 198 F. 721, 744 (2d Cir. 1912). When a receiver "rejects a contract, his rejection relates back to the beginning of the receivership and the breach of the contract takes place as of that time." *Id.* Receivership caselaw is clear that federal equity receivers are under no obligation to affirmatively reject an executory contract. *See Samuels v. E.F. Drew & Co.*, 292 F. 734, 739 (2d Cir. 1923) ("The receiver is under no obligation to renounce an executory contract. The contract is terminated, even though the receiver never renounces.". Instead, "[t]here is a presumption that the receiver will not adopt a contract. If he does, it is a voluntary act of his own, to be performed with promptness." *Id.*; *see also Menke v. Willcox*, 275 F. 57, 58–59 (S.D.N.Y. 1921) (Learned Hand, J.) ("[T]he mere inaction of receivers, where they do not enjoy any benefits from assets *cum onere*, is never of itself an adoption, though it may endanger their right to adopt. In order to be bound, they must positively indicate their intention to take it over"). Here, the Receiver never expressed an intention to be bound and, notwithstanding the ability to have the rejection relate back to the commencement of the receivership, paid Suites rent for the time the receivership estate

Page 3

was utilizing the space.[1] The License Agreement is onerous and the space not needed for the Receiver to conduct his duties. Accordingly, it was appropriate for the Receiver to reject the License Agreement. "The power to permit rejection of an executory contract should be exercised where rejection is to the advantage of the estate. Where the contract is detrimental, its rejection should be permitted." *In re Klaber Bros., Inc.*, 173 F. Supp. 83, 85 (S.D.N.Y. 1959).

Moreover, by providing notice of the rejection, the Receiver provided Suites with time to mitigate its damages. In cases where a receiver rejects an executory contract, "there is need for mitigation of damages, which is more striking than in the ordinary case." *Samuels v. E.F. Drew & Co.*, 292 F. 734, 739 (2d Cir. 1923); *see also Janvey v. Alguire*, No. 3:09-CV-0724, 2014 WL 12654910, at *10 (N.D. Tex. July 30, 2014), aff'd, 847 F.3d 231 (5th Cir. 2017). Here, rather than inaction, the Receiver advised of the rejection and advised Suites that it should mitigate damages.

In connection with his demand for the return of the Deposit, the Receiver advised Suites that the return would be without prejudice to any right it may have to assert a claim against the receivership estate, in a claims process to be established by the Receiver with the approval of the Court. The Receiver, appropriately reserved the right to analyze any such claim pursuant to the Court-approved claims process and after such analysis, to object to any filed claim on the basis of its validity, amount, priority, or on any other legal or equitable basis.

Therefore, the Receiver submits that the Deposit should be held in the receivership estate under the supervision of this Court, and not by Suites, pending resolution of the claims process. The Receiver further notes that any distribution of funds in the receivership estate to claimants will be pursuant to a distribution plan that will also be subject to approval by this Court. Finally, the Receiver's request for an accounting of the Deposit is both reasonable and consistent with Suites' obligation to cooperate with the Receiver and provide him with information under the Consent PI.

Thank you for Your Honor's consideration of this matter. The Receiver respectfully requests that the Court direct Suites to turn over the Deposit.

Respectfully submitted,

/s/ Gerard R. Luckman
Gerard R. Luckman
Counsel to David Castleman, Receiver

---

[1] The Receiver sought approval from this Court to pay rent for June in the amount of $106,144.68, which was granted by this Court on June 1, 2022 [Dkt. 42]. That rent was paid, as set forth in Exhibit 1 to the Initial Status Report filed on July 20, 2022 [Dkt. 71], and the Receiver did not use or occupy the space beyond June 30.

34th Street Suites LLC's request to retain the security deposit, see Letter, Dkt. 69, is DENIED.  Receivers have clear and long-standing authority to repudiate leases, even if the Receiver makes temporary payments on the lease. *See Palmer v. Palmer*, 104 F.2d 161, 163 (2d Cir. 1939) (opinion by Judge Learned Hand). Accordingly, the Receiver appropriately exercised his authority to require 34th Suites LLC to "transfer possession of all funds, assets, or other property" to the Receiver.  Preliminary Injunction, Dkt. 56 at 45.  34th Street Suites LLC may make a claim in the normal claims process to be established by the Receiver with the approval of the Court at a later date.

If the Receiver would like the Court to enter an order requiring 34th Street Suites to turn over the security deposit, the Receiver must file a proposed order to that effect by no later than **Friday, August 5, 2022**, and email a Word version of the order to CaproniNYSDChambers@nysd.uscourts.gov.

SO ORDERED.

*[signature]*  08/01/2022

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE