# RAINESFELDMAN

1350 Avenue of the Americas
22nd Floor
New York, New York 10019
Main: 917.790.7100
www.raineslaw.com

October 12, 2022

**VIA ECF**

Hon. Valerie E. Caproni
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

    Re:    *CFTC* v. *Alexandre and EminiFX, Inc.*, No. 22 Civ. 3822 (VEC)
             Application for Payment of Fees and Expenses – July/August 2022

Dear Judge Caproni:

        Pursuant to this Court's Order dated June 10, 2022 concerning applications for professional fees and expenses [Dkt. 47] (the "Employment Order"), David Castleman, the court-appointed receiver (the "Receiver") over Defendant EminiFX, Inc. ("EminiFX") and certain assets of Defendant Eddy Alexandre ("Alexandre"), respectfully submits this application for the payment of professional fees and expenses (the "Application") for the period of July 1, 2022 through August 31, 2022 (the "Application Period"). The Receiver respectfully requests approval of payment of fees and expenses to the Receiver and the following professionals: Raines Feldman LLP ("Raines Feldman"), J.S. Held LLC ("JS Held"), Forchelli Deegan Terrana LLP ("FDT"), Crowe LLP ("Crowe"), and Stretto, Inc. ("Stretto") (collectively, the "Professional Firms").

        The Receiver and each of the Professional Firms have agreed to a public-service discount of their rates given the circumstances of the receivership. The fees and expenses for the Application Period, which was 12 days longer than the prior application period, are less than 60% of those requested and approved for the prior period, totaling $578,292.28 in fees and $8,441.10 in expenses. The receivership continues to be at early stages, when expenses are typically the highest, and often before recoveries are secured. Nevertheless, during the Application Period, the Receiver has recovered $496,200.00 in real estate deposits, plus an additional $306,000.00 deposit from the landlord (subject to the former landlord's right to submit a claim in the claims process), and the general receivership estate earned $66,150.80 in interest – for a total of $868,350.80 in inflows into the general receivership estate.[1]

        Specifically, for the Application Period, the Receiver has requested fees of $99,396.00; Raines Feldman requests fees of $101,695.25 and expenses of $1,077.25; JS Held

---

[1] In addition, the Receiver turned over $1,752,944.40 in the frozen Brokerage 1 account into the Alexandre Assets account, received $15,000 from the sale of office property into that account, and that account earned $11,370.61 in interest, for total inflows into Alexandre Assets of $1,779,315.01 during the Application Period. Those funds are not used for general expenses of the estate, per the Consent Order.

Los Angeles
1800 Avenue of the Stars, 12th Floor
Los Angeles, California 90067

Orange County
18401 Von Karman Avenue, Suite 360
Irvine, California 92612

New York
1350 Avenue of the Americas, 22nd Floor
New York, New York 10019

requests fees of $272,553.50 and expenses of $5,513.71; FDT requests fees of $89,172.15 and expenses of $890.64; Crowe requests fees of $3,978.93 and expenses of $141.15; and Stretto requests fees of $11,496.45 and expenses of $818.35.  The total requested fees of $578,292.28 and expenses of $8,441.10 are reasonable given the significant complexity and substantial work completed, as set forth in detail in Part III, below.  Moreover, the total fees and expenses requested to date are less than 3% of the total receivership estate, and are less than the nearly $2 million that the Receiver has recovered to date, in addition to the $60.5 million in frozen account turnovers.

The Receiver and his professionals have maintained and presented their time and expense charges as set forth in the Billing Instructions for Receivers in Civil Actions Commenced by the Commodity Futures Trading Commission ("CFTC") (the "CFTC Billing Instructions"), as required by the Employment Order.  These detailed time entries have been approved by the CFTC, which consents to this request, and those time entries will be submitted to the Court separately under seal pursuant to the Employment Order.  All professionals will be compensated solely from assets of the general receivership estate.  Attached as Exhibits 1-5 are affidavits setting forth narrative explanations of the services provided.

This Application will be posted on the homepage of the Receiver's website at www.eminifxreceivership.com.  Any EminiFX investors who have any questions regarding this Application may send an email to the Receiver's team at EminiFXInquiries@Stretto.com, as directed by this Court in its order dated August 12, 2022 [Dkt. 106].

