USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/29/2023

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

COMMODITY FUTURES TRADING COMMISSION,

Plaintiff,

-against-

EDDY ALEXANDRE and
EMINIFX, INC.,

Defendants.

22 Civ. 3822 (VEC)

**[PROPOSED]**
**ORDER (I) APPROVING PROCEDURES FOR THE VERIFICATION OF USER CONTRIBUTIONS TO AND WITHDRAWALS FROM EMINIFX, (II) SETTING A BAR DATE FOR THE FILING OF NON-USER CLAIMS, (III) ESTABLISHING NOTICE PROCEDURES, AND (IV) GRANTING RELATED RELIEF**

Upon consideration of the motion by David A. Castleman, the court-appointed receiver (the "**Receiver**") over Defendant EminiFX, Inc. ("**EminiFX**" or the "**Receivership Entity**") and certain assets of Defendant Eddy Alexandre ("**Alexandre**") pursuant to this Court's Consent Order for Preliminary Injunction ("**Consent Order**") [Dkt. 56], the accompanying declaration of David A. Castleman (the "**Castleman Dec.**") in support of the motion (the "**Motion**") (i) Approving Procedures for the Verification of User Contributions to and Withdrawals from EminiFX, (ii) Setting a Bar Date for the Filing of Non-User Claims, (iii) Establishing Notice Procedures, and (iv) Granting Related Relief, and memorandum of law in support of the Motion, any responses or objections to the Motion, and any replies in support of the Motion, this Court finds that (i) the relief requested in the Motion is in the best interest of EminiFX, creditors and all other parties; (ii) notice of the Motion was good and reasonable under the circumstances; and (iii) based upon the record herein and after due deliberation it is hereby

**ORDERED THAT:**

1. The Motion is **GRANTED** in all respects.

2. All objections not withdrawn or specifically resolved by this Order are overruled in all respects.

3. The Procedures attached hereto as <u>Exhibit A</u> are approved, including all dates and deadlines set forth therein, as may be extended.

4. The Receiver is authorized to implement the Procedures attached hereto as <u>Exhibit A</u>.

5. The Receiver is permitted, in his reasonable judgment, to modify the Procedures without further order of this Court if doing so will not impair substantive rights of the Users or Claimants, so long as he maintains a current version of the Procedures that is accessible by members of the public at https://www.eminifxreceivership.com/, and states in each status report how the Procedures have changed from the last most recent iteration, if at all.  However, if the Receiver deems a modification of the Procedures to require Court approval, the Receiver may seek authority from this Court to amend the Procedures.

6. The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

7. This Order shall be immediately effective and enforceable upon its entry.

Dated: New York, New York
      \_\_\_\_\_August 29\_\_\_\_\_, 2023

                                    **SO ORDERED:**

                                    _____
                                    THE HON. VALERIE E. CAPRONI
                                    UNITED STATES DISTRICT JUDGE
                                    SOUTHERN DISTRICT OF NEW YORK

## EXHIBIT A
## PROCEDURES

**SECTION 1. DEFINITIONS.**

For purposes of this Order, the following terms are defined as follows:

A. "**Bonuses**" means bonuses Credited to Users prior to the Receivership Date by the EminiFX System on account of their recruitment of other Users. For the avoidance of doubt, all bonuses characterized as "direct referral bonuses," "indirect referral bonuses," "weekly profits pairing bonuses," "monthly residual income," and "fast track/rank bonuses" shall be considered Bonuses.

B. "**BTC**" means Bitcoin.

C. "**Cash**" means immediately available funds in USD.

D. "**Claim**" means (1) a purported right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, against EminiFX; or (2) a purported right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, against EminiFX.

E. "**Claimant**" means any Person holding a Non-User Claim.

F. "**Claims Agent**" means Stretto, Inc., whose retention the Court confirmed on June 10, 2022 [Dkt. 47].

G. "**Contribution**" is defined, as to a User, as a deposit of Funds into the EminiFX System prior to the Receivership Date, whether deposited directly or by a third party for or on behalf of that User, net of fees and other transaction costs.

H. "**Credited**" is defined as an increase in the amount or value of any currency, commodity, or security, attributed by the EminiFX System to a User, without regard to whether that increase represents a *bona fide* increase in the amount or value attributed by the EminiFX System to a User.

