# MEMO ENDORSED

RECEIVED
SDNY PRO SE OFFICE

2024 MAY -3  AM 8: 41

April 15, 2024

Via Regular Mail
Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:
> DATE FILED:  05/06/2024

Re: CFTC v. Alexandre, et ano., No. 22 Civ. 3822 (VEC)
Motion to Reconsider Motion for Return of Seized
of Seized Property in Response to Judge's Order

Dear Judge Caproni:

Mr. Alexandre respectfully submits this motion to reconsider the motion for return of seized property in response to the Judge's Order denying the motion subsequent to the Receiver's objections to the motion. Mr. Alexandre moves this court pursuant to Fed. R. Civ. P. Rules 59(e), & 72(a), (b)(2), for reconsideration of the Court's Order of March 25, 2024 denying the Motion For Return of Seized Property, unlawfully seized as a result of a warrantless search and seizure conducted in violation of the Fourth Amendment to the United States Constitution. In the alternative, Mr. Alexandre respectfully requests that this motion be docketed as a NOTICE TO APPEAL, pursuant to FRCP Rule 72(a) noting that the District Judge in the case must consider timely objections and modify or set aside any part of the Order that is clearly erroneous or is contrary to law. See U.S. v. Harlan, 26 F.4th 566, 569 (2nd Cir. 2022) stating [A] district court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or render's a decision that cannot be located within the range of permissible decisions.

As a preliminary matter, Rule 59(e) of the Fed.R. Civ. P., "does not set forth any grounds for relief and the district court has considerable discretion in reconsidering an issue. Motions for reconsideration should not be used to raise legal arguments which could and should have been made before the judgment or order was issued. See Lockar, 163 F.3d at 1267. The standard for granting reconsideration is strict and will generally be denied unless the moving party can point to controlling decision or data the Court overlooked. See Shrader v. CSX Transportation, Inc. 70 F.3d 255, 257 (2nd Cir. 1995). This motion for reconsideration is based on both facts and controlling law the Court apparently overlooked in construing Mr. Alexandre's motion for the return of seized property pursuant to the Fourth Amendment to the United States Constitution, and the Defendant's lack of due process affording him an opportunity to respond to the objections before the ruling on the matter and the Judge's Order directing the Clerk of Court to close the open motions at Dkts. 278 and 283. Consequently, the court should reconsider and vacate the order of March 25, 2024, Dkt. 284. Furthermore, the court should adjudicate and GRANT this motion for the return of seized property without conditions due to a warrantless search and seizure, in direct violation of the Fourth Amendment to the US Constitution, by the CFTC-Court-Appointed Receiver, and the court should declare the search and seizure unlawful without consideration of the Receiver being an agent of the Court.

## BACKGROUND

The Defendant, Mr. Alexandre, filed a motion for the return of his personal
laptop due to a warrantless search and seizure as documented in prior filings
by and through his legal team.

The primary reaction of the Judge on March 18, 2024 was to issue a warning
stating: "to the court's understanding the BOP does not permit inmates to possess
laptops," showing a predisposition to deny the motion "absent a showing that the
Bureau of Prisons (BOPs) consented to allowing Mr. Alexandre to possess the
laptop", and ordered the Receiver to "respond to Mr. Alexandre's claim that the
Receiver unlawfully obtained the laptop" no later than March 25, 2024.  Cleaned up.
It was clear that the Judge was unwilling to address the merits of the claim a
priori.

After the Receiver responded to the motion as ordered, the Judge did not allow
the Defendant the opportunity to respond to the objections of the Receiver.
Instead, the Judge issued a final order when she instructed the Clerk to close
the open motions at Dkts. 278 and 283 leaving the Defendant no other alternative
but to file a motion for reconsideration under Rule 59(e).  It's worth noting
on the record that this pattern is prevalent in each and every motion made by
the Defendant-movant in this action: (Motion, objection, closure), without
affording the possibility to object to the Receiver's response pursuant to
FRCP Rules 72 (a), (b)(2), reponses to objections.

## GENERAL STATEMENTS

A- Mr. Alexandre, the Ex-CEO and founder of EminiFX, Inc., is currently incarcera-
ted in Allenwood-Low Federal Correctional Complex (FCC) of the Bureau of Prisons
(BOPs) in the State of Pennsylvania for the past six(6) months serving 108 months
sentence in the Criminal case adjudicated in the Honorable Judge Cronan's
chambers as a result of a case jointly brought up by the Commodity Futures Trading
Commission (CFTC) and the office of the United States Attorney General through
their respective AUSAO assigned to the case in the Southern District of New York
(SDNY).

B- Mr. Alexandre is a full time GED [1] student at the BOPs and entrusted his
legal defense to a law firm throughout the Criminal and Civil proceedings for
about 21-22 months.  Immediately following his incarceration, Mr. Alexandre
extensively placed his focus on the rehabilitation program at the BOPs and
completed over 20 courses/classes over the past six months, in addition to the
full time GED exams preparation course mandated by the BOPs.  As such, Mr.
Alexandre only desire was to get this instant action behind him to allow the
funds to be returned to the investors, and get on with the second chapter of his
life.  However, something significant happened prompting him to take over his
legal defense and commit himself to vigorously defend against each and very claim
in the CFTC Complaint.

C- On December 6, 2023 at 9:06 pm EST., Mr. Alexandre instructed his attorney
to sign the final agreement of the civil action with the CFTC and share back
the duly executed contract with him, that would have authorized the Receiver to
immediately disburse the $18 Million dollars to the CFTC as fines levied against
EminiFX or incur endless hefty penalties for every day the funds are not paid
or transferred via wires as paid in Full.

D- On January 19, 2024, at 10:31 am EST., Mr. Alexandre received an email request

from his attorney for the Receiver to come visit the prison at Allenwood to get
Mr. Alexandre to apply his fingerprints to unlock the laptop.  Mr. Alexandre
replied in earnest to his attorney asking how could the Receiver could have asked
such request and him the attorney not reminding the Receiver that Mr. Alexandre's
position is to get his laptop back because the the laptop was obtained unlawfully
without a warrant, knowing that Mr. Alexandre, by and through his attorneys, filed
a complaint against that unlawful possession as a result of an anlawful search
and seizure as filed in the Criminal docket while the civil docket was stayed.
Interestingly, Mr. Alexandre never got a response back from the Receiver and from
the Attorney with the answer to these critical questions; and the trip never
materialize.  However, Mr. Alexandre's position was open to hear back from the
Receiver about WHAT we needed to talk about and after defining the terms of that
encounter with the presence of counsel, the visit could have been scheduled. It
was a complete silence for 18 days until February 6, 2024.

E- On February 6, 2024, Mr. Bove, the lead attorney of the legal defense team,
without answering the prior issues raised at paragraph D on January 19, 2024,
came back on email with a response update from the CFTC (60 days later) refusing
to sign the final agreement they themselves drafted and submitted to Mr.
Alexandre for signing, and the CFTC added more conditions for acceptance and
this time also requested for Mr. Alexandre to give up more consitutional rights
and to accept [all] the falsehoods alleged in the complaint as FACTS and TRUE.
Mr. Alexandre responded with contending that he gave up enough already and was
now extremely doubtful of the piece meal strategy of the regulators coming back
with small group of changes over and over on the pretense that they forgot to
add them before; and that the CFTC was negotiating in bad faith.  Hence, Mr.
Alexandre withdrew his December 6, 2023 authorization to sign from his attorneys
-authorization reaffirmed on December 14, and further reaffirmed on December 15,
2023 ahead of the December 18, 2023 deadline set for the CFTC.

