**COURT APPROVED PLAN**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, <br><br> Plaintiff, <br><br> -against- <br><br> EDDY ALEXANDRE and EMINIFX, INC., <br><br> Defendants. | 22 Civ. 3822 (VEC) |

**RECEIVER'S DISTRIBUTION PLAN**

David A. Castleman
OTTERBOURG P.C.
230 Park Avenue
New York, NY 10169
Tel: (212) 661-9100
*Receiver*

Jennifer S. Feeney
William M. Moran
James V. Drew
OTTERBOURG P.C.
230 Park Avenue
New York, NY 10169
Tel: (212) 661-9100
*Counsel for the Receiver*

Filed:        August 9, 2024
Approved:  January 21, 2025

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................1

ARTICLE I. PLAN DEFINITIONS AND RULES OF INTERPRETATION ............................2

    A.    Definitions................................................................................................2

    B.    Rules of Interpretation ...........................................................................7

    C.    Governing Law .......................................................................................8

    D.    Reference to Monetary Figures................................................................8

ARTICLE II. CLAIMS PROCESS........................................................................................8

    A.    Claims Procedures .................................................................................8

    B.    User Transaction Review Process.............................................................9

    C.    Proof of Claim Review Process (Non-User Claims) .............................10

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS ....................................10

    A.    Classification of Claims........................................................................10

    B.    Treatment of Claims .............................................................................10

        1.    Class 1 - Administrative Claims .............................................10

        2.    Class 2 - Tax Claims ...............................................................11

        3.    Class 3 - User Claims ..............................................................11

        4.    Class 3A - User Convenience Class Claims .............................11

        5.    Class 4 - Other Claims ............................................................12

        6.    Class 5 - Subordinated Claims................................................12

        7.    Class 6 –Equity Interests........................................................12

ARTICLE IV. CLAIMS ALLOWANCE, EFFECT OF LITIGATION ON CLAIMS
        ALLOWANCE..................................................................................13

    A.    Claims Allowance Process.....................................................................13

    B.    Exclusion of ROI from Verified User Deposit Amounts......................13

C.      Exclusion of Bonuses from Verified User Deposit Amounts ................................13

D.      Exclusion of Internal Transfers from Verified User Deposit Amounts ................14

E.      No Allowance of Claims Subject to Disputes ........................................................14

        1.      Potential Consolidation of Investor Accounts ...........................................14

        2.      Temporary Litigation-Related "Review Holds" .........................................14

        3.      Litigation Demands ....................................................................................15

        4.      Potential Subordination of Investor Claims ...............................................15

ARTICLE V.    DISTRIBUTIONS PROCESS ...........................................................................16

        A.      Summary of Rising Tide Methodology .................................................................16

        B.      Timing and Approvals of Distributions .................................................................17

        C.      Form of Distributions ............................................................................................17

        D.      Distribution Reserves ............................................................................................18

        E.      No De Minimis Distributions Required .................................................................18

        F.      Compliance with Applicable Law .........................................................................18

        G.      Distributions to Third Parties ...............................................................................18

        H.      Disposition of Unclaimed Property .......................................................................19

ARTICLE VI.  RECEIVER CAUSES OF ACTION ....................................................................19

        A.      Preservation of Receiver Causes of Action ..........................................................19

        B.      Potential Claims and Causes of Action .................................................................20

        C.      Receiver's Discretion Regarding Causes of Action ..............................................20

        D.      Treatment of Net Winners .....................................................................................20

ARTICLE VII. TAX ISSUES ........................................................................................................21

        A.      Class 2 Pre-Receivership Tax Claims ...................................................................21

        B.      Class 2 Post-Receivership Qualified Settlement Fund Tax Claims .......................21

        C.      Investor Tax Matters .............................................................................................21

ARTICLE VIII. MISCELLANEOUS PROVISIONS ....................................................................21

    A.    Jurisdiction of Court .....................................................................................21

    B.    Effective Date of Distribution Plan...............................................................22

    C.    Binding Effect of Distribution Plan ..............................................................22

    D.    Injunction ......................................................................................................22

    E.    Continued Force and Effect of Receivership Preliminary Injunction Order .........23

    F.    Severability ...................................................................................................23

    G.    Dissolution of EminiFX ................................................................................23

    H.    Reports to the Court and to Claimants ..........................................................24

    I.    Amendments to Distribution Plan..................................................................24

    J.    Notice ...........................................................................................................24

    K.    Application for Order Terminating the Receivership ......................................24

    L.    Preservation of Records ................................................................................25

# INTRODUCTION

This Distribution Plan governs the process by which the Receiver will make distributions of Receivership Assets to eligible claimants, the vast majority of whom are investors (*i.e.*, users) in EminiFX.[1]  This Distribution Plan sets forth the eligibility criteria for EminiFX investors and claimants to receive distributions, how distributions will be calculated, the timing and procedure with respect to investor distributions, and other items as set forth herein:

**Claims and Classification**.  An investor claim shall be comprised of only investments made into the EminiFX System, and <u>exclude</u> any purported profits, interest, bonuses, internal transfers or other similar amounts shown in the EminiFX System.  Investors who deposited less than $1,000 into the EminiFX System will be grouped into a separate "convenience class" and will receive a one-time distribution that will be at a higher percentage than the initial distribution to other investors, but with no expectation of receiving additional distributions.  The Distribution Plan will also set forth the classification and priority of claims, including priority status for Administrative Claims and Tax Claims, and subordination of certain Claims, to be determined through subsequent litigation as necessary.

**Calculating Distributions**.  The Distribution Plan will use the "rising tide" method to calculate distributions, which provides that a distribution is calculated as a percentage (the "rising tide") of the investor's total investment (deposits) into the EminiFX System, and then subtracting both the Pre-Receivership Withdrawals and any other post-receivership distributions already received.  This method effectively treats Pre-Receivership Withdrawals as equivalent to post-receivership distributions.  For investors who deposited more than $1,000, the Receiver will periodically increase the rising tide percentage over time, making additional distributions to investors with Allowed Claims.  For investors who deposited less than $1,000, they will be placed in a separate sub-class (a "convenience class") and receive a single distribution that is higher (as a percentage of the Allowed Claim) than the initial distribution percentage of claimants with Allowed Claims above $1,000.  However, the Receiver expects that to be a "one-time" distribution received by such "convenience class" investors.

**Procedure and Timing of Distributions**.  The Distribution Plan will set forth the procedure and timing for investor distributions.  The Receiver's goal is to commence an initial distribution to EminiFX investors by the end of 2024 and into 2025, and to continue making distributions to investors as their Transactions are fully resolved and as additional Receivership Assets become available for distribution.  The initial distribution will be to those investors whose Transactions have been verified and their Claims allowed in accordance with the previously approved Claims Procedures by a set date (and whose Claim is not being held for further review).  Once an investor's disputed Transactions are resolved, newly Allowed Claims will be entitled to receive the same percentage distribution as all other similarly classified investors.  The initial "rising tide" percentage and distribution will be calculated in the business judgment of the Receiver, accounting

---

[1] Capitalized terms used herein have the meanings set forth in Article I.A.  All references to "investor" or "investment" throughout are for convenience only and are not intended to affect any characterization of the relevant transactions for tax purposes or otherwise.  "Investor" is used interchangeably with "User" herein.

for the total Cash included in the Receivership Assets, less appropriate reserves for disputed Claims, estimates for Tax and Administrative Claims, and any other appropriate reserves.

**Litigation Claims, Temporary Holds, and Setoffs**.  The Distribution Plan shall set forth the Causes of Action that shall be retained by the Receiver for future prosecution and ability to resolve such Causes of Action, both in his sole discretion.  The Distribution Plan will also set forth the procedures by which the Receiver can identify Holders of Claims that otherwise may be entitled to a distribution, and temporarily withhold such distribution for a set period of time (a "review hold") while the Receiver investigates whether the Receiver may have affirmative Causes of Action against such Holder or whether the Holder's Claim, in whole or in part, should be subject to equitable subordination, consolidation, or setoff.