**I.   Authority for Requested Relief**

A receiver appointed by a court "who reasonably and diligently discharges his duties is entitled to be fairly compensated for services rendered and expenses incurred. The amount of the compensation is to be determined by the court in the exercise of its reasonable discretion." *Byers*, 590 F. Supp. 2d at 644.  "This presumption of reasonable compensation extends to a receiver's counsel and professionals." *SEC* v. *Morgan*, 504 F. Supp. 3d 221, 223 (W.D.N.Y. 2020) (quoting *SEC* v. *Platinum Mgmt. (NY) LLC*, No. 16-CV-6848 (BMC), 2018 WL 4623012, at *4 (E.D.N.Y. Sept. 26, 2018)).  "The Court considers several factors in determining a reasonable fee, including '(1) the complexity of problems faced, (2) the benefits to the receivership estate, (3) the quality of the work performed, and (4) the time records presented.'" *Id*. (quotations omitted).  The Court may also consider "the reasonableness of the hourly rate charged and the reasonableness of the number of hours billed." *SEC* v. *Amerindo Inv. Advisors Inc*., No. 05 Civ. 5231 (RJS), 2015 WL 13678841, at *1 (S.D.N.Y. Sept. 14, 2015) (citations omitted). "In addition, in a securities receivership, opposition or acquiescence by the [regulatory agency] to the fee application will be given great weight." *Byers*, 590 F. Supp. 2d at 644 (quotation marks and alteration omitted).

**II.   Procedural History**

On May 11, 2022, the CFTC filed a complaint and motion for an *ex parte* statutory restraining order ("SRO") [Dkt. 5-6]. The Court granted the CFTC's motion and entered the SRO the same day [Dkt. 9].  On June 15, 2022, the Court entered the Consent Order for Preliminary Injunction, appointing the Receiver as permanent Receiver [Dkt. 56] ("Consent Order").

Additional procedural history for prior application periods is set forth in the Receiver's Initial Status Report filed during this Application Period on July 20 [Dkt. 71].

On July 25, the U.S. Attorney's Office ("USAO") filed a motion for an order to intervene and to stay discovery, with the understanding that the Receiver "will continue his oversight and administrative functions (such as securing assets and records, establishing a claims process for victims, and providing updates to the Court)" [Dkt. 73-1, at 1]. Alexandre filed partial opposition to the motion to stay discovery on August 12, 2022. [Dkt. 107]. The Receiver and the CFTC filed replies to Alexandre's opposition on August 19, 2022, informing the Court that each did not oppose the USAO's motion. [Dkts. 151-52]. On August 26, 2022, the USAO replied in support of its motion. [Dkt. 157]. On September 2, 2022, the Court granted the USAO's motion to intervene and to stay discovery. [Dkt. 160].

On July 14, 2022, the former landlord of EminiFX (the "Landlord") filed a request with the Court stating that it should "be entitled to keep the Security Deposit against its breach of contract claims and file a claim for its additional breach of contract damages" [Dkt. 69]. The Receiver filed a response on July 27, requesting turnover of the $306,000 security deposit in question without prejudice to the Landlord's right to file a claim in the claims process to be established by this Court at a later date [Dkt. 76], and the Landlord replied on August 1 [Dkt. 82]. The Court granted the Receiver's request on August 1 [Dkt. 83] and entered the order requiring the turnover on August 3 [Dkt. 86].

On July 28, the Receiver filed a Letter Application to Approve Supplemental Procedures concerning the administration of the Receivership [Dkt. 77]. On August 5, the Court granted the Application [Dkt. 91]. On August 4, the Receiver filed an application for fees and expenses for May and June 2022 [Dkt. 88], and the associated CFTC-approved time entries under seal [Dkt. 89], pursuant to the Court's Order dated June 10, 2022 concerning applications for professional fees and expenses [Dkt. 47]. The requested was granted on August 5 [Dkt. 92].

On August 18, Defendant Alexandre submitted a letter to the Court concerning an alleged violation of the preliminary injunction by the sellers of the Manhasset Property (*see* July 2022 Status Report at 37, for additional background on the transaction), which filed a request for arbitration against Alexandre [Dkt. 148]. The Court requested the Receiver's views on lifting the stay on August 23 [Dkt. 154], which the Receiver provided on August 25 [Dkt. 156]. The sellers responded on August 31 [Dkt. 158], and the Court enjoined the arbitration on September 2 [Dkt. 159]. The sellers promptly advised the Court of the notice of discontinuation [Dkt. 161].

### III. Summary of Services During the Application Period

**Securing and Recovering Cash Assets**. The Receiver, working primarily with his team at Raines Feldman as well as his banking service partners at Stretto, ensured that over $1.7 million in cash that was frozen was turned over to the estate and secured in receivership accounts. The Receiver also secured the recovery of the $306,000 deposit from the Landlord, subject to its further right to submit a claim.