I. "**Disputed Claim**" means a Claim that is subject to continuing dispute between the Receiver and a Claimant, pursuant to the procedures outlined by Section 4.D, *infra*.

J. "**Disputed Transaction**" means a Transaction that is not a Verified Transaction or a Resolved Transaction.

K. "**Distribution**" means the disbursement or transfer of Cash pursuant to an eventual distribution of the assets of the Receivership Estate to Users or Claimants.

      L.     "**EminiFX**" means EminiFX, Inc.

      M.     "**EminiFX System**" means the EminiFX-branded platform to and from which Users made Contributions and Withdrawals of Funds.

      N.     "**Funds**" means Cash or BTC.

      O.     "**General Non-User Claim Bar Date**" means the date that is sixty days following entry of the Order at 5:00 p.m. (prevailing Eastern Time).

      P.     "**Governmental Bar Date**" means the date that is one hundred twenty days following entry of the Order at 5:00 p.m. (prevailing Eastern Time).

      Q.     "**Governmental Unit**" means the government of the United States of America, any other nation or any political subdivision thereof, whether state or local, and any agency, authority, instrumentality, regulatory body, court, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of or pertaining to government.

      R.     "**Non-User Claim**" means any Claim by any Person not based on that Person's status as a User which is based on (1) the provision of goods or services to EminiFX that has not been paid in whole; (2) money loaned to the Receivership Entity that has not been paid in whole; (3) unpaid wages, compensation, or other employment benefits that has not been paid in whole; (4) tax liabilities, including those held by federal and state governments, subject to Title 26 of the U.S. Code; (5) primary, secondary, direct, indirect, secured, unsecured, or contingent liability; /or (6) contract, tort, indemnity, reimbursement, subrogation theories, or other legal or equitable theory.

      S.     "**Non-User Claim Bar Dates**" means, collectively, the Governmental Bar Date and the General Non-User Claim Bar Date.

      T.     "**Order**" means the Order (i) Approving Procedures for the Verification of User Contributions to and Withdrawals from EminiFX, (ii) Setting a Bar Date for the Filing of Non-User Claims, (iii) Establishing Notice Procedures; and (iv) Granting Related Relief.

      U.     "**Person**" means a natural person, corporation, limited liability company, trust, joint venture, association, company, partnership, Governmental Unit or other entity.

      V.     "**Portal**" means the webpage on the Website through which Users can review their Transactions.

      W.     "**Proof of Claim**" or "**Proof of Claim Form**" means the form annexed as <u>Exhibit A</u> to the Castleman Dec. for Claimants to assert a Non-User Claim.

      X.     "**Receivership Date**" means May 11, 2022.

      Y.     "**Receivership Estate**" means the receivership estate of EminiFX.

Z. "**Resolved Transaction**" means a Transaction whose amount has been determined by the Court.

AA. "**ROI**" means the fixed weekly "return on investment" Credited to Users by the EminiFX System.

BB. "**Transaction**" means a Contribution or Withdrawal to the EminiFX System. For the avoidance of doubt, a Transaction does not include Bonuses or ROI.

CC. "**Transaction Log**" means the log created by the Receiver based upon the Receivership Entity's books and records and any other documents available to the Receiver that lists, as to each User, that User's Contributions and Withdrawals, which log may be updated from time to time as additional information becomes available to the Receiver.

DD. "**User Update**" means any action by the User to modify the Transaction Log on the Portal as described in Section 2.B and C, *infra*.

EE. "**USD**" means lawful currency of the United States of America.

FF. "**User**" means any Person who created an account within the EminiFX System before the Receivership Date.

GG. "**User Verification Date**" means the date that is ninety days after entry of the Order, unless otherwise extended by the Receiver for all Users or for any individual User in the Receiver's discretion.

HH. "**Verified Transaction**" means a Transaction on the Transaction Log: (i) that has been verified by the User, (ii) for which the User failed to verify on or before to the User Verification Date, or (iii) which the Receiver, in his reasonable judgment, is satisfied that a User Update is supported by information known to the Receiver, including information which may be provided by the User in support of the User Update.

II. "**Website**" means https://www.eminifxreceivership.com/.

JJ. "**Withdrawal**" means a withdrawal of Funds from the EminiFX System, whether withdrawn directly by a User or by a third party for or on behalf of a User.

KK. All other defined terms not defined by this Section 1 will be defined in line with the Section in which they appear unless otherwise noted.