F- On that same day, on February 6, 2024, Mr. Alexandre also informed his lawyer
of his intentions to rebuke the CFTC attempts to butcher the negotiations that
took us all months to achieve, and expressed his concerns about the latitude the
CFTC has to behave in such a manner.  Mr. Alexandre was contemplating to get this
resolve promptly or to take over the lead of his legal defense team as pro se,
because the CFTC was negotiating in bad faith.  In the days following that
breakdown in communications and the explicit bad faith of the CFTC, against the
advice and "extreme warnings" of counsel, Mr. Alexandre instructed his attorney
to submit a withdrawal request to the honorable Judge Caproni for consideration,
Which he did.

G- On February 14, 2024, after numerous last minutes warnings and negotiations,
the CFTC finally accepted to backtrack (walk back) on a couple of last minutes
changes, but would not move to reneged on the falsehoods of the allegations that
Mr. Alexandre set forth as conditions sine qua non to reauthorize his signature.
Hence, due to communications breakdown, and irrecoialable differences, the
negotiations of the final agreement fell off, and Mr. Alexandre, by and through
his own rights, took over his legal defense pro se, and moved this court for the
approval of the transition of the withdrawal legal defense team.

H- On  February 15, 2024, Mr. Alexandre received confirmation from his attorney
that the Judge GRANTED his motion to withdraw, and for Mr. Alexandre to proceed
pro se.  The order also ordered the Clerk of Court to lift the stay as of Feb.
20, 2024.

I- On March 11, 2024, Mr. Alexandre moved this court for a MOTION FOR RETURN OF
SEIZED PROPERTY taken by the Receiver unlawfully through a warrantless search
and seizure in the early morning hours of May 12, 2022, from the private home
of the Defendant, immediately after the Receiver got confirmation from the FBI
that they   had    taken Mr. Alexandre with them to the FBI Headquarter (HQ).
And, this is after the FBI instructed the Receiver not to go onsite with them
to interfere with their operations protected by a judicial warrant.  The Receiver
decided to wait close by to ambush Mr. Alexandre's family, knowingly and will-
fully, as he admitted knowing by coordinating with the FBI that morning that Mr.
Alexandre  was "not present" to answer his inquiries and for any lawful search
and seizure.

J- On March 25, 2024, after the Receiver filed a response to the Judge's Order
to address "Mr. Alexandre's claim that the Receiver unlawfully obtained the said
laptop" [emphasis added], the MOTION FOR RETURN OF SEIZED PROPERTY was subse-
quently DENIED without prejudice by Honorable Judge Caproni without any legal
analysis or basis, AND without allowing Mr. Alexandre the opportunity to respond
to the objections of the Receiver submitted to this court  by and through his
attorneys.  Cut short from getting the relief and his due process, Mr.
Alexandre was left deprived of any other procedural choices, in this instant
action, but to file a motion for reconsideration under FRCP Rule 59(e) & 72(a),
(b)(2).

Hence, since taking over the lead of his legal defense, on about 45 days ago,
Mr. Alexandre's first significant action, among others that followed suit, was
to attempt to right this wrong against the violation of his Fourth Amendment to
the United States Constitution and filed a Motion for the Return of Seized
Property through a warrantless search and seizure by the Receiver.

---

[1] Mr. Alexandre is a full time GED Student at the Bureau of Prisons (BOPs) and received his High
School (H.S.) Diploma on or about 34 years ago.  The BOP requires an official transcript of a foreign
High School Diploma to be sent directly to the Education department of the BOPs by the ministry of
Education of the foreign Country.  Haiti has political unrests and cannot send it at this time.

MEMORANDUM OF POINTS AND AUTHORITIES

Fourth Amendment principles governing searches and seizures apply only to "governmental action" and are thus wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation  or knowledge of any government official.  See United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L. Ed. 2d.2d 85 (1984) (Internal quotation marks omitted.)  A "search conducted by a private individuals at the instigation of a government officer or authority" may sometimes be attributable to the government "for purposes of the Fourth Amendment," See Cassidy v. Chertoff, 471 F.3d 67, 74 (2nd Cir. 2006); but private actions are generally "attributable to" the government only where "there is sufficiently close nexus between the State and the challenged action of the ...entity so that the action of the latter may be fairly treated as that of the State itself," See United States v. Stein, 541 F.3d 130, 146 (2nd Circ. 2008) (Internal quotation marks omitted).  The requisite nexus is not shown merely by the government approval of or acquiescence in the activity, or by the fact that the entity is subject to government regulation.  "The purpose of the [close-nexus requirement] is to assure that consitutional standards are invoked only when it can be said that the [government] is "responsible" for the specific conduct of which the [accused] complains." Id. at 146-147 (quoting Blum v. Yaretsky, 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L. Ed. 2d 534 (1982);  See, e.g., Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 614, 109 S.Ct. 1402, 103 L. Ed. 2d 639 (1989)(Whether a private party should be deemed an agent or instrument of the Government for Fourth Amendment purposes necessarily turns on the degree of the Government's participation in the private party's activities...") as in the case of this instant action by the CFTC Court-Appointed Receiver, there is no dispute that He is a government agent.

The need to determine whether the Receiver conducted his search and seizure as an agent or instrument of the government was what led the District court to Order the Receiver to respond to Mr. Alexandre's claim of unlawful search and seizure by an agent of this court.  See March 25, 2024 response from the Receiver Dkt. 284. After considering the Receiver's response, the court immediately ruled that "the Receiver's search and seizure consituted a lawful search to recover stolen funds" and was therefore beyond the reach of the Fourth Amendment," March 25, 2024 Order, Dkt. 284.

Thus the motion for return of seized properly was DENIED, Dkt. 284, on the Receiver's intention to recover stolen funds.  It's worth nothing that rationale is not challenging the "attributable to" the government as per the close-nexus requirement, and therefore cannot stand to satisfy the purposes of the Fourth Amendment to limit the degree of the government's intrusion in a citizen's life without due process and safeguards.

The Defendant moved for reconsideration to suggest that the court overlooked a significant issue raised in the claim of the Fourth Amendment violation arising from the warrantless search and seizure by a government agent/actor.  Mr. Alexandre hereby makes the effort in this court to develop a record as to any conduct by the Receiver in the execution of the warrantless search and seizure of his personal laptop, inter alia, searched and seized from his private residence while he was being interrogated at the NY FBI headquarters.  Mr. Alexandre believes that there is a strong foundation that the Receiver violated his Fourth Amendment rights, and alternatively requests that this matter be considered for

his Appelate contention that there was action by the Receiver on the morning of
May 12, 2022 that violated his Fourth Amendment rights.  Henceforth, Mr. Alexandre
contends that there is a viable basis for disturbing the district court's denial
of the motion for the return of seize property.