**Additional Procedures**.  The Distribution Plan shall set forth additional procedures for making distributions to investors, including the handling of claims of deceased investors and investors for whom there may be a lien on assets, de minimis distributions, and distributions that are returned to the Receiver as undeliverable.

## ARTICLE I.
## PLAN DEFINITIONS AND RULES OF INTERPRETATION

### A.    Definitions

**"Administrative Claim"** means any EminiFX Claim to the extent that it asserts an entitlement to priority in payment under applicable law in connection with the administration of the Receivership Assets or otherwise on the basis that it arises or is deemed to arise after the Receivership Date.  For the avoidance of doubt, Administrative Claims shall include claims for compensation by EminiFX Professionals.

**"Alexandre"** means Eddy Alexandre, a defendant in the CFTC Enforcement Action.

**"Allowed"** means, (i) in respect of any User Claim or User Convenience Class Claim, any such EminiFX Claim with respect to which no Transactions upon which the EminiFX Claim is based (either deposits or withdrawals) remain disputed in accordance with the terms of the Claims Procedures and (ii) in respect of all other EminiFX Claims, any such EminiFX Claim determined to be "allowed" in accordance with the terms of the Claims Procedures or otherwise expressly determined to be "allowed" pursuant to a Final Order of this Court, in the allowed amount, priority and/or classification so determined.  Notwithstanding the foregoing, no EminiFX Claim or any portion thereof shall be Allowed if it remains subject to the "review hold" or Litigation Demand described in Article IV.E.

**"Cash"** means the lawful currency of the United States of America and its equivalents.

**"Cause of Action"** means any action, claim, cause of action, controversy, third-party claim, dispute, proceeding, demand, right, action, lien, indemnity, contribution, guaranty, suit, obligation, objection, liability, loss, debt, fee or expense, damage, interest, judgment, account, defense, remedy, power, privilege, license, and franchise of any kind or character whatsoever, whether known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed

or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the date hereof, in contract, in tort, in law, or in equity or pursuant to any other theory of law. For the avoidance of doubt, a "Cause of Action" includes: (i) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (ii) any claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of fiduciary duty, or violation of state or federal law, including securities laws, negligence, and gross negligence; (iii) the right to object to or otherwise contest, recharacterize, reclassify, subordinate, or disallow Claims; (iv) any claim or defense including fraud, mistake, duress, and usury, and any other similar defenses; and (v) any state or foreign law fraudulent transfer or similar claim.

"**CFTC**" means the Commodity Futures Trading Commission.

"**CFTC Enforcement Action**" means the action commenced by the CFTC in this Court in the case captioned *Commodity Futures Trading Commission v. Eddy Alexandre and EminiFX, Inc.*, Case No. 22 Civ. 3822 (S.D.N.Y.).

"**Claim**" means any (i) potential or claimed right to payment, whether or not such right is based in equity or statute, reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (ii) a potential or claimed right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

"**Claims Procedures**" means this Court's *Order (I) Approving Procedures for the Verification of User Contributions to and Withdrawals from EminiFX, (II) Setting a Bar Date for the Filing of Non-User Claims, (III) Establishing Notice Procedures, and (IV) Granting Related Relief*, entered on August 29, 2023, and the procedures approved thereby, as those procedures may be amended from time to time [Dkt. 228].

"**Claims Procedures Motion**" means the *Memorandum of Law in Support of the Receiver's Motion for Entry of an Order (I) Approving Procedures for the Verification of User Contributions to and Withdrawals from EminiFX, (II) Setting a Bar Date for the Filing of Non-User Claims, (III) Establishing Notice Procedures, and (IV) Granting Related Relief*, filed on August 10, 2023 [Dkt. 225]

"**Court**" means the United States District Court for the Southern District New York.

"**Distribution Plan**" means this Distribution Plan, as may be amended from time to time.

"**Distribution Plan Order**" means the Order entered by the Court approving this Distribution Plan as filed or as may be modified by the Court in such Order.

"**Effective Date**" means the date upon which the Court enters the Distribution Plan Order.

"**EminiFX**" means EminiFX, Inc., a defendant in the CFTC Enforcement Action.

"**EminiFX Claim**" means any Claim with respect to which recovery is sought from or against the Receivership Assets.

"**EminiFX Financial Condition Report**" means that certain *Receiver's Financial Condition Report of EminiFX*, dated May 15, 2023 [Dkt. 199].

"**EminiFX System**" means the EminiFX-branded platform to and from which Users made Contributions and Withdrawals of Funds.

"**EminiFX QSF**" means the qualified settlement fund established from the Receivership Assets pursuant to 26 CFR § 1.468B-1.

"**Equity Interests**" means, in respect of EminiFX, Inc., any ordinary shares, units, common stock, preferred stock, membership interest, partnership interest, or other instrument, evidencing any fixed or contingent ownership interest, whether or not transferable, including any option, warrant, stock appreciation rights, phantom stock rights, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements, or commitments of any character, contractual or otherwise, to acquire any such interest.

"**Final Order**" means an order or judgment of this Court or another court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which is in full force and effect and has not been reversed, vacated, stayed, modified, or amended and as to which (i) the time to appeal, petition for writ of certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for writ of certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or writ of certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for writ of certiorari, or move for a new trial, reargument, or rehearing shall have expired; provided, however, for the avoidance of doubt, an order or judgment that is subject to appeal shall not constitute a Final Order even if a stay of such order or judgment pending resolution of the appeal has not been obtained; and, provided, further, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure (or any analogous rule applicable in another court of competent jurisdiction) has been or may be filed with respect to such order or judgment.

"**EminiFX Professionals**" means any professional retained by the Receiver pursuant to an order of the Court.

"**Funds**" means Cash or Bitcoin (BTC).

"**Holder**" means, with respect to any EminiFX Claim, the Person that holds (or held) such EminiFX Claim as of the Record Date or the successor in interest to such Person under valid and enforceable operation of applicable law as determined as such by the Receiver in his sole

discretion; *provided that* the Receiver shall have no obligation to recognize or honor voluntary transfers of EminiFX Claims by Holders of EminiFX Claims except as provided herein.[2]

"**Litigation Demand**" means a written demand (whether in the form of a demand letter, complaint, motion, or other similar written form) that asserts an actual or potential Cause of Action by the Receiver against the Holder of an EminiFX Claim or otherwise with respect to any EminiFX Claim and includes a short and plain statement of such Cause of Action and the nature of the relief which may be sought by the Receiver.

"**Net Winner**" means any User whose Verified Withdrawal Amount exceeds their Verified User Deposit Amount.

"**Non-User Claim**" means any Claim by any Person not based on that Person's status as a User which is based on (1) the provision of goods or services to EminiFX that has not been paid in whole; (2) money loaned to EminiFX that has not been paid in whole; (3) unpaid wages, compensation, or other employment benefits that has not been paid in whole; (4) tax liabilities, including those held by federal and state governments, subject to Title 26 of the U.S. Code; (5) primary, secondary, direct, indirect, secured, unsecured, or contingent liability; /or (6) contract, tort, indemnity, reimbursement, subrogation theories, or other legal or equitable theory.

"**Other Claim**" means any Non-User Claim to the extent that such Non-User Claim is not an Administrative Claim, a Tax Claim, or a Subordinated Claim.

"**Person**" means a natural person, corporation, limited liability company, trust, joint venture, association, company, partnership, governmental unit or other entity.

"**Pre-Receivership Deposits**" means, as to a User, deposits of Funds into the EminiFX System prior to the Receivership Date, whether deposited directly or by a third party for or on behalf of a User, net of fees and other transaction costs. For Funds deposited as Bitcoin, the value is converted to US Dollars based on the closing price on the date of deposit.