**Long Island Real Estate Portfolio**.  Soon after the start of the receivership, the Receiver discovered that EminiFX had entered into 46 separate contracts to purchase residential properties in Long Island out of foreclosure, each in a separate New York state court action with a separate court-appointed referee overseeing the sale.  The Receiver and his team at FDT have been working to recover as much as possible, which has taken considerable effort and has required negotiation with both lenders and referees, and litigation as necessary in the New York state courts.  The total amount recovered on the EminiFX contracts for purchase during the Application Period is $496,200.  The Receiver and FDT are working to recover the remaining deposits.

**Investigation into EminiFX Financial Condition**.  The Receiver, working closely with his forensics team at JS Held and his legal team at Raines Feldman, continued his investigation into EminiFX's financial condition, primarily in aid of recovering assets and with assessing and determining the value of the tens of thousands of potential investors claims.  They continued to analyze the data recovered from EminiFX servers, including thousands of pages of bank statements and a 17 million row database, which was substantial and challenging forensic work, given the state of the data.  The Receiver and his team plan to continue their investigation over the next months.

**Communications with EminiFX Investors**.  The Receiver and his team at Stretto spent substantial time communicating with investors that emailed and called with questions, and the Receiver used paraprofessional assistance with such communications where possible.  The Receiver and Stretto also maintained the receivership website (www.eminifxreceivership.com).

**Administration of the Estate and Case**.   The Receiver supervised the administration of the estate, including setting up bank accounts, redirecting and opening mail, and other tasks incidental to the management of the estate.  The Receiver and his counsel at Raines Feldman also participated in the management of this Action, including filing letters and pleadings where necessary, coordinating with the parties on joint filings, and filing the detailed Initial Status Report and request for supplemental instructions.

IV.   **Summary of Fees and Expenses Requested**

The Receiver includes herewith affidavits from himself and the lead from each of the Professional Firms.  Pursuant to the Employment Order, detailed time entries are filed separately under seal.  The rates for each professional have been discounted for the public service each firm has been performing.  The Receiver and the Professional Firms have reasonably and diligently exercised their duties during the Application and respectfully submit that they are entitled to be fairly compensated for services rendered.

**The Receiver and Raines Feldman**.  As set forth above, the Receiver and Raines Feldman spent substantial time administering all aspects of the receivership.  The Receiver respectfully requests the Court approve payment of $99,396.00 in fees to the Receiver.  The Receiver further respectfully requests the Court approve payment of $101,695.25 in fees and $1,077.25 in expenses to Raines Feldman.  The Castleman Affidavit attached as Exhibit 1 includes additional detail including hours billed by each professional at the court-approved discounted rates, including detailing the Receiver's supervision of the various Professional Firms.

Page 5

**JS Held**. In addition to valuable financial advice, JS Held provided substantial forensic services to the estate, securing and analyzing terabytes of data that will be crucial in analyzing and processing the potential claims of tens of thousands of investors. The Receiver respectfully requests the Court approve payment of $272,553.50 in fees and $5,513.71 in expenses to JS Held. The Serrano Affidavit attached as Exhibit 2 describes in more detail the work performed, including hours billed by each professional at the Court-approved discounted rates.

**FDT**. The estate received substantial assistance from FDT in unwinding the EminiFX real estate portfolio and in obtaining hundreds of thousands of dollars in recoveries of money that had already been paid out as deposits in foreclosure and other sales. The Receiver respectfully requests the Court approve payment of $89,172.15 in fees and $890.64 in expenses to FDT. The Luckman Affidavit attached as Exhibit 3 describes in more detail the work performed, including hours billed by each professional at the court-approved discounted rates.

**Crowe**. Crowe has provided the estate with critical tax support and analysis. The Receiver respectfully requests the Court approve payment of $3,978.93 in fees to Crowe and $141.15 in expenses. The Tomlinson Affidavit attached as Exhibit 4 describes the work performed, including hours billed by each professional at the court-approved discounted rates.

**Stretto**. Due to the substantial number of investors, it was critical for the estate to engage an experienced provider such as Stretto to assist with investor communications and to prepare to assist with the complex claims process. The Receiver respectfully requests the Court approve payment of $11,496.45 in fees and $818.35 in expenses to Stretto. The Klamser Affidavit attached as Exhibit 5 describes in more detail the work performed, including hours billed by each professional at the court-approved discounted rates.

## V. Conclusion

The Receiver respectfully requests that the Court approve the fee and expense requests as set forth in this Application.

Respectfully Submitted,

David Castleman
RAINES FELDMAN LLP
1350 Avenue of the Americas
22nd Floor
New York, NY 10019
(917) 790-7100
dcastleman@raineslaw.com
*Receiver*

(Enclosures)

cc: Counsel of record (via ECF)