**SECTION 2. <u>VERIFICATION OF USER CONTRIBUTIONS</u>.**

The following procedures are approved:

A. <u>The Portal</u>

(I) The Receiver shall establish the Portal for use by Users to verify their Transactions and provide User Updates.

3

  (II) The Receiver may employ means which, in his discretion, are appropriate to secure the confidentiality of information about Users available on the Portal. This may include the use of multi-factor authentication, which may include an email or mobile phone verification method.

  (III) The Portal will be available to Users on both desktop computers and certain mobile phones.

  (IV) The Receiver may add additional functionality to the Portal which is not required by this Order, but which, in his judgment, enhances the experience, convenience, or accessibility for Users; improves the accuracy of information available within the Portal; streamlines the process for verifying Transactions, or resolving disputes; or supports the overall administration or efficiency of the Receivership.

  (V) Following the entry of this Order, the Receiver will send a link to all email addresses known to him to belong to Users that will allow them to access the Portal. The Receiver shall provide Users with instructions on how to access the Portal and verify, update or add Transactions (as described below), and will notify them of the User Verification Date.

  (VI) The Receiver shall email instructions on how to access the Portal to any Person who the Receiver, to the best of his knowledge, believes made a Contribution and whose email address the Receiver knows, regardless of whether or not that Person created an account on the EminiFX System.

B. <u>Verification and Update Procedures</u>

  (I) When a User logs onto the Portal, the Portal will show each User their respective Transactions in the form of a Transaction Log specific to that User. Each Transaction may have a transaction number, date, source of funds, type of transaction (Contribution or Withdrawal), and an amount.

  (II) For each of a User's Transactions, that User must do at least one of the following, as applicable:

   a. Verify that the Transaction as shown on the Transaction Log is accurate;

   b. dispute the Transaction, where the Transaction is partially inaccurate as shown on the Transaction Log, and correct the Transaction in the manner instructed by the Portal interface;

   c. indicate that the User does not recognize the Transaction as shown on the Transaction Log; or

        d.    attribute the Transaction to other Users, in whole or part, if part of the Transaction was made pursuant to an agreement with, or for the benefit of, another User.

    (III)    A User may also add a Transaction to the Transaction Log, if not shown on the Transaction Log.

    (IV)    If a User verifies a Transaction, that Transaction becomes a Verified Transaction.

    (V)    If a User does not verify a Transaction, but selects any other option with respect to any particular Transaction, or adds a Transaction to the Transaction Log, each such Transaction becomes a User Update.

    (VI)    A User who submits a User Update that does not either attribute the Transaction at issue to other Users or indicate that the User does not recognize the Transaction at issue must support that User Update with documentation that would allow the Receiver to verify the accuracy of that User Update. The Receiver is not required to independently investigate or verify the accuracy of any User Update if the User submitting that User Update fails to submit such supporting documentation.

    (VII)    The Portal will allow Users to merge two or more accounts on the EminiFX System. To merge accounts, the User must have held both accounts as of the Receivership Date and must have access to the email addresses associated with both accounts on the EminiFX System.

    (VIII)    For accounts on the EminiFX System for which no Transactions have been identified, the account User will receive a special set of instructions, informing them that no Transactions have been identified, but still providing the option to log onto the Portal to allow the addition of Transactions.

    (IX)    Users must verify the accuracy of each Transaction and each User Update under penalty of perjury. The Receiver may disregard any Transaction or User Update not so verified.

C.    <u>User Verification Date</u>.

    (I)    Users must verify and/or provide a User Update on or before the User Verification Date. Upon the User Verification Date, the Portal shall no longer allow any User to verify any Transactions or submit User Updates.

    (II)    The Receiver shall have the discretion, in his reasonable judgment, to extend the User Verification Date for any or all Users.

    (III)    A User who fails to verify their Transactions by the User Verification Date waives their right to contest the Receiver's determination of such User's Transactions.

   (IV) A User who fails to update the Transaction Log, but who was required to do so on or before the User Verification Date:

    a. is precluded from challenging the accuracy of any Transaction for which that User was required to submit a User Update; and

    b. is precluded from challenging the completeness of the Transaction Log.

   (V) A User who verifies any Transaction in the Transaction Log before the User Verification Date is precluded from later challenging the accuracy of that Transaction.