    The Receiver responded to the ruling by providing a lenghty reply to
the Motion for the Return of Seize Property by publishing the personal informa-
tion of EminiFX ex-employees, Mr. Alexandre's personal information, Mr. Alexandre's
immediate family member's personal information (his home street address) in an
attempt to harass the Defendant's immediate family and ex-employees of EminiFX;
and to intimidate the Defendant in his pursuit of Justice and fairness.  The
answer was filed and made public to the world on the open docket.  Mr. Alexandre
is shocked that the Receiver's highly competent and experienced attorneys and
law firm did "not" prevent him from committing such act, since almost every filing
of the Receiver is made "secret" under seal, per the theory that this is a very
public case with a very large number of investors that he wants to protect the
receivership contractors from.  He does not want the investors to see the names
of his employees and contractors getting paid from their funds.  Yet, in the same
breathe, the very first opportunity he had, he started the reckless and malicious
publishing, in the open (unredacted), of the names and personal information of
family members, ex-employees, and third parties, not party in this instant action.
As a CFTC-Court-Appointed Receiver the public expects more from an officer of the
court, and with his competent legal team, this is not a mistake but an attempt
to harass, harm and intimidate.  It was made willfully in an attempt to harass
immediate family members, and the ex-employees of EminiFX who are not party in
this instant action.

    Before Mr. Alexandre could receive a copy of the answer in the mail,
and respond to this egregious act of malicious posting, (something caused the
Receiver to reverse course).  The Receiver refiled the motion with the informa-
tion redacted and a request to seal the private information.  This is definitely
too late because one cannot remove information from the internet that easy.
Once it is posted and downloaded, it is out there and irretrievable.  One may
wonder why the Defendant is raising his Fifth Amendment rights against this
Receiver, among other things.  This is just not carelessness, this amounts to
gross negligence and malicious posting because the damage is significant and
this is coming from an agent of the court who is an officer of the court as a
professional attorney member of the BAR.  This pattern of gratuitous attacks of
the Defendant serves no legitimate purpose. The reasoning explained by the
Receiver was: since there is no protective order yet filed, it is still time to
cause some damages.  In the process of inflicting such damages, he inadvertently
posted his own personal information and turned around and requested permission
from the judge to seal his information.  Mr. Alexandre opposes such request on
the basis that the Rule clearly says that constitutes a waiver of protection of
identifiers stating in whole and in part "a person waives the protection of
Rule 5.2(a) as to the person's own information by filing it without redaction
and not under seal.  Mr. Alexandre opposes the ruling allowing the Receiver to
mislead the court in this request.

    Had Mr. Alexandre known that the Receiver would commit such an horrible
act, he would indeed file a protective order against him instructing him to refrain
from posting any private information about his family, ex-employees, and any
private information for individuals related to Mr. Alexandre in any shape or form,

not a party to this action.  Obviously, as a CFTC-Court Appointed Receiver,
Mr. Alexandre had higher expectations and held the Receiver to higher stan-
dards, but Mr. Alexandre stands corrected.  From now on, the Defendant will file
a set of protective orders and or a gag order request if necessary to limit the
damages that the Receiver is intent on causing to unrelated parties to this action
as a form of retaliation for Mr. Alexandre's decisions to vigorously defend him-
self against each and every claims in this civil action.

     The Defendant hereby seeks a reconsideration seeking relief from the
denial of the Motion for the Return of the warrantless search and seizure, his
personal laptop.  Mr. Alexandre believes that the District Court erred by failing
to Uphold his Fourth Amendments rights by ignoring the  gross abuse of power of
its agent: the Receiver, on the morning of May 12, 2022.  The motion raised the
claim providing the authority and controlling cases to support the request, and
the DENIAL did not address the merits of the motion before the Judge.  Without
citing any authority nor addressing any merits, the Judge issued a ruling without
giving the Defendant an opportunity for a traverse-reply to respond to the
Receiver's objections since the Defendant is the movant in this motion.

     Furthermore, the Defendant is equally disturbed by the wording of the
Judge's sua sponte ruling stating in whole and in part without any readily
apparent reason "in his effort to return--stolen funds-- to EminiFX Customers."
This is disturbing for the first time in twenty months for Honorable Judge
Caproni to aver that conclusory statement wholly without merit for a case that
is in its infancy at the Complaint/Answer stage, setting a new direction in this
action influencing the jury pool.  Mr. Alexandre believes that the Judge's
answer shows predetermination sub judice.

     Mr. Alexandre would like to underline seriatim the tension between the
Judge's primary response and warming of her unwillingness in releasing the laptop
inter alia, unless released to the BOP's, showing no interests in a fact finding
mission or an evidentiary hearing ad initio; and the Receiver's position willing
to return the warrantless search and seizure product ad interim, to wit, the
personal laptop (albeit with some conditions that should be addressed at
discovery).

     In his response to the court, the Receiver alleged the following as
arguments to explain his actions.  The Receiver,  is continuing to mislead the
court, the public and the EminiFX investors by inferring allegations that he
knows or should have known by now to be untrue, and must have known as an officer
of the court due to his position and the role he played and continues to play
in the joint-investigation as an agent providing data to both the CFTC and the
AUSA offices.  Out of an abundance of caution, Defendant presents facts below
that contradict and expose the attempts in furtherance of the faulty assump-
tions that led to this action brought by the CFTC.  For all instance  purposes,
the Defendant will treat the CFTC's position and the Receiver's interventions
as one and the same since they agreed in principle that they share congruent
views on that filing.

1- The Receiver knows the difference between warrantless search and seizure and
an abuse of power through a warrantless search and seizure.  However, fueled by
the motivation to serve his sponsors, he did it anyway.  The Defendant is ready
to file an interlocutory appeal to resolve this matter resulted in an error of

-7-

law condoning the abuse of his Fourth and Fifth amendments rights.  That is simple matter of constitutional law, a simple construct.  The question before the Court is: on the morning of May 12, 2022, did the Receiver secure a warrant from a magistrate or a district  Judge before he proceeded to execute a warrantless search and seizure of the Defendant's personal laptop at his private residence that he knew was the dwelling place of the Defendant and his family because he was on the phone coordinating with the FBI as for when he can make his move.  Mr. Alexandre argued to the Code and provided controlling authority that dictates the ruling on this matter. See motion Dkt. 279.

2- The Receiver as an agent of the CFTC and court &  the AUSA acting as such to make the EminiFX company look bad in the hope that EminiFX and its investors will lose the case, and to facilitate the CFTC to prevail and take dozens of millions to support the AUSA to win and secure a conviction, and for the Receiver and his friends to eat up most the millions left, leaving the investors running around trying to find out the answer to this question: "where did  the money assembled by the Receiver go?"  Hence, the Receiver can never be trusted in that action and he proved it.  Only his skewed data is provided as proofs, yet he cannot even explained most of it, his excuses he did not find data.  The Defendant intends on getting these answers in cross-examination if/when we get to the merits phase of this action in the jury-trial phase not in-limine at the start of the case.