"**Pre-Receivership Withdrawals**" means, as to a User, withdrawal of Funds from the EminiFX System, whether withdrawn directly by a User or by a third party for or on behalf of a User prior to the Receivership Date, irrespective of the characterization of such withdrawals as interest payments, redemptions, return of principal, or otherwise.

"**Prior Distribution Amount**" means, in respect of any given User Claim, the sum of (i) the Verified User Withdrawal Amount and (ii) the total amount of any distributions by the Receiver to or for the benefit of the Holder of such User Claim at any time.

"**Receiver**" means David A. Castleman, the Court-appointed receiver in the CFTC Enforcement Action, or any Court-appointed successor to David A. Castleman.

---

[2] The Receiver intends to publish a form by which purported transferors of deceased Holders of EminiFX Claims may assert their rights and provide supporting documentation. *See* Section V.C.5 herein.

"**Receivership**" means the federal equity receivership established by one or more orders of this Court entered in the CFTC Enforcement Action.

"**Receivership Assets**" means all assets (including, without limitation, any Causes of Action) of EminiFX or Alexandre that are under the control of the Receiver pursuant to order of this Court or another court of competent jurisdiction (including, without limitation, the EminiFX QSF), and all proceeds thereof.

"**Receivership Date**" means the date of the commencement of the CFTC Enforcement Action.

"**Receivership Preliminary Injunction Order**" means this Court's *Consent Order for Preliminary Injunction Against Defendants Eddy Alexandre and EminiFX, Inc.* [Dkt. 56].

"**Receivership TRO**" means this Court's *Order Granting Plaintiff's Motion for an Ex Parte Statutory Restraining Order, Appointment of a Temporary Receiver, and Other Equitable Relief* [Dkt. 9].

"**Record Date**" means March 1, 2024.

"**Review Hold Expiration Date**" means the later of (i) June 30, 2025, or (ii) the date that is six months after the entry of the Distribution Plan Order, unless extended as set forth herein.

"**Rising Tide Percentage**" means, in respect of any distribution made by the Receiver to Holders of Allowed User Claims, a percentage determined by the Receiver in his sole discretion that applies to distributions to Class 3 User Claims, as may be increased from time to time in accordance with this Distribution Plan.  The method for calculating the Rising Tide Percentage is described in Article V.A.

"**Subordinated Claim**" means in respect of an EminiFX Claim or any portion thereof, as applicable, (i) subordinated in accordance with a written agreement signed by the Receiver and the Holder of such EminiFX Claim; (ii) any fine or penalty levied by the CFTC in connection with the CFTC Enforcement Action that is in whole or in part payable by the Receivership or from Receivership Assets, unless the Court orders otherwise; or (iii) that contains consequential or indirect damages, or lost profits, or should otherwise be a subordinated in the interest of equity, consistent with the procedures set forth in Article IV.E.

"**Tax Claim**" means any EminiFX Claim asserted by taxing authorities or other governmental entities in respect of any purported tax liability with recourse to the Receivership Assets (including any pre-receivership tax liabilities and any tax liabilities of the EminiFX QSF) to the extent that such EminiFX Claim is not an Administrative Claim or Other Claim, except to the extent that such EminiFX Claim is a Subordinated Claim.

"**Transaction**" means either a deposit into or a withdrawal from the EminiFX system made by a User, as described in the Claims Procedures Motion.

"**User**" means any Person who created an account within the EminiFX System before the Receivership Date.

"**User Claim**" means an EminiFX Claim that is based on an alleged investment in the EminiFX System prior to the Receivership Date, except to the extent that such EminiFX Claim is a Subordinated Claim or an EminiFX User Convenience Class Claim.

"**User Convenience Class Claim**" means an EminiFX Claim that is based on an alleged investment in the EminiFX System prior to the commencement of the CFTC Enforcement Action, where the Verified User Deposit Amount (not subtracting the Verified User Withdrawal Amount) is not greater than $1,000, except to the extent that such EminiFX Claim is a Subordinated Claim.

"**User Convenience Class Distribution Percentage**" means, in respect of any distribution made by the Receiver to Holders of Allowed User Convenience Class Claims, a percentage determined by the Receiver in his sole discretion that applies to distributions to Class 3A User Claims, subject to any increase as set forth in Article III.A.4.

"**User Portal**" means the portal established pursuant to the Claims Procedures, for which all Users were given access to review all of the Transactions identified by the Receiver so that the Users could verify their listed Transactions, modify such Transactions and/or add additional Transactions or add an additional User on whose behalf a Transaction may have been made; and which may be updated from time to time with functionality for Users to submit their feedback related to this proposed Distribution Plan, their distribution payment information, and their objections to Disputed Transactions.

"**Verified User Deposit Amount**" means, for each User that does not have any Pre-Receivership Deposits or Pre-Receivership Withdrawals in dispute under the terms of the Claims Procedures, the sum of all Pre-Receivership Deposits made by or on behalf of that User (or otherwise properly attributable to such User as determined by the Receiver).

"**Verified User Withdrawal Amount**" means, for each User that does not have any Pre-Receivership Deposits or Pre-Receivership Withdrawals in dispute under the terms of the Claims Procedures, the sum of all Pre-Receivership Withdrawals made to or for the benefit of that User (or otherwise properly attributable to such User as determined by the Receiver).

**B.      Rules of Interpretation**

For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, all references herein to "Articles" are references to Articles of this Distribution Plan; (3) unless otherwise stated, the words "herein," "hereof," and "hereto" refer to this Distribution Plan in its entirety rather than to a particular portion of this Distribution Plan; (4) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (5) the words "include" and "including" and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation;" (6) any effectuating provisions may be interpreted by the Receiver in his sole discretion in a manner consistent with the overall purpose and intent of this Distribution Plan all without further notice to or action, order, or approval of this Court or any other Person, without waiver of the rights of any Person; and (7) any docket number

references in this Distribution Plan shall refer to the docket number of any document filed with this Court in the CFTC Enforcement Action.

To the extent that this Distribution Plan is translated into any other language by the Receiver, the English language version shall control, and such translation of the Distribution Plan shall have no legal effect and be used for convenience only.

## C.    Governing Law

Unless a rule of law or procedure is supplied by federal law or unless otherwise specifically stated herein, the laws of the State of New York without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of this Distribution Plan.

## D.    Reference to Monetary Figures

All references in this Distribution Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

## ARTICLE II.
## CLAIMS PROCESS

## A.    Claims Procedures

The Receivership Assets consist almost exclusively of Cash (proceeds of previously liquidated assets, including Bitcoin) and certain potential Causes of Action.  As of June 30, 2024, the Cash included in the Receivership Assets totaled approximately $153 million.

One of the primary responsibilities of the Receiver is to determine how to allocate the Cash of the Receivership to Holders of Allowed EminiFX Claims.  Critical to that is ascertaining Verified User Deposit Amount and Verified User Withdrawal Amount for each investor (*i.e.*, User).  Following his appointment, using the bank and cryptocurrency exchange records recovered, and EminiFX internal records (which were unreliable and incomplete), the Receiver and his team were able to match up the majority of the over 100,000 deposit and withdrawal transactions to EminiFX Users.  This left many thousands of Transactions unmatched.  Accordingly, the Receiver initiated procedures to verify deposits and withdrawals and on August 29, 2023, this Court entered an Order approving the Claims Procedures.  The Claims Procedures provided that, among other things, Users could access a User Portal established by the Receiver to allow them to verify or dispute the Transactions (contributions into and withdrawals from EminiFX) that the Receiver identified as belonging to the User, and also add Transactions or attribute deposits to other Users, with any such additions and modifications subject to review and either verification or dispute by the Receiver.  The time periods during which Users or other claimants could take the foregoing actions under the Claims Procedures have now expired.