   (VI) For the avoidance of doubt, no provision in this Section shall be construed as limiting, waiving, or otherwise prejudicing the rights of any party to seek redress, restitution, or other relief against another party, nor shall any provision herein operate to estop or otherwise preclude any party from asserting any claims, defenses, or arguments in any other proceedings to which the Receiver is not a party.

D. <u>Voluntary Resolution of User Updates</u>.

   (I) If the Receiver, in his reasonable judgment, is satisfied that a User Update is supported by information known to the Receiver, including documentation provided by the User, the Receiver may deem the Transaction a Verified Transaction. The burden of supporting a User Update shall lie solely with the User, and not the Receiver.

   (II) If the Receiver determines, in his reasonable judgment, that the documentation provided by a User does not support that User's User Update, the Transaction will become a Disputed Transaction.

   (III) To aid the Receiver's review of the Transactions, the Receiver may demand that a User produce documents to the Receiver with respect to any of the Transactions, whether related to a Verified Transaction or Disputed Transaction. The User shall be required to respond to such document demands within a reasonable period of time, as set forth by the Receiver in his document demand to the User.

   (IV) The Receiver may, but is not required to, attempt to resolve a Disputed Transaction at any time, including by informally contacting a User to resolve a Disputed Transaction.

E. <u>Judicial Resolution of Disputed Transactions</u>

   (I) At such time that the Receiver believes it is appropriate to initiate a formal process to resolve all or part of the Disputed Transactions that have not voluntarily been resolved, the Receiver shall file with the Court and serve by email,

6

upon any User whose Disputed Transactions the Receiver seeks to resolve, a schedule of Disputed Transactions ("**Schedule of Disputed Transactions**").  The Receiver may, at his option, address multiple Disputed Transactions in a Schedule of Disputed Transactions in an omnibus manner.

(II)   The Receiver or his agents may at any time attempt to resolve the dispute voluntarily, involving other parties, such as a mediator, as appropriate, in the reasonable judgment of the Receiver.  If the Receiver and the User, as well as any other parties who the Receiver deems necessary to resolve the Disputed Transaction, have voluntarily resolved the Disputed Transaction, the Receiver may consider the Disputed Transaction as a Verified Transaction.

(III)   As a privacy-preserving measure, prior to or concurrent with his issuance of the Schedule of Disputed Transactions, the Receiver will assign Users unique identifiers (each a "**User Identification Number**").  The Receiver or his agents will use User Identification Numbers to identify the Users in public filings with the Court.

(IV)   As to each Disputed Transaction addressed in the Schedule of Disputed Transactions, the Receiver shall state his resolution of the Disputed Transaction, and may give a brief explanation of his proposed resolution of the Disputed Transaction.

(V)   Within forty-five days of filing the Schedule of Disputed Transactions (the "**User Objection Deadline**"), a User may object to the Schedule of Disputed Transactions (each a "**User Objection**") by providing in writing to the Receiver, via a method of service which he may designate, an objection that clearly states the grounds for the objection to the Receiver's proposed resolution regarding each of that User's Disputed Transactions addressed by the Schedule of Disputed Transactions, and any documentation in support of the User Objection.

(VI)   The Receiver shall inform each User whose Disputed Transaction is included in the Schedule of Disputed Transactions that failure to submit to the Receiver a User Objection shall preclude that User from challenging the Receiver's resolutions of Disputed Transactions included in the Schedule of Disputed Transactions in the future.

(VII)   Following the User Objection Deadline, the Receiver will file with the Court a summary of the User Objections and a statement in support of the Receiver's determination with respect to each of the Disputed Transactions.  Any Disputed Transaction resolved by the Court shall become a Resolved Transaction in an amount determined by the Court.

F.   <u>Effect of Verification.</u>   The fact that a User may have a Verified Transaction **<u>DOES NOT ENTITLE THE USER TO A DISTRIBUTION OR GUARANTEE THAT A DISTRIBUTION WILL BE MADE OR IN WHAT AMOUNT ANY SUCH DISTRIBUTION WILL BE MADE TO A USER</u>**.  A determination of whether a User holds a

Claim against the Receivership Estate and in what amount shall be addressed with the Court at a later date.

**SECTION 3.  NON-USER CLAIMS.**

The following procedures shall govern the resolution of Non-Users' Claims:

    A.    The Proof of Claim Form and the information and instructions contained therein, generally in the form annexed as Exhibit A to the Castleman Dec., and the manner of notice of the Proof of Claim Form, are approved and the Proof of Claim Form shall be the sole manner for Claimants to submit Non-User Claims to the Receiver.