3- In his effort to continue to mislead the court, the public and the EminiFX investors, the Receiver by and through his attorneys, advanced an argument that he wanted to get the laptop to gain access to the Defendant's GMAIL account. The reasoning is: because usually, there is two-factor authentication (2FA) code that only resides on that said laptop that would open the door to the GMAIL and his technicians promised "him" that they could then run freely through that GMAIL account, run all sorts of queries, with the power to remove and delete anything they dislike and finally return the laptop sanitized to the Defendant with the power vested in them by the Constitution of the United States.  This is the most dangerous and baseless argument ever read in a motion.
Technically speaking, email two-factor means two elements, i.a., a password and (±) a code (one-time-passcode [OTP]) through a separate app providing that kind of code.  Hence, that excuse is baseless and does not even worth the weight of an argument. Plainly speaking, even if you would get the laptop, with the example of the two-factor above, you still cannot access the GMAIL account— without the second factor, that's why it's called two-factor authentication(2FA). Obviously, preying on the good will of judges, instead of educating the court, the Receiver is making a foul of the justice system.  That argument is not a mere assertion, it is a naked lie.

4- When it comes to the related argument by the Receiver's request to be able to sanitize and delete the Defendant's personal data at will, it is interesting that the Receiver could argue that  he holds more power than the Constitution to rampage across an individual's personal life without any safeguards of the consitution,freely removing and deleting whatever he likes or dislikes, without a judgement on the merits from this action emanating from a **verdict** by the trier of fact, inter alia, the Judge or the Jury trial in context and a court order allowing to delete personal data which is highly unlikely. It is as if we are looking at the doctrine of res judicata, where all is done, the Jury in this action has already deliberated and found Mr. Alexandre the losing party in this civil action before Judge Caproni and found the Defendant liable

of the liability brought forth in this action.  Not only this statement to destroy
content on his personal laptop is infringing upon the First, Fourth, Fifth, and
Sixth Amendments rights of the Defendant, but this is utterly premature and con-
clusory in light of the civil action process that is not yet concluded by the Jury
in this action.  Hence, the Receiver, by and through his attorneys, is once again,
as done in the ex-parte Statutory Restraining Order (SRO), attempting to bypass
the due process and declare Mr. Alexandre guilty on all charges replacing the due
process and ready to pull the trigger to sanitize everything and anything that the
Defendant may use to fight this civil action, allegedly with the power granted to
the Receiver.  This is not only premature but preposterous when we know based on
facts and past sharing that the Receiver under the cover of being a court-appointed
Receiver, is acting as an agent of the Commodity Futures Trading Commission (CFTC)
and the Assistant U.S. Attorney (AUSA) to gain access to data they would other-
wise need to secure warrants for, through contempt proceeding, with due process
allowing the Defendant to assert his rights and to oppose such requests via proper
litigation and in the proper venue.

5- Mr. Alexandre understands the desire of the court to protect one of own
Court-Appointed agent.  However, lady Justice is supposedly blind.  It will serve
the community well to show justice and fairness no matter where justice leads.
That action clearly fails to provide constitutionally mandated procedural safe-
guards.  The Judge in her ruling made an interesting statement about the Receiver's
efforts to return stolen funds to EminiFX Customers.  Mr. Alexandre objects to
that language.  That statement in conjunction with her other rushed decisions are
indicators that she is predetermined.  This is a statement without proofs from this
honorable bench showing how much the Receiver influenced the Judge's opinions at
the begining of a proceeding where we are only at the entry of the procedural
phase and nothing yet done on the merits.
        The phases are usually as follows:  a) Complaint  --> b) Ansmwer -->
c) Pre-trial Conference Issues  --> d) Discovery/Dismissal --> e) Jury Selection
-->  f) Trial Procedures  -->  g) Judgement  -->  h) Post-Trial Issues / Appelate
Process.
        While we are at step (a), that language is nothing less of poisonning
the Jury pool as there is nothing yet file on the records to justify such posi-
tion by the Judge.  Obviously, if that statement was coming from the plaintiff
(CFTC) the Defendant would haved had the opportunity to cross-examine and object.
How did the Judge reach the --stolen funds-- conclusion?  Mr. Alexandre does not
envision how the Judge can be impartial moving forward.  Henceforth, Mr.
Alexandre hereby reserves the rights to seek further reliefs from the justice
system in due time.  There appears that this conclusion lacks the analysis into
the required factors that go along with reaching a decision in this action to
resolve this motion for the return of the warrantless search and seizure, the
personal laptop of Mr. Alexandre.

6- On the morning of May 12, 2022, the Receiver has reported talking about Mr.
Alexandre's wife at the door, and at times about the CFO, and other times to
someone who answered the door.  The Receiver admitted that at that time it was
 unclear [to the Receiver] whether there was EminiFX property located at the
House that the Receiver had an obligation to secure."  See Dkt. 284 at 5.  Mr.
Alexandre will save that statement as an "admission."  Knowing that he had no
legal basis for the search, the Receiver therefore decided not get a warrant.
There is a wanted confusion added to the mix at will in an attempt to blur the
lines between the CFO and spousal privilege.  According to the rule of conjec-

tural choices, the principle that no basis for recovery is presented when all theories of causation rest only on conjecture ([a] guess; supposition; surmise), the Receiver knew that his actions were wrong.  Conjectural choice, Black's Law Dictionary (11th ed. 2021).  For a moment, on the morning of May 12, 2022, the Receiver forgot all about spousal privilege, and/or the laws about private dwelling, privacy interests requirring a judicial warrant to authorize the search and seizure.  Since he did not know what he was looking for, he could not have secured a warrant.  Therefore, he decided to bypass the constitution and send his agents regardless, hoping that the Judge would understand and protect his actions. It was not until later when my legal team started to assert spousal privilege that he began to realize that his position was untenable and fell flat on its face not able to pass muster.

7- Home/Dwelling:  Or, the offices of EminiFX, Inc.  In addition to be unprofessio-nal conduct, this appears to be a tortious conduct when judged by the standards of the actors' profession--a lawyer acting as a CFTC-Court-Appointed agent.  When an officer of the court, a lawyer turned Receiver, acting in a double role as now agent of the court is conducting  warrantless search and seizure, this is deemed a dangerous wrongful conduct, and an act taken in violation of a legal duty; an act unjustly infringing on the Defendant's constitutional rights by the very same court who suppose to protect his rights.  That argument by the Receiver speaks into the ineffectiveness and dishonesty of the Receiver who, to support that assertion proffered Ex. 1., to show that the private residence of the Founder of EminiFX was an office of EminiFX.  Hence, he had the rights to barge in and take whatever he wanted, anytime he wanted, and anyhow he wanted, end of story;  this is totally unlawful and so wrong on many fronts.  Let's review his statement: "Given that Alexandre's house was the official address of EminiFX, and that it was 'unclear' whether there was EminiFX company property located at the home that the Receiver had an obligation to secure..." See Dkt. at 5. Cleaned up.  That statement is recorded as an admission that he the Receiver had ZERO basis for the warrantless search and seizure.   After admitting all that, yet the Receiver sent his agents requesting the personal laptop instead of attempting to secure a warrant because he knew for a fact he was on a fishing expedition, but he wanted to do something far nefarious, HIDE the laptop, freeze the laptop for 22 months and infringe/impede Mr. Alexandre's ability to search his personal notes on his personal laptop to defend against this instant action brought by the CFTC his recruiter and hiring manager.  This is considered an admission of guilt on the record of a willful warrantless search and seizure.