There was substantial response to the User Portal, with thousands of Users interacting with the User Portal and either verifying the Receiver's Transactions or disputing, including adding, thousands of Transactions.  Given this tremendous response, the Receiver has spent significant time analyzing the responses of every User that did not simply verify all of the Receiver's

Transactions. That analysis is ongoing. Accordingly, the total amounts of investments into, and withdrawals from, EminiFX used for purposes of distributions under this Distribution Plan may vary from the estimates stated in the EminiFX Financial Condition Report.[3]

The Claims Procedures also established deadlines for governmental entities and other Non-Users to file proofs of claim (120 days and 60 days after entry of the order, respectively).[4]

## B.    User Transaction Review Process

In respect of User Claims, the Receiver and his professionals are in the process of reviewing the disputed Transactions (anything other than those that were verified). Where the Receiver agrees with a User's modification or addition, the Receiver will verify such Transaction. Where the Receiver cannot verify the modification or addition, the Receiver will mark it as disputed and the User will have an opportunity to respond or provide additional information once the Receiver's determinations are communicated to the Users. The Receiver expects to verify and accept thousands of modifications and additions, valued in the tens of millions of dollars, the vast majority of which relate to deposits by Users.

The Receiver expects that the initial review of all Users' disputed Transactions will be completed in or around October 2024, at which time the Receiver will file a Schedule of Disputed Transactions (as defined in the Claims Procedures) with respect to remaining disputes regarding Users' Transactions, pursuant to the terms of the Claims Procedures. Affected Users will have 45 days thereafter in which to object using the User Portal and the Receiver will continue to seek to reach a consensus with those Users who claimed to have deposited or withdrew actual Funds from EminiFX. However, the Receiver will categorically deny any Users seeking to claim as valid deposits returns on investment ("**ROI**"), bonuses, or internal transfers, as many have on the User Portal. Further, although the Receiver will continue to provide limited mechanisms for Users to resolve inter-user disputes where appropriate and consistent with the Claims Procedures and this Distribution Plan, the Receiver as a general rule will not resolve such disputes, and the Claims Procedures expressly reserve the rights of Users to assert claims against third parties (including other Users).

Thereafter, for all disputes that remain, the Receiver will file with the Court a summary of the Users' objections to the Schedule of Disputed Transactions and a statement in support of the Receiver's determination with respect thereto and may seek one or more orders of the Court resolving any disputes.

The Receiver anticipates that the foregoing process for resolving disputed investor Transactions may take several months. However, the vast majority of Users verified their Claims and have no disputes. The Receiver anticipates that initial distributions may be made to Users with verified Transactions (that are not insiders or otherwise subject to heightened scrutiny) prior

---

[3]  The Financial Condition Report explained that, based on the information obtained from analyzing EminiFX's bank statements and incomplete internal records and during the eight-month period EminiFX was operational, investments (in either US Dollars or Bitcoin) into EminiFX were estimated at $262.5 million. Withdrawals by investors from EminiFX during the same period were estimated at approximately $34.0 million in the Financial Condition Report.

[4]  The Internal Revenue Service is not subject to these deadlines.

to the full and final conclusion of the Transaction review process pursuant to this Distribution Plan. As a User's Transactions are verified and no disputes remain, such Users will be entitled to catch up distributions.

## C.    Proof of Claim Review Process (Non-User Claims)

Additionally, the Receiver reviewed the proofs of claim of Non-Users and, as of the filing of this Plan, reached agreements with all such claimants but one.[5]  Per the agreements reached with the settling claimants, all have been paid and their claims extinguished.  No further action is required by either party and no distributions will be made under this Plan to such settled claimants. Certain Users filed proofs of claim, presumably out of an abundance of caution.  Per the Claims Procedures, all proofs of claim submitted by Users on account of their investments in the EminiFX System are automatically disallowed and the User was advised that such User was required to interact with the User Portal to verify and/or dispute any of their EminiFX Transactions.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS

## A.    Classification of Claims

The investors or other claimants that are eligible to receive distributions under this Distribution Plan are classified as follow:

| | |
|---|---|
| Class 1: | Administrative Claims |
| Class 2: | Tax Claims |
| Class 3: | User Claims |
| Class 3A: | User Convenience Class Claims |
| Class 4: | Other Claims |
| Class 5: | Subordinated Claims |
| Class 6: | Equity Interests |

## B.    Treatment of Claims

Distributions on Allowed EminiFX Claims are governed by, and subject to the terms of this Distribution Plan and shall be in full and complete satisfaction, settlement, and release of all such EminiFX Claims.  Allowed EminiFX Claims in the following classes are payable with the following priority and on the following terms from the Receivership Assets.  No Holder of an Allowed EminiFX Claim shall be entitled to recovery under this Distribution Plan in excess of the full amount of such Holder's Allowed EminiFX Claim (nor shall such Holder be entitled to any interest on such Claim):

### 1.    Class 1 – Administrative Claims

Each Holder of an Allowed Administrative Claim (Class 1) shall be entitled to receive the full amount of such Holder's Allowed Administrative Claim in Cash from time to time as and

---

[5] On August 2, 2024, the Receiver filed the Non-User Claims Analysis Report, which initiated the formal process to resolve the remaining dispute with the one non-settling claimant.

when due pursuant to any applicable orders of this Court, except to the extent that such Holder agrees to less favorable treatment.  Unpaid or disputed Administrative Claims will be reserved for in their full amounts unless otherwise resolved in accordance with this Distribution Plan.  EminiFX Professionals with Administrative Claims shall be paid in accordance with the Employment Order entered in this case on June 10, 2022, as amended from time to time [Dkts. 47, 187, 209 *et seq*.].

### 2.  Class 2 – Tax Claims

Each Holder of an Allowed Tax Claim (Class 2) shall be entitled to receive the full amount of such Holder's Allowed Tax Claim in Cash from time to time as and when due pursuant to any applicable orders of this Court, except to the extent that such Holder agrees to less favorable treatment.  At the time of any distribution, to the extent that the amount of the Tax Claims has not been determined or otherwise Allowed, the Receiver will establish a reserve—in an amount determined in his sole discretion after consultation with his advisors—to be a reasonable estimate of potential tax liabilities of EminiFX and the EminiFX QSF.

Consistent with the authority in Paragraph 31(m) of the Statutory Restraining Order [Dkt. 9], as incorporated into Paragraph 37 of the Consent Order [Dkt. 56], the Receiver shall file a tax return for the EminiFX QSF and pay any amount owed without further order of the Court, and shall include in the next regularly filed status report any amount paid.  To the extent that the Internal Revenue Service (or state analogue) files a Tax Claim with respect to any pre-receivership tax liability of EminiFX, the Receiver shall accept such filing without regard to the Bar Date and shall have the authority to accept or negotiate the amount or priority of any such Tax Claim.  The Receiver shall thereafter file a supplemental report with the Court seeking approval for the allowance, priority, and payment of any such Tax Claim.

### 3.  Class 3 – User Claims

Each Holder of an Allowed User Claim (Class 3) shall be entitled to receive one or more distributions in Cash, from time to time in the discretion of the Receiver, equal to (i) the Verified User Deposit Amount in respect of such Holder's Allowed User Claim multiplied by the then-applicable Rising Tide Percentage minus (ii) the Prior Distribution Amount in respect of such Holder's Allowed User Claim.

The Receiver expects to prepare and file with the Court, in advance of making such distribution to Class 3, a notice identifying the applicable Rising Tide Percentage and an anonymized schedule showing the Verified User Deposit Amount and Prior Distribution Amount for each Allowed User Claim.  To the extent that the foregoing calculation results in a negative amount with respect to any given Allowed User Claim, the Holder of such Allowed User Claim shall not receive a distribution.

### 4.  Class 3A – User Convenience Class Claims

Each Holder of an Allowed User Convenience Class Claim (Class 3A) shall be entitled to receive a single distribution in Cash, at approximately the same time that the first interim distribution is made to Holders of Allowed User Claims (Class 3), equal to (i) the Verified User Deposit Amount in respect of such Allowed User Convenience Class Claim multiplied by the User Convenience Class Distribution Percentage minus (ii) the Prior Distribution Amount in respect of

such Allowed User Convenience Class Claim. To the extent that the foregoing calculation results in a negative amount with respect to any given Allowed User Convenience Class Claim, the Holder of such Allowed User Convenience Class Claim shall not receive a distribution.