    B.    Persons Eligible to Submit Proofs of Claim.  Proofs of Claim may only be completed by and served on the Receiver by Persons who believe they hold a Non-User Claim that arose, in whole or in part, prior to July 1, 2023.

    C.    Persons Not Required to Submit Proofs of Claim.

        (I)    Any Claim based solely on a Person's status as a User shall be processed in accordance with Section 2 of the Procedures, and shall not be filed in accordance with Section 3 of these Procedures.  Any Claim so filed shall be rejected without further review by the Court.

        (II)    Persons holding Claims for professional fees that are governed by the June 10, 2022 Employment Order [Dkt. 47] are not subject to the Non-User Claim Bar Dates set forth herein.  Their fees, and those of the Receiver, will be processed pursuant to the procedures set forth in the Employment Order, and not according to these Procedures.

        (III)    Persons holding Claims that arose on or after July 1, 2023 are not subject to the Non-User Claim Bar Dates set forth herein and any such Claims shall be addressed in accordance with other and further orders of this Court.

    D.    Non-User Claim Bar Dates.

        (I)    The deadline on or before which Claimants other than Governmental Units asserting a Non-User Claim are required to serve a Proof of Claim Form is the General Non-User Claim Bar Date; and

        (II)    The deadline on or before which Governmental Units asserting a Non-User Claim are required to serve a Proof of Claim Form is the Governmental Bar Date.

    E.    Procedure for Timely Serving Proofs of Claim.  To timely assert a Non-User Claim, each Claimant must serve a completed and signed Proof of Claim Form, together with supporting documentation on the Claims Agent as required by this Order, so that such Proof of Claim Form is actually received by the Claims Agent on or before the Non-User Claim Bar Date applicable to the Claimant.

  F. Proofs of Claim shall be served on the Receiver's Claims Agent by either (1) First Class Mail via the USPS addressed to EminiFX Claims Processing c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602; (2) overnight courier or in-person delivery addressed to EminiFX Claims Processing c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602; or (3) using the electronic Proof of Claim Form available on the Website and electronically submitting the Proof of Claim on the Website.  Any Proof of Claim served in accordance with this procedure and that otherwise complies with the requirements of this Order shall become a "**Filed Claim**."

  G. The Receiver has the discretion to extend the time for a Claimant to complete and serve its Proof of Claim for cause shown, or to accept service by other means.

  H. <u>Supporting Documentation for Proof of Claim</u>.  Each Claimant must attach to each Proof of Claim copies of all documents available to the Claimant on which the Claimant relies to support its Proof of Claim.  Such documentation may include, but is not limited to:  copies of all agreements, promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, evidence of perfection of lien, and other documents evidencing the amount and basis of the Non-User Claim.  If such supporting documentation is not available, the Claimant shall attach to the Proof of Claim an explanation of why the documentation is unavailable.

  I. <u>Consent to Jurisdiction.</u>  A Claimant who submits a Proof of Claim is deemed to consent to this Court's jurisdiction to resolve all matters related to that Proof of Claim and all Claims asserted therein.

  J. <u>Effect of Failure to Serve Proof of Claim Compliant with Claims Procedures</u>.

   (I) Any Claimant that fails to serve a Proof of Claim in a timely manner and in the form required pursuant to this Order shall be deemed to hold an "**Abandoned Claim**."  Any Claimant holding an Abandoned Claim:

    a. shall be forever barred, estopped, and enjoined to the fullest extent allowed by applicable law from asserting, in any manner, such Abandoned Claim against EminiFX and its property;

    b. shall not be permitted to object on account of such Abandoned Claim to any Distribution that may be proposed by the Receiver;

    c. shall be denied any Distributions on account of such Abandoned Claim under any Distribution that may be proposed by the Receiver; and

    d. shall not receive any further notices on account of such Abandoned Claim.

   (II) EminiFX and its respective property shall be, and hereby are, discharged from any and all indebtedness or liability with respect to any Abandoned Claim.