        Furthermore, the Receiver is also misleading the court with the Ex. 1 proffered as showing the official address of EminiFX on that certificate as the 2nd address the Receiver had for the EminiFX office.  The Receiver went straight to the 34th Street, NY office space with the FBI onsite and said he sat in the conference rooms in that location because he knew where the official address was located.  Otherwise, the Receiver would have gone to Mr. Alexandre's living room and sat there  instead.  If the Receiver did his due dilligence before rushing to proffer falsehoods to the court, he would have not proffered that exhibit to the court, because at the time of his warrantless search and seizure, on the morning of May 12, 2022, the Secretary of State of New York completed the re-quest to update the mailing and corporate address of EminiFX, inc., to be ONLY the 34th address. A request that took the EminiFX corporate counsel about six (6) months due to the backlog of Covid-19, but nonetheless it was completed. Since everyone was going back full time in the workspaces, the mailing address

was more convenient and appropriate for service from and by the State.  In every
Bank documents and any other contracts, including our corporate website, the 34th
street address was the only official address printed and the Receiver knew that.
He knew, should have known, and subsequently Mr. Alexandre believes that the
Receiver has a duty to be thorough and truthful with the court.  A lawyer has
an obligation to provide true information to the court, and udpate the court of
any mistake throughout the entire proceeding pursuant to the Model Rules of
Professional Conduct (MRPC) Rule 3.3 Candor toward the tribunal stating in whole
and in part, [a] lawyer should not knowingly:

> 1) make false statement of fact or law to a tribunal or fail to correct
> a false statement of material fact or law previously made to the tri-
> bunal by the lawyer;
> 2) fail to disclose to the tribunal legal authority in the controlling
> jurisdiction known to the lawyer to be directly adverse to the position
> of the client and not disclose by opposing counsel; or
> 3) (a) in an ex-parte proceeding, [like this action] a lawyer shall
> inform the tribunal of all material facts known to the lawyer that will
> enable the tribunal to make an informed decisions, whether the facts
> are adverse.

8- In the alternative, waht if the private dwelling of Mr. Alexandre was in fact
the EminiFx official address for the sake of a legal argument?  The first and most
important Fourth Amendment principle with respect to searches and seizures is that
searches must ordinarily be cleared in advance as a part of the judicial process.
See U.S. v. Chambers, 395 F3d 563 (6th Circ. 2005).  And the controlling Jurisdic-
tion in this action concurs as follows, (1) One's home is sacrosanct, and unrea-
sonable government intrusion into the home is the chief evil against which the
wording of the Fourth Amendment is directed.  (2) The Fourth Amendment prohibits
a general warrant for good reason.  Worst, there is absolutely NO warrant at all
in this conduct.  This was a blatant violation and a fishing expedition confirmed
and admitted by the Receiver on record.  See Chambers, supra.

   The Supreme Court made it clear that home search pursuant to WARRANT
that failed to describe person or things to be seized held to violate Fourth
Amendment; Federal agent who led search held not entitled to "qualified immu-
nity" from suit with respect to violation.  See Groh v. Ramirez U.S., 157 LE2d
1068, S.Ct. (2004). Emphasis added.

   The Fith Circuit concurs and explains that because the Fourth Amendment
requires "particularity", "open-ended" or "general" warrants are constitutionally
prohibited.  See Williams v. Kaufman Country, 352 F3d 994 (5th Circ. 2003). Em-
phasis added. What we have in context is worse, in this conduct there is NO
warrant at all.

   It's interesting that this laptop taken as a a result of a warrantless
search and seizure has been through multiple iterations of nobody knows what and
where.  Reading the kind of gymnastic made by the Receiver, by and through his
attorneys, one may wonder if we will ever uncover the truth in this story.  Even
police officers are not free, absent a search warrant or exigent circumstances,
to enter dwelling in order to "FREEZE" the scene until a search warrant can be
obtained.  See U.S. v. Desseaux 429 F3d 359 (1st Circ. 2005).  That laptop has
seen better days but it said to have been frozen for the past 12-23 months.

   There is another vantage point in the attempt to mislead the court by
saying Mr. Alexandre's home was in fact EminiFx official address. To concede
that point for agument sake will lead to another unlawful significant violation.

-11-

Absent exigent circumstances, police must have SEARCH WARRANT to ENTER ANY AREA
in place of business that is OFF LIMIT to the general public.  As a pro se defen-
dant, I know that, a lawyer with that much responsibility and represented by a
highly competent law offices cannot pretend not to know that doctrine.  See
O'Rouke v. Hayes, 378 F3d 1201 (11th Circ. 2004).  Therefore, the Receiver knew
that even if it would be an official "address" he needed a judicial warrant.
          Henceforth, this is the reason why the Government is required to show
voluntary consent to search by a preponderance of evidence BEFORE obtaining
the search warrant.  See U.S. Larkos Key, 462 F3d 965 (8th Circ. 2006).
          Mr. Alexandre is aware that he is entitled to bring independent civil
action  for return of property even if the underlying criminal case has been
closed.  See U.S. v. Guzman, 85 F3d 823 (1st Circ. 1996).
          The conduct we face in this action is simple.  Unlawful search and
seizure can never be justified by its fruits.  See Parkhurt v. Trapp, 77 F3d 707
(3rd Circuit 1996).
          Under the Supreme Court's FRANKS decision, search warrant is invalid
if affiant knowingly and intentionally, or with recklessly disregard for the
truth, includes false statement in warrant affidavit.  This is worst in this
case, there is no warrant, just a violation in an attempt to "FREEZE" the lap-
top until a warrant can be obtained.  The Receiver knew he was wrong.

9- The Receiver is talking about consent, but seems to lack the courage to deny
that the laptop is Mr. Alexandre's personal laptop.  Although he is aware of the
previous filings taking issues with the manner in which the personal laptop was
obtained in direct violation of the Defendant's Fourth Amendment constitutional
rights.  Mr. Alexandre completely objects to the argument of consent, since the
Receiver's agents were --specifically--asked by Mr. Alexandre's spouse and his
brother-in-law on the phone comforting her when she called to share the news of
the arrest: Do you have a warrant? The agents said NO, but they have a Court
Order to get the laptop.  One can only imagine the level of confusion on the day
of the arrest, minutes after the FBI departed and sent an SMS (text message) or
called the Receiver who had a team hiding in ambush close by, waiting to jump
in the spur of the moment of shock, to surprise Mr. Alexandre's family and take
advantage of the confusion.  There was absolutely NO consent, there were objec-
tions and apprehensions without resistance (because they said they had a court
Order), Mr. Alexandre was not present nor provided consent either, his family
surrendered the laptop knowing that Mr. Alexandre  would be able to deal with that
violation through the judicial process.  This was a gross abuse of power, a trap
set by a court-appointed agent who was supposed to uphold the law.  Mr.
Alexandre hereby  rejects this attempt to lessen the offense conduct and requests
 for the return of his personal laptop without conditions pursuant to his Fourth
Amendment Constitutional rights.