The Receiver expects to prepare and file with the Court, in advance of making such distribution to Class 3A, a notice identifying the applicable User Convenience Class Distribution Percentage and an anonymized schedule showing the Verified User Deposit Amount and Prior Distribution Amount for each Allowed User Convenience Class Claim.

Notwithstanding the foregoing, to the extent that the Receiver determines subsequently that the Convenience Class Distribution Percentage is inequitable as compared to the eventual final Rising Tide Percentage, the Receiver reserves the right in his sole discretion to revise the Convenience Class Distribution Percentage upward and make a further "top-up" distribution to Holders of Allowed User Convenience Class Claims based on the revised percentage (such that the total distributions by the Receiver under the Plan to each Holder of an Allowed User Convenience Class Claim would be made equal to the amount that would have been made if the Convenience Class Distribution Percentage had been the revised percentage originally).

5.      **Class 4 – Other Claims**

Each Holder of an Allowed Other Claim (Class 4) shall be entitled to receive distributions in cash, at approximately the same time that distributions are made on account of Allowed User Claims (Class 3), equal to the amount of such Holder's Allowed Other Claim multiplied by the then-applicable Rising Tide Percentage being used for purposes of distributions on account of Allowed User Claims. As of the filing of the Non-User Claims Analysis Report on August 2, 2024, there was only one remaining Allowed Other Claim that had not been resolved and extinguished. The claimant asserted a claim in the amount of $992,614 and later sought to amend the claim to an amount in excess of $2 million. The Receiver determined that such claim should be disallowed in its entirety, subject to the claimant's right to object to the Receiver's determination and have the issue decided by the Court pursuant to the Claims Procedures.

6.      **Class 5 – Subordinated Claims**

Each Holder of an Allowed Subordinated Claim (Class 5) shall not be entitled to any distributions unless and until each Allowed EminiFX Claim in Classes 1, 2, 3, 3A and 4 are satisfied in full in accordance with the Distribution Plan; thereafter any Holder of an Allowed Subordinated Claim shall be entitled to its *pro rata* share of any further distributions by the Receiver from the Receivership Assets, if any. Current estimates are that holders of Allowed Subordinated Claims will not receive a distribution.

7.      **Class 6 – Equity Interests**

Equity Interests shall not be entitled to any distributions under this Distribution Plan and will be extinguished and cancelled upon the dissolution of EminiFX in accordance with the terms of this Distribution Plan.

## ARTICLE IV.
## CLAIMS ALLOWANCE, EFFECT OF LITIGATION ON CLAIMS ALLOWANCE

**A.    Claims Allowance Process**

All determinations of whether any EminiFX Claim is Allowed (which includes, in respect of any User Claim or User Convenience Class Claim, resolving any disputes regarding any Transaction and determining the Verified User Deposit Amount and the Verified User Withdrawal Amount) shall be done in accordance with the terms of the Claims Procedures, or otherwise pursuant to a Final Order of this Court, subject to the potential disallowance of EminiFX User Claims as described in Article IV.E below.  Any resolution of a Disputed Claim, as set forth in Sections 4 and 5 the Claims Procedures, may include a determination of whether all or a portion of such Disputed Claim that is allowed shall be classified as a Subordinated Claim.

For the avoidance of doubt, the Receiver is currently reviewing Transactions for the purpose of determining Verified User Deposit Amounts and Verified User Withdrawal Amounts pursuant to the terms of the Claims Procedures.  At the conclusion of such process, the Receiver will file a Schedule of Disputed Transactions (as defined in the Claims Procedures), and affected Holders of EminiFX Claims will have 45 days thereafter in which to object in writing, agree to the Receiver's recommendations, or reach a resolution with the Receiver.

Notwithstanding anything in the Claims Procedures to the contrary, and in addition to any authority thereunder or which may be otherwise granted to the Receiver, the Receiver shall have specific authority to reach a resolution with the Holder of any User Claim or User Convenience Class Claim to Allow such EminiFX Claim (which includes, in respect of any User Claim or User Convenience Class Claim, resolving any disputes regarding any Transactions and determining the Verified User Deposit Amount and the Verified User Withdrawal Amount), in his sole discretion, without the necessity of this Court's approval or any notice to any third party or the Court.

**B.    Exclusion of ROI from Verified User Deposit Amounts**

As set forth in the EminiFX Financial Condition Report and the Claims Procedures Motion, the Receiver has concluded that the investment returns (called "ROI" in the EminiFX System) credited to investors were not based on the results of actual investment activity and should not be recognized as legitimate or actual liabilities of EminiFX.  Thus, ROI purportedly earned by Users will not be considered for purposes of determining Verified User Deposit Amounts.

**C.    Exclusion of Bonuses from Verified User Deposit Amounts**

The Receiver has also concluded that bonuses awarded to Users for signing up other Persons to become Users and invest in the EminiFX System were not based on any actual value provided to EminiFX, and further enabled the EminiFX scheme, and should not be recognized as legitimate or actual liabilities of EminiFX.  Thus, bonuses purportedly earned by Users will not be considered for determining Verified User Deposit Amounts.

D.    **Exclusion of Internal Transfers from Verified User Deposit Amounts**

The Receiver has also concluded that internal transfers between EminiFX Users within the EminiFX system shall not be recognized as liabilities of EminiFX and will not be recognized for purposes of determining Verified User Deposit Amounts. These internal transfers do not reflect new money contributed to EminiFX, but, rather a transfer of a part of one User's "personal volume" or account balance to the account of another User. EminiFX records reflect nearly 50,000 internal transfers with a nominal "value" of over $77 million were made within the EminiFX System. Because a User's balance nearly always included substantial fictitious ROI and multilevel marketing bonuses, determining how much of a transfer consisted of actual Funds is a practical impossibility and could also result in a deduction of the Transferor's Pre-Receivership Deposits to avoid double counting the same Funds.[6] Thus, transfers between Users within the EminiFX System will not be considered for determining Verified User Deposit Amounts.

E.    **No Allowance of Claims Subject to Disputes**

1.    **Potential Consolidation of Investor Accounts**

The Receiver may determine that certain investor accounts, under the applicable facts and circumstances, should be deemed consolidated with one another for purposes of determining the Verified User Deposit Amount and the Verified User Withdrawal Amount in respect of certain User Claims or User Convenience Class Claims.[7] At any time, but no later than the Review Hold Expiration Date, the Receiver will notify the affected Holders of any User Claim or User Convenience Class Claim of any such determination in writing (which may be through the User Portal), and thereafter such affected User Claims or User Convenience Class Claims shall not be Allowed and the Holders of such affected User Claims or User Convenience Class Claims shall not be entitled to any distributions under this Distribution Plan unless and until the Receiver's determination is withdrawn in writing by the Receiver, resolved by written agreement of the Receiver, or resolved by a Final Order of this Court.

2.    **Temporary Litigation-Related "Review Holds"**

The Receiver shall have the authority to place a temporary "review hold" with respect to any EminiFX Claim or the Holder thereof at any time up until the Review Hold Expiration Date, which shall prevent any EminiFX Claim identified in such temporary "review hold" and all EminiFX Claims of the Holder identified in such temporary "review hold" from being Allowed. The potential bases for such a temporary "review hold" include, without limitation, the Receiver's need for additional time to identify potential actions to subordinate EminiFX Claims, to assert affirmative claims for recovery, to further investigate the beneficial owner of an EminiFX Claim, or to recommend equitable subordination or consolidation to the Court. The Receiver shall use

---

[6] The Transaction review process gave EminiFX Users the ability to add a member to a deposit, which allowed users to in effect transfer deposits from themselves to other Users. However, the Receiver will generally not resolve disputes among Users where those Users do not agree.