**SECTION 4.   NON-USER CLAIMS REPORT**.

The following procedures are approved:

    A.    <u>Non-User Claims Report</u>.

        (I)    Following the expiration of the Non-User Claim Bar Dates and after the Receiver has had an opportunity to review Claims that were properly filed pursuant to these Procedures (the "**Filed Claims**", the Receiver will file a report (a "**Non-User Claims Report**"), listing the Receiver's determination, after review of the Filed Claims, of the allowed amount of each Filed Claim. The Non-User Claims Report will classify Filed Claims as fully allowed, partially allowed, or disallowed and may provide a brief explanation for the Receiver's determination if a Filed Claim is partially allowed or disallowed. The Receiver may also choose to reserve judgment on some Filed Claims pending further review and investigation and file an amended Non-User Claims Report at the appropriate time.

        (II)    The Receiver shall not be required to include an Abandoned Claim in a Non-User Claims Report. The Receiver may periodically modify previous Non-User Claims Reports as the Receiver deems necessary and provide a commensurate extension of time to respond.

        (III)    Prior to or concurrent with his issuance of the Non-User Claims Report, the Receiver will assign Claimants a unique identifier (each a "**Non-User Identification Number**"). The Receiver or his agents will use Non-User Identification Numbers to identify the Claimants in public filings with the Court.

    B.    <u>Allowed Claims</u>.

        (I)    The Receiver may determine whether a Filed Claim is fully allowed, partially allowed, or disallowed by taking into account, without limitation, whether (i) the Filed Claim is properly and timely filed; (ii) the Filed Claim is duplicative of any other Filed Claim; (iii) the Filed Claim is consistent with the books and records of EminiFX (to the extent available); (iv) the Filed Claim is supported by adequate documentation; (v) the Filed Claim is subject to any offsets or defenses that may be asserted; or (vi) whether other grounds exist for allowing or disallowing the Filed Claim, in whole or in part. To aid the Receiver's review of the Filed Claims, the Receiver may conduct reasonable discovery with respect to the asserted Filed Claim. The Claimant shall be required to respond to such discovery requests within a reasonable period of time, as set forth by the Receiver in such requests.

        (II)    The Receiver's determination of the allowed amount of each fully allowed or partially allowed Filed Claim shall serve as the basis for calculating a Claimant's potential Distribution of assets of the EminiFX Estate; however, such allowed amount is not necessarily indicative of the priority or treatment of the Filed Claim, or the amount or type of Distribution a Claimant may ultimately receive from EminiFX on account of that Filed Claim. The Receiver may estimate the

amount of a Filed Claim that is contingent, unliquidated, or unmatured for purposes of determining the allowed amount of any Filed Claim.

(III) The Receiver's determination to fully allow or partially allow a Filed Claim is without prejudice to a later subordination, reclassification, offset, or equitable distribution with respect to such Filed Claim, pursuant to a motion of the Receiver, including in connection with any potential Distribution that the Receiver may propose to the Court.

C. Notice of Non-User Claims Report.

(I) The Receiver shall serve a "**Non-User Claims Report**" by posting it on the Website and by sending it to each Claimant that holds one or more Filed Claims that is the subject of a determination by the Receiver in such Non-User Claims Report.

(II) Within five (5) business days of filing a Non-User Claims Report, the Receiver or his agents will post the applicable Non-User Claims Reports on the Website.

D. Claimant Objections and Disputed Claims.

(I) A Claimant may challenge the Receiver's determination of the Claimant's Filed Claims set forth in a Non-User Claims Report including, without limitation, any objection to the Receiver's determination (1) that the Filed Claim is a partially allowed Claim, or a disallowed Claim, (2) the allowed amount of the Filed Claim, or (3) the Receiver's determination concerning the secured status of the Filed Claim or the property of EminiFX by which the Filed Claim is secured.

(II) A Claimant that seeks to object to the Receiver's determination of the Claimant's Filed Claims shall serve on the Receiver a written objection to the Receiver's determination (each a "**Claimant Objection**"). No person or entity other than the applicable Claimant may file a Claimant Objection to the Non-User Claims Report, and Claimants may not object to the Receiver's determinations of other Claimants' Filed Claims unless so requested by the Receiver.