10- The Receiver is talking about access to GMAIL that pertains to EminiFX. Mr.
Alexandre by and through his previous legal team  already asserted his rights
when it comes to handing over anything to the Receiver acting as a portal to the
AUSA and the CFTC in an attempt to bypass the consitutionally mandated procedural
safeguards put in place that guarantees protection against governmental intrusion
and abuse.  Mr. Alexandre, now pro se, reasserts the same Fifth Amendment rights
for this instant action and post-conviction remedies, and will file the necessary
protective orders if/when we get to discovery during the pre-trial issues phase.
The Receiver knows that Mr. Alexandre has his private and confidential attorney-client
emails in his GMAIL account that he will use to defend against this instant action

and post-conviction remedies.  Hence, this is not something Mr. Alexandre is
willing to compromise.  It is no surprise that the Receiver wants to gain full
access to Mr. Alexandre's GMAIL and share them back with Mr. Alexandre under
strict conditions that the Receiver will set.
Disclaimer: "Mr. Alexandre's attorney warned him that if he did not sign the
final agreement, the Government can use the Receiver to go after him, his fami-
ly, and his relatives, in retaliation." "Mr. Alexandre's response to his was
that he considered himself warned."  However, even using the personal GMAIL as
excuse, Mr. Alexandre did NOT expect the brutal retaliation to be that gross
and consequential in the way the Receiver did it beyond what he can ever repair
as explained in the following paragraph.

Now we have seen  hat the Receiver does when he is entrusted with private infor-
mation, what he did on the public record with EminiFX related emails in his posse-
ssion and Mr. Alexandre's private GMAIL copies in the Receiver's possession:
the Receiver just published them on the open docket without any regards to privacy
and protection to redact personal contact and identifying information of Mr.
Alexandre and his immediate family's wellfare, EminFX ex-employees; and/or
EminiFX users; third parties vendors/contractors; parties not a party to this
action;  information that could be used to identify employees of EminiFX; inter alia,
names, userID's, personal contact information; personal full email address;
personal private numbers, Mr. Alexandre's full GMAIL address; Mr. Alexandre's
full mobile phone number; Mr. Alexandre and his family home street address; Mr.
Alexandre's personal laptop full serial number (the claimed laptop) knowingly
and willfuly even though he knows that as a lawyer that information could be
used  to the disadvantage of the individuals to whom it belongs... He is reckless,
and malicious, as there is no other way to put this.  One may never find out the
extent of his covert actions although we can judge them by the over actions on
the open docket and the ones reported by the parties he dealt with in the past:

a) When the Receiver arbitrarily shutdown the offices in Manhattan, the Recei-
ver referred the Landlord to Mr. Alexandre for damages and breach of contract
claims.  Mr. Alexandre as a personal guarantor to this lease on behalf of
EminiFX, by and through his attorneys, managed to work with the Landlord to have
them wait for the proper time to file a claim instead of filing a multimillion
dollars lawsuit against Mr. Alexandre.

b) Although the Receiver and the CFTC had placed a FREEZE on all of Mr. Alexandre's
and EminiFx assets, the Receiver allowed other parties to sue Mr. Alexandre,
against the primary injuction he is enjoying and supposed to enforce, for the
Glen Cove Purchase, only to be rebuked by the Judge asking him to take the legal
position he was supposed to take from the get go.

c) The Receiver again, allowed other parties to sue Mr. Alexandre, in a Florida
lawsuit v. the 7th-Day Adventist Church, against the primary injunction he is
enjoying and supposed to enforce, Mr. Alexandre found out through the motions
the Receiver was in fact in close communications with them through the explanations
the Receiver provided for the extent of his collaboration with them before the
suit came to life.  Mr. Alexandre's legal team had to step in and set the records
straight removing Mr. Alexandre's name from that suit.  (Mr. Alexandre will
deal with that suit at a later time.)

d) The Receiver is also working behind the scene and openly with that same group

led by the disgraced and disbarred attorney, who after spending seven years in
prison, instead of finding a honest job to rehabilitate himself, is charging
EminiFX investors $1,000 per person to pay their way into the promising class
action lawsuit; the Receiver is working with them and conducting live interviews
and media campaign with them to promote defamation,  slander and libel against
Mr. Alexandre through media appearance and TV Ad-promotions that Mr. Alexandre
will address in a separate  motion.  Mr. Alexandre filed a complaint against that
disgraced and disbarred attorney in the Criminal proceeding to bar him from
representing himself as an EminiFX investor during sentencing bringing claim
against Mr. Alexandre.  Honorable Judge Cronan said he would refer the matter
to the honorable Judge Caproni.  Mr. Alexandre hopes He did just that.

e)  It is worth nothing that the Receiver gave confirmation to the Criminal
Court that he has the correct dollar figues that were used to "enhance" Mr.
Alexandre's years of prison and to justify the total restitution dollars amount
that was provided to sentence Mr. Alexandre for the offense conduct as per the
guilty plea entered  in the plea agreement.  Yet, now it appears that the Receiver
suddenly is UNSURE about these figures.  This is an interesting development, and
Mr. Alexandre is very interested in this new position as it may be an issue to
raise back in the post-conviction remedies.  Defendant hopes that he misread
into the Receiver's new positioning and will get to that if and when we cross
that bridge during discovery in the pre-trial conference issues phase.

f) The public dissemination action by the Receiver placed Mr. Alexandre and his
family in grave danger.  A couple of days before the sentencing leading up to
hours before Mr. Alexandre's sentencing, his attorney received a phone call from
the SDNY Court informing him that all measures had been taken to protect Mr.
Alexandre's life against ongoing death threats that they verified to be sub-
stantiated.   The message was to inform Mr. Alexandre that the U.S. Marshall
was notified and all relevant authorities alerted to provide proper security to
protect Mr. Alexandre and his family's life, liberty and property. You can
imagine the extent of the damage the Receiver knowingly and willfuly is causing
with that kind of unredacted reckless publication on the open docket.  Did he
know?  Should he have known?  What would push him to commit such attack?

g) The Receiver wants to start deleting and sanitizing proprietary code and
EminiFx information from Mr. Alexandre's personal laptop or GMAIL account with
the power of the Receivership. Mr. Alexandre wants to point out that the Recei-
ver is "not" the owner of EminiFX, inc. He is merely a trustee for the time
being in charge of securing and holding the assets of EminFX and Mr. Alexandre's
assets until there is a final judicial resolution in this action.  And, as such,
the Receiver can be removed or terminated at anytime permanentiy or be replaced
by another Receiver.  Henceforth, the efforts to go beyond his mandate is quite
worrisome and the attempts by the Receiver to cause damages and inflict harm
beyond what he can repair will be addressed in future motions during the
pre-trial conference issues.

h) The Receiver's job is simply to collect all the assets; keeping them in an
interest-bearing accounts as required by law; and, defend the Estate against
any claims, and effect disbursement to pay any obligations generated by his
actions or prior to his actions; and, primarily returning the investor's funds
to their rightful owners on records.  Obviously, marred by his level of inex-
perience, this Receiver has gone further, and took actions that were against