[7] An example of a situation in which the Receiver may determine to consolidate two accounts is where the principal owner of the account is the same (*e.g.*, a business account and a personal account or if the User opened up two separate accounts) and one of the relevant investor accounts is held by a Net Winner. The foregoing is solely an example for illustrative purposes. The Receiver may determine to designate accounts for consolidation in other situations as well.

the User Portal to notify the relevant Holder that the User's EminiFX Claim has been placed under a "review hold" while the Receiver conducts his review. The Receiver may remove any such temporary "review hold" for any reason, in his sole discretion. All such temporary "review holds" shall automatically expire on the Review Hold Expiration Date if not removed before such time, *provided that* no Litigation Demand has been made as described in the following section, or no request for equitable subordination or consolidation has been made under this Article IV.E.

The Review Hold Expiration Date may be extended only with the approval of the Court, which may be requested by the Receiver via letter application instead of by motion on regular notice. The current Review Hold Expiration Date shall be posted on the Receivership website.

### 3.    Litigation Demands

The Receiver shall have the authority to assert a Litigation Demand with respect to any EminiFX Claim (regardless of whether a temporary "review hold" applied to such EminiFX Claim at any time) or the Holder thereof. Such assertion of a Litigation Demand shall also prevent any EminiFX Claim identified in such Litigation Demand and all EminiFX Claims of the Holder identified in such Litigation Demand from being Allowed at any time after notice of the Litigation Demand is provided to the relevant Holder, until such time that the Litigation Demand is withdrawn in writing by the Receiver, resolved by written agreement of the Receiver, or resolved by a Final Order of this Court.

To the extent that distributions are made under this Distribution Plan on account of an Allowed EminiFX Claim that subsequently becomes the subject of a Litigation Demand and thus not Allowed, the Receiver may seek appropriate relief from the Court, including, but not limited to, disgorgement of previous distributions.

### 4.    Potential Subordination of Investor Claims

The Receiver may determine that certain User Claims or User Convenience Class Claims, under the applicable facts and circumstances, should be classified as Subordinated Claims. For any such potential Subordinated Claims, the Receiver may, prior to the Review Hold Expiration Date, file one or more schedules of Subordinated Claims with the Court from time to time, and shall serve any affected Holder. Any affected Holder shall have 45 days to submit an objection to the Receiver, in a manner specified by the Receiver upon service of the schedule of Subordinated Claims. Failure to timely object shall result in such subordination classification becoming final. For any subordination classification not resolved consensually with the affected Holder, the Receiver shall submit such classification to the Court for summary disposition in a manner consistent with Section 5 of the Claims Procedures.

For the avoidance of doubt, any User Claim or User Convenience Class Claim (a) for which a request for subordination has not been made under this Section prior to the Review Hold Expiration Date, or (b) that has not been included in a Litigation Demand as set forth in Article IV.E shall not be a Subordinated Claim.

# ARTICLE V.
# DISTRIBUTIONS PROCESS

## A.    Summary of Rising Tide Methodology

The Receiver will make distributions to Holders of Allowed User Claims utilizing a method referred to as the "rising tide" method.  The "rising tide" method, which is a method widely recognized by courts as appropriate in the context of Ponzi schemes, provides that distributions are made such that each eligible investor would receive a Cash distribution from the Receiver that, when added to the prior distributions received by that investor, total an amount that equals a certain percentage (known as the "rising tide" percentage) of that investor's gross investment in EminiFX (ignoring any purported profits, interest, bonuses, transfers or other amounts shown in the EminiFX system other than actual money contributed to EminiFX by the investor).  For example, if the Rising Tide Percentage was fixed at 50%, and an investor previously received distributions equal to 28% of his or her Verified User Deposit Amount, then such investor would receive a distribution from the Receiver equal to 22% of that investor's Verified User Deposit Amount. Investors that previously received distributions (before or after the Receivership Date) equal to or greater than the then-applicable Rising Tide Percentage multiplied by the User's Verified User Deposit Amount, would not receive any distribution from the Receiver at that time.  Distributions under the rising tide method can be calculated as follows:

*Distribution = (Verified User Deposit Amount <u>multiplied by</u> Rising Tide %)*
*<u>minus</u> Verified User Withdrawal Amount <u>minus</u> Distributions Made by Receiver to Date.*

The following table is an example how the rising tide methodology would be applied to four sample users, all of whom have $10,000 in Verified User Deposit Amounts, but different Verified User Withdrawal Amounts.  In this example, the rising tide percentage starts at 30% in the initial distribution and is subsequently increased to 50% in a subsequent distribution.  **This is only an example and not intended to indicate the Rising Tide Percentages that will be set by the Receiver at any point in time.**

| Sample User | | Distribution 1 30% Rising Tide | Distribution 2 50% Rising Tide | Sum of Receiver Distributions | Sum of Withdrawals and Distributions |
|---|---|---|---|---|---|
| **User A** | | | | | |
| Deposits | $10,000 | $3,000 | $2,000 | $5,000 | $5,000 |
| Withdrawals | $0 | | | | |
| **User B** | | | | | |
| Deposits | $10,000 | $1,000 | $2,000 | $3,000 | $5,000 |
| Withdrawals | $2,000 | | | | |
| **User C** | | | | | |
| Deposits | $10,000 | $0 | $1,000 | $1,000 | $5,000 |
| Withdrawals | $4,000 | | | | |
| **User D** | | | | | |
| Deposits | $10,000 | $0 | $0 | $0 | $8,000 |
| Withdrawals | $8,000 | | | | |

The Receiver will set the initial Rising Tide Percentage in his sole discretion promptly after the later of (i) the conclusion of the investors' period to respond to the Receiver's initial Schedule of Disputed Transactions, and (ii) entry of the Distribution Plan Order.  When calculating such

percentage, the Receiver expects to account for all available information—including the amounts of disputed Transactions and estimates of remaining Class 1 and Class 2 Claims—and to reserve using these reasonable estimates given that the Receiver expects to increase the Rising Tide Percentage from time to time.  The Receiver will post such initial Rising Tide Percentage on the Receivership website and shall file with the Court a notice identifying the applicable Rising Tide Percentage.  The Verified User Deposit Amount and the Verified User Withdrawal Amount for Holders with Allowed User Claims shall also be filed with the Court, posted on the Receivership website, and posted on that investor's User Portal.

The Receiver will set the User Convenience Class Distribution Percentage at the same time he sets the initial Rising Tide Percentage, and will follow a similar procedure as set forth above, posting the User Convenience Class Distribution Percentage on the website, filing schedules with the Court, and updating the User Portal with the Verified User Deposit Amount and Verified User Withdrawal Amount for Holders with Allowed User Convenience Class Claims.

For subsequent distributions, when the Receiver determines it is prudent to increase the Rising Tide Percentage—using reasonable reserve estimates and seeking to minimize the costs of distributions—the Receiver will follow a similar procedure, filing a notice of revised Rising Tide Percentage and posting the revised Rising Tide Percentage on the Receiver's website.  The Receiver will periodically file and publish revised schedules of Allowed User Claims and Allowed User Convenience Class Claims as such Claims become Allowed.

**B.    Timing and Approvals of Distributions**

At any time after the Effective Date, the Receiver shall be authorized to make distributions of Receivership Assets pursuant to and consistent with this Distribution Plan from time to time as determined by the Receiver in his sole discretion without further specific approval of the Court, subject to applicable law and any otherwise applicable orders of the Court.

**C.    Form of Distributions**

Payments made pursuant to the Distribution Plan shall be made by the Receiver in Cash by means of check, ACH, Paypal, Venmo, Zelle, or other electronic payment method that the Receiver deems reasonable or necessary under the circumstances.

For any investors that do not provide to the Receiver via the User Portal updated contact and payment information, the Receiver may send checks to the last known addresses located in the United States of such investors, provided that the Receiver does not have a good faith basis to believe that the investor or the investor's designee is no longer located at such address.  The Receiver may in his sole discretion allow an investor to designate a third party to receive such investor's distribution, for good cause shown to the Receiver.