(III) Objections to the determinations in a Non-User Claims Report shall (1) be in writing; (2) state the name and address of the objecting Claimant and the name and address of the Claimant's counsel or another authorized representative (if any), (3) the claim number assigned to the Filed Claims, and the nature of the Claims of such Claimant; (4) state with particularity the basis and nature of all objections to the applicable determinations; and (5) be electronically mailed to the Receiver at EminiFX.Claim.Disputes@Stretto.com, so as to be *actually received* on or before forty-five days following the Receiver's emailing or mailing to a Claimant a Non-User Claims Report addressing the determination to which the Claimant Objection responds. Upon the timely service of a Claimant Objection, a Filed Claim shall become a Disputed Claim. Each Claimant that properly and timely serves a Claimant Objection shall be a "**Disputing Claimant**."

11

(IV)    Claimant Objections should not be filed with the Court except as an exhibit to a Resolution Motion (defined in Section 5.B(I), *infra*) filed by the Receiver and not by the Claimant.

(V)    A Claimant's failure to timely serve the Receiver with a Claimant Objection to a Claim that complies, in all respects, with the instructions set forth in this Order shall permanently preclude the Claimant's right to object to or contest the Receiver's Non-User Claims Reports and determinations as the same relate to such Claims.

(VI)    If a Claimant fails to serve a Claimant Objection to the Receiver's determination as to their Filed Claim as set forth in a Non-User Claims Report, then the Receiver's determination shall be final and binding as to the applicable as to that Filed Claim.

**SECTION 5.    RESOLUTION OF DISPUTED CLAIMS.**

The following procedures are approved:

A.    Alternative Dispute Resolution of Disputed Claims.

(I)    The Receiver may attempt, within forty-five days of receipt of a Claimant Objection, to resolve a Disputed Claim with the respective Disputing Claimant.

(II)    The Disputed Claim may, at the election of the Receiver and the Disputing Claimant, be submitted to mediation before a disinterested mediator, to be completed within thirty days from commencement of a mediation session unless extended by the Receiver in his discretion.  The fees of mediation will be borne one-half by the Receivership Estate and one-half by the Disputing Claimant.  Mediation fees under $25,000 may be paid by the Receiver without further order of the Court.

(III)    The Receiver may, in his sole discretion, settle and compromise any Disputed Claim on terms and for reasons that he deems, in his business judgment, to be appropriate without further Order of this Court.

B.    Summary Disposition.  Any Disputed Claim that is not resolved by agreement between the Receiver and the Disputing Claimant shall be adjudicated by the Court in a summary proceeding as follows:

(I)    The Receiver may file one or more motions with the Court requesting that the Court confirm the Receiver's determinations as to the particular Disputed Claims addressed in the motion (a "**Resolution Motion**").

(II)    Each Resolution Motion shall attach the information which the Receiver deems necessary for the Court to resolve the Resolution Motion, but at a minimum, shall include (1) a brief statement of the Disputed Claim, (2) the

Claimant Objection, (3) a recommended resolution, or request for further proceedings, and the reasons therefor.

(III)   The Resolution Motion and supporting brief shall be served on the applicable Disputing Claimant at the time of its filing by First Class Mail or by email.

(IV)   At the Receiver's election, a Resolution Motion may consist of omnibus motions addressing multiple Disputed Claims at one time, rather than individually.

(V)   The Disputing Claimant shall have fourteen days to respond to a Resolution Motion, without the need for formal intervention, unless the Court orders otherwise.  The Receiver shall have seven days to reply.

SECTION 6.   **NOTICE OF BAR DATE TO NON-USERS.**

The "**Bar Date Notice**" is approved in the form annexed as Exhibit B to the Castleman Dec.  Within fourteen (14) business days after entry of the Order, for all known Claimants for whom the Receiver possess an email address, a Bar Date Notice will be emailed to that email address.

SECTION 7.   **NOTICE BY PUBLICATION.**

A.   Form of Notice.  The "**Bar Date Publication Notice**" in the form annexed as Exhibit C to the Castleman Dec. is approved.

B.   Notice.  Within fourteen business days after entry of the Order, the Bar Date Publication Notice, or a substantially similar notice, will be published as follows:

(I)   the Bar Date Publication Notice will be posted to the Website; and

(II)   in any newspaper or other medium deemed appropriate and cost-effective by the Receiver.

SECTION 8.   **NOTICE UPON INQUIRY.**

The Receiver shall promptly provide the Bar Date Notice and the Proof of Claim Form to any person or entity that makes a written request for such document to the e-mail address EminiFXClaims@Stretto.com or to the physical address EminiFX Claims c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602.  Such documents will be provided electronically where possible.