-14-

the interests of the EminiFX estate and the investors of EminiFX, but it's worth
reminding him of his mandate; and until there is a final judgment in this action,
there is "no" final resolution delegating a special mandate to the Receiver to
delete and destroy anything that has to do with EminiFX. This is a "recover and
preserve mission" not a "search and destroy mission."  The Receiver should refrain
from acting outside of his mandate and destroy evidence no matter how much he
believes he is favored by the court.  The founder and owner of EminiFX is Mr.
Alexandre, and this instant action can be reversed at anytime giving back EminiFX to the
investors.  This is how justice works, at the very least what's on paper.  Hence
the reason why, Mr. Alexandre, the ex-CEO, founder of EminiFX is still an active
party with a say in this action; as an acting CEO of EminiFX, the Receiver must be
reminded that he can be terminated for cause and/or replaced by someone else as
this is an adversarial process in an ongoing proceeding.

i) Furthermore, we know that the proprietary code the Receiver has referenced
is in the Receiver's possession on the EminiFX servers and workstations in the
office of the CEO that he took over after the FBI left these electronics in his
possession to do the work for them [even though the FBI had a warrant to secure
all EminiFX electronics].  It appears that the Receiver did not realize that he
has all the code necessary to run EminiFX as proprietary code because he came in
with the preconceived ideas to shut the company down unaware that he would find
a complex operation. Instead of protecting anything, the Receiver said from day
one there is NO operation, just a smoke or a make believe.  A couple of days into
the shoes of the acting CEO, he quickly turned around and requested an emergency
motion to hire over 60 people immediately because he found a very complex opera-
tion with a large portfolio of real estate (Mr. Alexandre believes that was a
proof of how the fishing expedition went. No investigation, or due process, just
going on a hunch.  The CFTC and the Receiver were ill-prepared and should have
known).  The request was summarily GRANTED.  As far as the physical proprietary
code, the Receiver has the "code".  For the concept of project, EminiFX is an
"ideal, a vision" emanating from the opportunity to use unconventional "DIGITAL
ASSETS" to relive "the vision of BLACK WALL STREET for the benefit of Main
Street".  Whether one chooses to like it or not, the intellectual property(IP)
"code of the vision" inhabits Mr. Alexandre's brain.  Mr. Alexandre has learned
a trove of legal-lessons through his ordeals, and how the system can construe
any actions according to their own understanding.  The fact that the Receiver
is looking for "proprietary code" that the AUSA testified that never existed is
a stark departure from his previous position and statements on the records:
there is no operation.  That change is welcomed by Mr. Alexandre and speaks
volume  into the heart of the Defendant's counterclaims.
         Although the Defendant did his very best to deal with potential re-
gulations by emailing the CFTC asking for assistance for any other licensing
that he would need, they ignored his written requests and six(6) months later,
based on faulty assumptions, and a conspiracy to destroy EminiFX for their own
benefits, the CFTC with its Receiver came out to destroy EminiFX and its assets
(as claimed by Mr. Alexandre in the Criminal proceeding and will be asserted in
this instant action during pre-trial conference issues if we get there.)  Going
through this, Mr. Alexandre is ten times more mature and better prepared to deal
with statutory regulations that would apply to an enterprise like EminiFX.  A
true genie stands for his visions and against injustice no matter where it may
come from.  Instead of trying to destroy the legacy of Mr. Alexandre, the
Receiver should focus his efforts on finding on how he will compensate the
EminiFX investors for the damages of the SRO and his own actions.  There is no

amount of distraction or magic tricks that can hide these damages.  Mr. Alexandre will address these actions during the pre-trial conference issues phase and/or during the Jury trial.

12- There is a mistatement made by the CFTC, echoed in the matter, that Mr. Alexandre approved the actions of the Receiver.  It's worth addressing these lies. It's worth remembering how we got there and how the Receiver was imposed on EminiFX  and on Mr. Alexandre "EX-PARTE" (one-sided proceeding) without due process. Hence, there is no possibility of approval in an ex-parte proceeding.  In fact, Mr. Alexandre disapproved of the actions taken by the Receiver, but for the records, to protect the EminiFX investors victims in that action, and as requested by the ex-parte Statutory Restraining Order (SRO).  Throughout the proceeding, Mr. Alexandre repeatedly assisted the Receiver in retrieving assets, and took NO POSITION to affirm his position publicly in addition to voicing his objection directly to the Receiver by and through his attorneys.  If the NO POSITION was assumed to be APPROVAL, Mr. Alexandre hereby clarifies his NO POSITION to: OBJECTS.

Mr. Alexandre assisted the Receiver in "assembling all the accounts" that the Receiver requested "even the ones outside of his jurisdiction, beyond his legal reach," and supported the Receiver's efforts in fighting against every and any claims that would otherwise hurt the EminiFX investors as a result of the actions taken by the Receiver during the dismantling of the EminiFX Real Estate and Digital Assets Portfolios.  This is NOT an approval of the imposed SRO nor the Receiver in any form or shape, but a conscious assistance designed to PROTECT the assets of the EminiFX investors that were being endangered and scattered by the SRO and the inexperience of the Receiver propelled into the Leadership of a company he does not understand nor wanted to protect.

Mr. Alexandre undertood from day one that the right thing to do was to assist the Receiver into gathering the EminiFX assets under one umbrella: The EminiFX Estate" for accounting purposes to save what could be salvaged in that orchestrated-debacle arising from this action.  Up to date, Mr. Alexandre is still in shock by the devastating effect of the Receiver's actions and the damages of the SRO in this instant action.  Mr. Alexandre reserves the rights to address them comprehensively during and after discovery in the pre-trial conference issues phase.  Any statements by the CFTC or the Receiver jointly or severally stating otherwise is not accurate.  Mr. Alexandre quickly realized he had to get involved to help assemble these assets no matter where they may be located and to protect the EminiFX Estate against any claims, to protect the status quo ante.  Mr. Alexandre had no ideas that the Receiver was about to cause such irreversible damages in liquidating the Real Estate portfolio and destroying the Crypto Portfolio.  That should have been predictable in hindsight due to the level of inexperience of the Receiver in the sector, albeit shocking.  This is why, even though about one thousand (1,000) investors filed a letter opposing the liquidation and destruction of their portfolios, the Receiver, instead of taking notice and change his willingness to destroy the company, looked the other way to find excuses saying in whole and in part that these were just "form-answer", whereas there was no stipulation instructing the EminiFX investors not to use a format at a time where most courts at the State and Federal Government level are encouraging the use of form-submission for uniformity.  The Receiver wasted their efforts and abused  their voices.  After asking the Defendant first, the Receiver said he would asked the members instead.  The Receiver ignored the feedback from the Defendant, ignored the investors and did the unbelievable.  He destroyed the future of over 35,000 members and their families.  Mr. Alexandre reserves

-16-

the right to seek relief against such abuse of power.  Not surprisingly, the
Judge rubber stamped his actions, backed him up; and authorized the sale.  Every
member of EminiFX is well educated enough into the crypto volatility strategy
that was promoted.  Mr. Alexandre totally opposed the sale, because no one is his
right mind would sell the BTC at its historical LOW when the top investment firms
on Wall Street were rolling out Crypto ETFs now fully approved by the SEC, against
their primary opposition based on the advice of counsel.  Mr. Alexandre held no
position in that debacle after voicing his opposition to the sale and was in full
agreement with the EminiFX members opposing the Receivers's liquidation.  Our
collective voices were  ignored, and today someone must be held liable for the
massive losses that Mr. Alexandre is left to restitute for the rest of his life
as a direct result of the ex-parte SRO, and the Receiver's poor judgment or
lack of thereof.  There is definitely more to this story.  Mr. Alexandre has
seen Receiver terminated for a lesser offense conduct.