The Receiver shall not be required to mail any checks or other form of physical payment to investors located outside the United States.  To the extent that none of the payment methods authorized by the Receiver are practicable for an investor located outside the United States, the Receiver may in his sole discretion decide to use a different payment method for such investor, but the Receiver is not required to make any such exception.

### D.    Distribution Reserves

Prior to making any distributions to Holders of Allowed EminiFX Claims, the Receiver shall establish reserves as reasonably necessary to ensure that the Receivership Assets remaining after such distributions will be sufficient to (i) fund future expected professional, administrative, operational, and other expenses associated with fully administering the Receivership Assets as well as all potential Allowed Administrative Claims (Class 1) and all Allowed Tax Claim (Class 2) and (ii) otherwise ensure compliance by the Receiver with this Distribution Plan including the potential requirement to make distributions to Holders of EminiFX Claims that are at the time not yet Allowed Claims, but that might become entitled to distributions pursuant to this Distribution Plan if such EminiFX Claims were Allowed.

### E.    No De Minimis Distributions Required

The Receiver shall not be required to make a distribution to the holder of an Allowed EminiFX Claim if the amount of any one distribution on such Allowed EminiFX Claim is less than $50.00.

### F.    Compliance with Applicable Law

Notwithstanding anything else contained herein, the Receiver shall be authorized to take any action he deems reasonably necessary to ensure compliance with applicable law in connection with making any distribution otherwise required hereunder. By way of example, and without limitation, the Receiver shall be permitted to (i) withhold distributions otherwise payable to Holders of Allowed EminiFX Claims until receipt of information necessary requested from such Holders in respect of applicable tax withholding and reporting requirements,[8] (ii) withhold distributions otherwise payable to Holders of Allowed EminiFX Claims based on restrictions under applicable law or regulations including as promulgated by Office of Foreign Assets Control of the US Department of the Treasury, provided that the Receiver is given notice of such lien pursuant to the procedures set forth below, and (iii) establish any other mechanisms he believes are reasonable and appropriate consistent with the foregoing.

### G.    Distributions to Third Parties

The Receiver shall be permitted to withhold or pay distributions to third parties that were otherwise payable to Holders of Allowed EminiFX Claims as necessary to honor or satisfy applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances; provided that the Receiver is given notice of such lien pursuant to the procedures set forth below.  Any amounts so withheld or paid to third parties by the Receiver pursuant to this foregoing authority shall be deemed to have been distributed to and received by the applicable Holder for all purposes of this Distribution Plan.

---

[8] However, the Receiver does not currently contemplate requiring Holders of Allowed User Claims or Allowed User Convenience Class Claims to provide tax identification numbers or other tax reporting information as a condition to making distributions to such Holders, because such Holders are expected to receive only a partial refund of their total deposits and not any profits or gains.

The Receiver may publish a form and related procedures by which purported third-party holders of liens or other rights may assert such liens or rights. Any such procedures shall require valid evidence of purported third-party holders' liens or other rights and may require such purported third-party holders to pay certain fees or other charges associated with filing and administering the third-party liens in any amounts that the Receiver deems reasonable in his sole discretion. The Receiver shall be authorized to determine the validity of any such evidence in his discretion, subject to the right of any party to seek a ruling from this Court.

The Receiver also may publish a form and related procedures for beneficiaries of estates of Holders of User Claims that are deceased, which shall require valid evidence of death and a right to receive distributions on behalf of the deceased Holder's estate. The Receiver shall be authorized to determine the validity of any such evidence in his discretion, subject to the right of any party to seek a ruling from this Court.

The Receiver may otherwise in his discretion make a distribution otherwise due to a Holder to the designee of a Holder, at the request of such Holder, provided that the Receiver has a good faith basis to believe that such request was made in good faith and not to evade compliance with this section or applicable law.

## H.    Disposition of Unclaimed Property

In the event that (a) any distribution to any Holder of an Allowed EminiFX Claim is returned as undeliverable or (b) the Holder of an Allowed EminiFX Claim does not respond to a request by the Receiver for information necessary to facilitate a particular distribution, no further distribution to such Holder shall be made unless and until the Receiver shall have determined the then-current address of such Holder or received the necessary information to facilitate a particular distribution, at which time such distribution and all catch-up distributions shall be made to such Holder without interest, dividends, or other accruals of any kind; provided that such distributions shall be deemed unclaimed property on the date that the Receiver determines in his sole discretion that all reasonable attempts to deliver such distributions have been exhausted, but in all events, prior to the final distribution of Receivership Assets. After such date, such Holder shall be deemed to have forfeited their right to any and all distributions from the Receiver, and all unclaimed property or interests in property shall be deemed Receivership Assets available for distribution to other Holders of Allowed EminiFX Claims (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary).

## ARTICLE VI.
## RECEIVER CAUSES OF ACTION

### A.    Preservation of Receiver Causes of Action

All Causes of Action included within the Receivership Assets are expressly preserved by the Receiver, and nothing in this Distribution Plan shall be deemed a waiver or abandonment of any such Causes of Action.

## B.    Potential Claims and Causes of Action

The Receiver is in the process of evaluating a number of potential Causes of Action against third parties, which may seek affirmative recovery and/or disallowance or subordination of any investor claims such third party may have against EminiFX. Whether the Receiver asserts any Causes of Action, either through litigation or demand letters, and the resolution of such Causes of Action, could affect the number and dollar amount of claims that are eventually Allowed and deemed eligible for distributions under this Distribution Plan.

While the Receiver does not contemplate significant litigation against investors in EminiFX, certain investors may be the target of litigation to the extent that, among other things, they are deemed insiders, may have aided and abetted the fraudulent scheme, or may have received fraudulent transfers. Before commencing any litigation, the Receiver will first seek to resolve any claims without the need for litigation.

This Distribution Plan provides that EminiFX Claims identified by the Receiver as subject to litigation-related disputes will not be Allowed (and thus not eligible for distributions) as described in Article IV.E. Any litigation will not hinder the Receiver's ability to make initial distributions to investors whose claims have been verified and are not subject to disputes or potential litigation.

To the extent that any monies are recovered by the Receiver through litigation, settlement or otherwise after the filing of this Distribution Plan , or third parties seek to make distributions of litigation recoveries through the Receivership, such amounts will be included in the assets distributed to Holders in accordance with the terms of this Distribution Plan, unless the Receiver moves the Court for an amendment to this Distribution Plan concerning distribution of such amounts.

## C.    Receiver's Discretion Regarding Causes of Action

The Receiver shall be and is authorized to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any EminiFX Causes of Action, and to decline to do any of the foregoing, without the consent or approval of any third party or further notice to or action, order, or approval of this Court, subject to the Court's Supplemental Procedures Order [Dkt. 91] and, with respect to Net Winners, Article VI.D.

## D.    Treatment of Net Winners

Net Winners will not receive distributions under this Distribution Plan regardless of whether the Receiver commences any action to recover sums from such Net Winner. This is so simply because the "rising tide" method of calculating distributions is used, and Net Winners by definition have already received more than full recovery of the amounts that they are entitled to on their total investment.

The Receiver contemplates making settlement offers to Net Winners, offering a release from litigation by the Receiver in exchange for return of a portion of amounts received by Net Winners. Absent any settlement, Net Winners may be subject to potential affirmative Causes of Action brought by the Receiver.

## ARTICLE VII.
## TAX ISSUES

**A.      Class 2 Pre-Receivership Tax Claims**

The Receiver will accept the filing of any EminiFX Claim by the United States Internal Revenue Service (the "**IRS**") or the New York Department of Taxation and Finance for unpaid taxes by EminiFX, Inc. pre-receivership, without regard to the deadlines set in the Claims Procedures, which are inapplicable to Claims of the IRS. Any such claim by the IRS shall receive any priority required under law, including but not limited to the Federal Priority Statute, 31 U.S.C. § 3713, provided that the Receiver and the IRS may negotiate the amount and priority of any such EminiFX Claim. The Receiver may make distributions on account of Class 3 and Class 3A claims, notwithstanding the Federal Priority Statute, so long as the Receiver reserves appropriately.