CONCLUSION

          After reviewing and responding to all objections raised by the Receiver,
and providing more arguments in support of the motion for the return of seize
property, and establishing uncontested legal precedents to Honorable Judge
Caproni, it is clear that the Receiver, by and through his associates, agents,
assigns, contractors, employees, and or delegates, while acting as a CFTC Court-ap-
pointed agent, violated the constitutional rights of Mr. Alexandre on the morning
of May 12, 2022, by staking out Mr. Alexandre's private dwelling while waiting to
get confirmation from the FBI agents that they have taken possession of Mr.
Alexandre and driving to the FBI HQ.  Then, the Receiver, knowingly and willfuly,
conducted a warrantless search and seizure of Mr. Alexandre's home and property
under the disguise that he had court paper, while he knew that, "as admitted in
his response" Mr. Alexandre was on his way to the FBI headquarters and the
Receiver admitted being confused about what(thing) to look for, and from  who
to conduct the search.  Realizing that it was abundantly "UNCLEAR" as to what he
was looking for, and or what he would find, he made a bad judgment call to pro-
ceed without securing a judicial warrant from the same court who ordered the SRO
for the CFTC.  See Conn v. Cabbert, 526 U.S. 286, L.Ed. 2nd 399, 119 S.Ct. 1292
(1999) stating in whole and in part, prosecutors executed a search warrant of an
attorney's office while, at the same time, that very client was testifying in
front of a grand jury.  Mr. Alexandre contends that this offense was found to be
outrageous by the U.S. Supreme Court, and unreasonable, and unlawful.
          In the past, this court has found this behavior to be a grave violation.
And, more recently, the court reaffirmed the same position that would support a
motion to reconsider and grant the motion for the return of seize property without
conditions, and declare the warrantless search and seizure unlawful, in violation
of the Defendant's Fourth Amendment rights.  The honorable Judge Caproni failed
to hold the Receiver accountable for his actions, even though the Receiver was
willing to quickly put this matter behind him by "returning the laptop with or
without conditions," and deal with the emails requests later during discovery,
the Judge ignored his request and DENIED the motion without legal basis or legal
analysis based on precedents.  This appear to be an erroneous interpretation of
the Fourth Amendment rights violations of the Defendant.  A district court
abuses its discretion  if it bases its ruling on an erroneous view of the law or
on a clearly erroneous assessment of the evidence, or renders a decision that
cannot be located within the range of permissible decisions.  See U.S. v. Harlan,

-17-

26 F.4th 566, 569 (2nd Circ. 2022).

      Mr. Alexandre believes that the honorable Judge Caproni erred in finding that the Receiver's search and seizure was lawful in regards to the Fourth Amend-ment violation claim raised by the Defendant. Hence, there was an error in the DENIAL of the Defendant's motion for return of seize property effectively stating the warrantless search and seizure actions of the Receiver or the morning of May 12, 2022 was in fact beyond the reach of the Fourth Amendment's safeguards and purposes.

      WHEREFORE, for the reasons stated in the orginal motion, and arguments developed as reinforcements above, Mr. Alexandre respectfully requests the court to recon-sider the March 25, 2024 Order, Vacate that Order, Adjudicate and GRANT the Motion for Return of Seize Property obtained through a warrantless search and seizure, and declare this warrantless search and seizure unlawful. In the alternative, Mr. Alexandre respectfully requests that the court dockets this motion as a Notice of Appeal.

      DATED: April 22, 2024

Application DENIED. The standard for a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Id.* As Judge Cronan already held, the Receiver was not part of the prosecution team nor a participant in the FBI's search. Order, *United States v. Alexandre*, No. 22-cr-326, Dkt. 72 at 10. The Court authorized the Receiver to take possession of EminiFX's assets, and Mr. Alexandre's wife voluntarily surrendered the laptop pursuant to that Order. Order, Dkt. 9; Letter, Dkt. 284 at 2. Mr. Alexandre asserts no facts or controlling law meriting reconsideration.

Mr. Alexandre's personal info was never filed publicly; the public documents redacted all confidential information. *See* Dkts. 285-87. To the extent that this motion may be construed as a motion for recusal, there is no no basis for recusal pursuant to 28 U.S.C. § 455. None of the circumstances warranting disqualification enumerated in § 455(b) is present, and there is no ground on which the Undersigned's "impartiality might reasonably be questioned" pursuant to § 455(a). If Mr. Alexandre wishes to file a notice of appeal, he must file the appropriate paperwork, as set forth at nysd.uscourts.gov/forms/notice-appeal-civil-case

The Clerk of Court is respectfully directed to mail the endorsed Order to Mr. Alexandre and to note the mailing on the docket.

Respectfully submitted,

/s/ Eddy Alexandre
  Eddy Alexandre, pro se
  Reg. No.: 00712-510
  ex-CEO, founder of EminiFX, inc.
  FCC Allenwood-LOW
  P.O. Box 1000
  White Deer, PA 17887

SO ORDERED.

*Valerie Caproni* (signature)

05/06/2024

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMMODITY FUTURES TRADING
COMMISSION,

Plaintiff,

v.

EDDY ALEXANDRE and
EMINIFX, INC.,

Defendants.

Case No.: 22-cv-3822

Judge Caproni

CERTIFICATE OF SERVICE

        I hereby declare under the penalty of perjury, pursuant to 28 U.S.C.
§ 1746, that on this date I caused a true and complete copy of the attached to
be served, in placing same in a sealed envelope and routing it for mailing cer-
tified, via first class United States mail service, with postage thereon
fully prepaid, a true copy thereof  to the following interested party/ies:

1- The Clerk of Court
   United States District Court
   Southern District of New York (SDNY)
   U.S. Courthouse - 500 Pearl Street
   New York, NY 10007

2- Douglas G. Snodgrass
   Commodity Futures Trading Commission (CFTC)
   77 W. Jackson Blvd.
   Chicago, IL 60604

3- Notice to EminiFX
   David Castleman
   Court-Appointed Receiver of EminiFX, Inc.
   c/o Otterbourg, P.C.
   230 Park Avenue
   30th Floor
   New York, NY 10169

Date: 4 / 22 / 2024

Eddy Alexandre, pro per
Reg. No.: 00712-510
FCC Allenwood-Low
P.O. Box 1000
White Deer, PA 17887
LEGAL-MAIL (Open only in the presence
of the inmate)

-19-



Eddy Alexandre
Reg. No.: 00712-510
FCC Allenwood-LOW
P.O. Box 1000
White Deer, PA 17887

CERTIFIED MAIL®



7020 1810 0001 4635 1034

RECEIVED
MAY 0 1 2024
CLERK'S OFFICE
S.D.N.Y.






Retail

U.S. POSTAGE
FCM LG ENV
WHITE DEER
APR 24, 2024

10007

$0.00

RDC 99

R2305K13895

PRO SE

Clerk of Court
United States District Court
Southern District of New York
U.S. Courthouse - 500 Pearl Street
New York, NY 10007

USM·P3
SDNY