**B.      Class 2 Post-Receivership Qualified Settlement Fund Tax Claims**

The EminiFX QSF comprises the Receivership estate, and is a separate taxable entity. The Receiver has and will continue to file, on an annual basis, tax returns for the EminiFX QSF. Any taxes owed thereon shall be treated as Class 2 claims entitled to payment from the Receivership Assets upon the filing of such tax returns, without further order from the Court.

**C.      Investor Tax Matters**

EminiFX investors are expected to ultimately receive distribution(s) less than each investor's net contribution into the EminiFX System. Consequently, EminiFX investors are advised that the Receiver does not expect to file tax reporting documents on distributions to Class 3 Claims or Class 3A Claims, nor does the Receiver expect to withhold any taxes on account of such distributions. All Holders of Class 3 Claims and Class 3A Claims are responsible for determining the tax treatment of any distributions received thereon. The Receiver cannot give any tax advice to Holders of EminiFX Claims, who are advised to consult their own tax advisors.

## ARTICLE VIII.
## MISCELLANEOUS PROVISIONS

**A.      Jurisdiction of Court**

This Court shall have sole and exclusive jurisdiction to interpret and enforce this Distribution Plan and to adjudicate all matters arising out of, and related to the Receivership and the Distribution Plan, including jurisdiction, power and authority to:

1.      Consider any amendments or modifications of the Distribution Plan requested by the Receiver.

2.      Cure any defect or omission, or reconcile any inconsistency in the Distribution Plan, or any order of the Court.

3.      Issue such orders in aid of execution of, or to enforce, the Distribution Plan as may be necessary and appropriate.

4.      Hear and determine all litigation, Causes of Action and all controversies, suits and disputes that may arise in connection with the interpretation, implementation, or enforcement of this Distribution Plan and any settlements or compromises reflected herein.

5.      Ensure that distributions to holders of Allowed EminiFX Claims are accomplished pursuant to the provisions of this Distribution Plan.

6.      Hear and determine all objections or other disputes with respect to EminiFX Claims.

7.      Protect the Receivership Assets from adverse claims or interference inconsistent with the Distribution Plan, including the issuance of injunctions or other such action as may be necessary or appropriate to restrain interference with the implementation or enforcement of the Distribution Plan.

8.      Hear and determine all applications for compensation and reimbursement of expenses of professionals employed by the Receiver.

9.      Hear and determine issues related to the Receiver's efforts to recover all Receivership Assets, wherever located.

10.      Hear and determine all litigation, Causes of Action and all controversies, suits, and disputes that may arise in connection with any action sought to be taken against the Receiver or his professionals.

11.      Enter a Final Order closing the CFTC Enforcement Action and discharging the Receiver.

12.      Hear and determine all other issues or matters necessary to carry out the purpose of this Distribution Plan.

**B.      Effective Date of Distribution Plan**

This Distribution Plan shall become effective on the Effective Date.  On or after the Effective Date, the Receiver may, in his discretion, commence making distributions to Holders of Allowed EminiFX Claims.

**C.      Binding Effect of Distribution Plan**

On and after the Effective Date, the provisions of this Distribution Plan shall, and shall be deemed to, bind each Holder of an EminiFX Claim, including each of their respective successors, heirs, legal representatives, and assigns.

**D.      Injunction**

Except as otherwise provided in this Distribution Plan or in any document, instrument, release, or other agreement entered into in connection with this Distribution Plan or approved by

order of the Court, all Persons that have held, hold, or may hold EminiFX Claims are permanently enjoined from taking any of the following actions against the Receivership Assets:

1.    commencing or continuing, in any manner or in any place, any action or other proceeding to enforce, attach, collect, or recover in any manner any judgment, award, decree, or order;

2.    creating, perfecting, or enforcing any lien or encumbrance;

3.    asserting a setoff or right of subrogation of any kind against any debt, liability, or obligation due to the Receiver in his capacity as such;

4.    commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Distribution Plan; provided, however, that nothing contained herein shall preclude such persons or entities from exercising their rights pursuant to and consistent with the terms of this Distribution Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with the Distribution Plan, or approved by order of the Court; and

5.    taking any other action specifically enjoined in Paragraphs 55 and 56 of the Receivership Preliminary Injunction Order.

**E.    Continued Force and Effect of Receivership Preliminary Injunction Order**

To the extent that it is not expressly superseded by, or clearly contrary to, the provisions of this Distribution Plan, the Receivership Preliminary Injunction Order shall remain in full force and effect through entry of an order closing the CFTC Enforcement Action, unless otherwise superseded by an Order of the Court.

**F.    Severability**

If any term or provision of this Distribution Plan is determined by the Court to be invalid, void or unenforceable, the Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Distribution Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration, or interpretation.

**G.    Dissolution of EminiFX**

As part of this Distribution Plan, at or near the conclusion of the Receiver's administration of the Receivership Assets, EminiFX will be dissolved.  Such dissolution will include the filing of articles of dissolution if necessary, compliance with applicable state and local laws and procedures related to entity dissolution, and the filing of final tax returns.

**H.    Reports to the Court and to Claimants**

The Receiver shall file a written report with this Court no less than annually regarding the status of efforts to implement this Distribution Plan.  The Receiver shall post a copy of his written report, which may be part of the annual or quarterly status reports, on the Receiver's website in order to provide notice to claimants (https://www.eminifxreceivership.com/).

**I.    Amendments to Distribution Plan**

The Receiver expressly reserves the rights to alter, amend, or modify this Distribution Plan, one or more times, after this Court's approval hereof, if such alteration, amendment or modification does not, in the Receiver's judgment, materially alter the Distribution Plan, and, to the extent necessary, seek this Court's approval to so alter, amend, or modify this Distribution Plan, or remedy any defect or omission, or reconcile any inconsistencies in this Distribution Plan, in such manner as may be necessary to carry out the purposes and intent of this Distribution Plan. The Receiver shall post any amendments to the Distribution Plan with a redline on the Receivership website, and shall inform the Court in his next regularly filed status report.

**J.    Notice**

In general, the Receiver will provide notice to Users via the User Portal and via email, which are the preferred methods of communication.  All notices, requests, and demands to or upon the Receiver to be effective—unless such communication be made through the User Portal **in which case no additional notice is required**—shall be in writing (including, without limitation) addressed as follows:

> David A. Castleman, Receiver
> EminiFX Distributions c/o Stretto
> 410 Exchange, Suite 100
> Irvine, CA 92602
> EminiFX@stretto.com

**K.    Application for Order Terminating the Receivership**

When the Receiver has fully administered the Receivership Assets, the Receiver may apply to this Court for an order terminating his appointment as Receiver, closing the CFTC Enforcement Action and ending the Receivership.  Any such application shall be accompanied by (a) a final accounting identifying (i) all Receivership Assets, their source and value; and (ii) all liabilities, the nature and amount of such claims; and (b) a proposal for a final disposition of any remaining Receivership Assets.

COURT APPROVED PLAN

**L.    Preservation of Records**

The Receiver shall preserve all material records and documents relating to his appointment as Receiver until a date that is 1 year following entry of an order closing of the CFTC Enforcement Action.

Dated: New York, New York
        August 9, 2024

                            Respectfully Submitted,


                            By:    _/s/ David A. Castleman_____
                                   David A. Castleman
                                   OTTERBOURG P.C.
                                   230 Park Avenue
                                   New York, NY 10169
                                   Tel: (212) 661-9100
                                   *Receiver*

                                   Jennifer S. Feeney
                                   William M. Moran
                                   James V. Drew
                                   OTTERBOURG P.C.
                                   230 Park Avenue
                                   New York, NY 10169
                                   Tel: (212) 661-9100
                                   *Counsel for the Receiver*