# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------X

DAVID A. CASTLEMAN AS RECEIVER FOR                    :
EMINIFX, INC.,                                        :        Index No.
                                                      :
                                   Plaintiff,         :        Date Purchased:
                                                      :
            v.                                        :        **SUMMONS**
                                                      :
CLARELLE DIEUVEUIL                                    :
a/k/a MARIE DIEUVEUIL                                 :
a/k/a CLARELLE ALEXANDRE,                             :
                                                      :
                                   Defendant.         :
-------------------------------------------------------------------X

**To the Defendant:**    Clarelle Dieuveuil
                         a/k/a Marie Dieuveuil
                         a/k/a Clarelle Alexandre
                         1634 Wilson St
                         North Baldwin, NY 11510

        YOU ARE HEREBY SUMMONED to answer the Complaint in this action and to serve a copy of your answer, or, if the Complaint is not served with this Summons, to serve a notice of appearance, on the Plaintiff's attorneys within 20 days after the service of this Summons, exclusive of the day of service (or within 30 days after the service is complete if this Summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

        Plaintiff designates New York County as the place of trial pursuant to CPLR § 503(a) and (b), because the Receiver was appointed by the Honorable Valerie E. Caproni, a justice of the United States District Court, Southern District of New York, 40 Foley Square, New York, New York 10007, located in New York County and/or the events or omissions giving rise to the claims occurred in New York County.

Dated:  New York, New York
        March 25, 2025

                                        **OTTERBOURG P.C.**

                                        By: */s/ William M. Moran*
                                            William M. Moran
                                            Jennifer S. Feeney

                                        230 Park Avenue
                                        New York, NY 10169-0075
                                        Tel: (212) 661-9100
                                        wmoran@otterbourg.com
                                        jfeeney@otterbourg.com

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

*Attorneys for Plaintiff David A. Castleman as Receiver for EminiFX, Inc.*

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------X

DAVID A. CASTLEMAN AS RECEIVER FOR    :
EMINIFX, INC.,    :

    :    Index No.

           Plaintiff,    :    **COMPLAINT**

    :

    v.    :

    :

CLARELLE DIEUVEUIL    :
a/k/a MARIE DIEUVEUIL    :
a/k/a CLARELLE ALEXANDRE,    :

    :

           Defendant.    :

-------------------------------------------------------------------X

Plaintiff David A. Castleman (the "Receiver"), solely in his capacity as Receiver for EminiFX, Inc. ("EminiFX"), as and for his Complaint against Clarelle Dieuveuil a/k/a Marie Dieuveuil a/k/a Clarelle Alexandre ("Dieuveuil"), alleges on knowledge as to his own status and actions, and otherwise upon information and belief, as follows:

## NATURE OF THE ACTION

1.    Beginning in September 2021, EminiFX operated as a massive Ponzi scheme, taking in over a quarter billion dollars in contributions from tens of thousands of innocent investors and promising returns of 5.00% to 9.99% per week. But, as investors discovered in May 2022 when EminiFX was raided by the Federal Bureau of Investigation ("FBI") and placed into receivership by the Court in the CFTC Action,[1] those returns simply were not real.

2.    Nearly every week when EminiFX was in operation, instead of earning 5.00% to 9.99% per week, EminiFX actually lost value. Most of EminiFX's losses resulted from its passive holdings, as very few investor contributions were actually traded. But the weekly so-called return

---

[1] References to the CFTC Action are to the action captioned *EminiFX, Inc. v. Alexandre et al* (22-cv-03822), in which the United States District Court for the Southern District of New York (the "Receivership Court") appointed the Receiver.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

on investment ("ROI") was "paid" every Friday.  Like clockwork.  Or so it seemed.  The returns EminiFX posted to investor accounts were fake.  The deposits and withdrawals the investors made were real.

3.      Investors could deposit money into EminiFX either by depositing cash into EminiFX's bank accounts, or later by giving cash directly to certain EminiFX personnel, including Defendant.  Most investors deposited funds in Bitcoin using an offshore cryptocurrency payment processor called CoinPayments.  When investors did attempt to withdraw, they generally did receive a payment from EminiFX.  They might be charged a so-called "fee"–meaning that their online EminiFX balance decreased by more than the withdrawal amount.  But the withdrawals were paid, and not from investment returns, but from the same CoinPayments account that held all the deposits.

4.      EminiFX, and Defendant Dieuveuil, its Chief Financial Officer ("CFO"), did not keep any accounting records showing how much money was actually made or lost each week.  Not only was there no "second set of books" (showing actual profits and losses), neither Dieuveuil nor EminiFX maintained a "first set of books" with any reasonably reliable accounting records.  Instead, EminiFX maintained a sophisticated online user interface and internal account management department.

5.      That department, led by Defendant Dieuveuil in her capacity as CFO, was responsible for maintaining the necessary transaction records that allowed EminiFX to operate as a Ponzi scheme.  Under the system Dieuveuil oversaw, investors could log onto their dashboards and see their deposits, see their withdrawals, see their balance increase by the fixed ROI every Friday.  If an investor needed to make sure her deposit was credited to her online user interface, the account management department would assist.  If the weekly ROI needed to be applied, the

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

account management department would assist. These functions were central to the continued operation of the Ponzi scheme. In order for the scheme to work, investors needed to see their deposits credited. They needed to see their withdrawals deducted. They needed to see their ROI (and other recruitment bonuses) applied. Without that investor base, EminiFX could not operate.

6.     As the CFO, Dieuveuil had direct knowledge of EminiFX's true financial condition. As the CFO, she had access to the EminiFX accounts, both cash and Bitcoin. As the CFO, she knew or should have known that the 5.00% to 9.99% weekly ROI was not based on any actual investing activity. As the CFO, she knew or should have known that withdrawals were paid from the same account that accepted deposits. As the CFO, she knew or should have known that she (or EminiFX) did not keep a first set of books, did not keep a second set of books, did not file a tax return, and did not keep reliable accounting records of any kind.

7.     As the CFO, Dieuveuil had intimate knowledge and control over EminiFX's operations. She ran the day-to-day account management operation, keeping track of deposits, withdrawals, and ROI. She was the second most senior employee at EminiFX, after Eddy Alexandre, the CEO of EminiFX who is currently serving a nine-year federal prison sentence for his role in EminiFX.[2] She directed the staff in charge of hiring and firing employees. Many of those employees viewed her as one of the company's primary leaders. And, she was intimately involved in the decision to stop accepting deposits at one of EminiFX's primary contribution banks when the other primary contribution bank froze the EminiFX account based on suspected fraud in March 2022.

---

[2] This suit arises solely from Dieuveuil's role as Chief Financial Officer and her receipt of over $500,000 in fraudulent transfers, and not in any way from any marital relationship that she may have or does exist with Eddy Alexandre. Moreover, given the Consent Order in the CFTC Action that requires turnover of all of Alexandre's assets traceable to EminiFX funds to the Receiver, the Receiver has not yet had occasion to sue Alexandre.

3

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

8.     In late March 2022, as EminiFX was winding down accepting cash contributions into its primary contribution accounts, EminiFX encouraged most investors to use CoinPayments to make contributions. But some investors still contributed cash throughout April and early May 2022. Those investors would contribute cash to various EminiFX personnel, acting as collectors, who would give the cash to Dieuveuil or Alexandre. Dieuveuil or Alexandre would then give a credit to the collector on the EminiFX system, who would then disburse those credits to the investors who contributed the cash. Over $6 million was collected in this way, but only around $1 million made its way into actual EminiFX bank accounts. Dieuveuil, as the CFO, failed to ensure that those cash contributions were actually deposited into EminiFX bank accounts.

9.     Dieuveuil was also an account holder at EminiFX. But she did not make any material deposits. Instead, she collected referral credits, sitting near the top of a multi-level marketing program at EminiFX that rewarded account holders for recruiting other investors, akin to a pyramid scheme. She used so-called "withdrawals" from that account to extract over $300,000, and knew (or should have known) the true source of those funds—investor deposits. She also received a separate $200,000 payment directly from EminiFX. There was no value provided to EminiFX in return; these payments were on top of the salary she was paid through payroll.

10.     On Thursday, May 12, 2022, the FBI simultaneously raided EminiFX's headquarters and the home that Alexandre and Dieuveuil shared. Alexandre was arrested in the early morning. And yet Dieuveuil was not. However, despite it being a weekday, hardly anyone came to work at EminiFX that day. Upon information and belief, the reason only a few more junior employees showed up is that after Alexandre was arrested, Dieuveuil began calling EminiFX employees and telling them not to come into the office. And even after Alexandre was

4

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

incarcerated and an injunction to shut down EminiFX was issued in the CFTC Action, Dieuveuil and others attempted to organize online Zoom meetings to continue the operation of EminiFX.

11.    The EminiFX Ponzi scheme proved devastating to innocent investors, who are expected to receive back roughly half of what they invested, and none of the profits that they were promised. Dieuveuil's actions and inactions played a central role in the execution of EminiFX, personally extracting hundreds of thousands (if not millions) of contributions from investors, not keeping accounting records as any prudent CFO would, leading the team that implemented the key deceptions that allowed the scheme to continue, and failing to ensure that millions of dollars in cash contributions were kept in EminiFX bank accounts.

12.    The Receiver was authorized by the Receivership Court to take control of EminiFX and did so on May 12, 2022. The Receiver has taken control of all EminiFX assets he could locate (including cash in EminiFX bank accounts), and is authorized to bring suits in federal and state Court under the orders appointing him. The Receiver acts as a fiduciary for the estate, the ultimate beneficiaries of which are the innocent investors of EminiFX. As the Receiver's Distribution Plan approved by the Receivership Court on January 21, 2025, makes clear, any recovery of damages in this Action will be paid dollar for dollar to EminiFX investors. Therefore, while the Receiver is bringing in this Action claims over which he has standing to bring, any monetary recovery will benefit innocent investors and not any wrongdoer.

## THE PARTIES

13.    On May 11, 2022, in the CFTC Action, the Receivership Court entered the Statutory Restraining Order (the "SRO") [Dkt. 9] which, among other things, appointed the Receiver as the Temporary Receiver for EminiFX and for "all customer funds and property and other assets traceable to customers in the possession of or under the control of Eddy Alexandre."

5

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

On June 15, 2022, the Receivership Court entered the Consent Order for Preliminary Injunction (the "Consent Order") [Dkt. 56], which appointed David A. Castleman as the permanent Receiver for EminiFX and its affiliates or subsidiaries owned or controlled by EminiFX, and incorporated the terms of the SRO.  The Consent Order specifically authorizes the Receiver to "[a]ssume full control of the Receivership Defendants by removing Defendants Eddy Alexandre and EminiFX, Inc., and any officer [including Defendant Dieuveuil], independent contractor, employee, or agent of the Receivership Defendants, from control and management of the affairs of the Receivership Defendants as the [Receiver] deems appropriate" Consent Order ¶ 31(a) and "[i]nitiate, defend, compromise, adjust, intervene in, dispose of, or become a party to, any actions or proceedings in state, federal, or foreign court that the [Receiver] deems necessary and advisable to preserve or increase the value of the Receivership Estate or that the [Receiver] deems necessary and advisable to carry out the [Receiver's] mandate under this Order . . ." *Id.* ¶ 31(i).  The Receivership Court, the Receiver's principal place of business and the principal office of the Receivership are each located in New York County, New York.

14.    On January 21, 2025, the Receivership Court approved a distribution plan submitted by the Receiver.[3]  The Distribution Plan calls for the bulk of the receivership estate—including the full amount of any proceeds as a result of the instant action—to be paid to the innocent investors who were defrauded by EminiFX.

15.    EminiFX is a New York corporation, currently under receivership before the Receivership Court. EminiFX's principal office was moved to 31 West 34th Street, 8th Floor, New York, NY 10001 some time in December 2021.  During the relevant timeframe, EminiFX's CEO,

---

[3] The CFTC Action at Dkt. No. 431 (S.D.N.Y. Jan. 21, 2025) [2025 WL 252435].

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Alexandre, resided in Valley Stream, New York, which is also the legal or principal address of EminiFX.

16.     Clarelle Dieuveuil is an individual and the former Chief Financial Officer of EminiFX, who upon information and belief resides in New York state.

## JURISDICTION AND VENUE

17.     This Court has personal jurisdiction over defendant Dieuveuil pursuant to CPLR § 301 because upon information and belief, she resides in New York State.  This Court also has personal jurisdiction over Dieuveuil because, as set forth herein, Dieuveuil has "commit[ed] a tortious act within the state."  CPLR § 302(a)(2).

18.     Venue is proper in New York County, pursuant to CPLR § 503(a) and (b), because the Receiver was appointed by a federal court sitting in New York County and/or as described herein, the events or omissions giving rise to the claims occurred in New York County.

## FACTUAL BACKGROUND

## The Operation of a Ponzi Scheme through EminiFX

19.     EminiFX was established in or about September 2021 as a "multi-level" investment club, which accepted deposits from investors (the "Customers") in the form of cryptocurrency and bank deposits.

20.     Alexandre and Dieuveuil solicited prospective participants to contribute to the "investment club" through the EminiFX website, weekly Zoom webinars, in person meetings and events, and through a network of promotors on YouTube and other social media.  The largest audience of Alexandre and those assisting him was the Haitian community in the United States, although participants were not limited to that community.  After Alexandre's arrest, upon information and belief, Dieuveuil continued to hold EminiFX Zoom calls.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

21.     Upon information and belief, Alexandre and Dieuveuil misled the prospective participants from the very beginning.  Indeed, according to the EminiFX website, participants could build wealth "with investments in the crypto and forex trading business by signing on with EminiFX." The EminiFX website also touted its "Robo-Advisor Assisted account" that allowed for "automated trading."

22.     Alexandre and Dieuveuil promised potential EminiFX participants that they would receive guaranteed returns of at least 5% "every single week," on any amounts contributed to EminiFX. In fact, after Customers created and funded accounts with EminiFX, each Friday their online accounts showed that the Customers' balances increased by between 5% and 9.99% over the prior week (the equivalent of 1,164% to 14,037% annually).  At the same time, existing Customers were motivated to bring in new Customers through the award of commission bonuses.

23.     The increasing account balances for the Customers gave the impression that EminiFX was profitably trading the Customers' contributions. This was false. The vast majority of Customers' contributions, which totaled over $260 million during its operations, were not traded, but rather were kept in EminiFX's bank and cryptocurrency accounts at Bank of America, TD Bank and CoinPayments, spent by Alexandre, transferred to others (including Dieuveuil, as described below), or transferred to accounts in the name of Alexandre.

24.     The account at Bank of America was frozen around March of 2022, and deposits were then made to an account at TD Bank, as well as in an offshore Coinpayments platform to hold the cryptocurrency.  Dieuveuil was involved in, and helped carry out, EminiFX's decision to stop accepting deposits into the TD Bank account, after the Bank of America account was frozen.

25.     In late March 2022, EminiFX was winding down accepting contributions into either of its primary contribution accounts and began encouraging most investors to use CoinPayments

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

to make contributions. Some investors would instead personally deliver cash to various EminiFX personnel, who would give the cash to Dieuveuil or Alexandre. Dieuveuil or Alexandre would then give a credit to the collector on the EminiFX system, who would disburse those credits to the investors who contributed the cash. Over $6 million was collected in this way, but only around $1 million made its way into actual EminiFX bank accounts. Dieuveuil did nothing to ensure that the balance of the funds collected were deposited into EminiFX accounts. The whereabouts of such funds are unknown to this day.

26.      During the course of EminiFX's operations, the commingled pool of funds was used to satisfy withdrawals by Customers, which totaled over $30 million. As the Receivership Court has explained in a written Order, "because EminiFX was a Ponzi scheme that did not generate any actual profits, every withdrawal from an EminiFX account came out of the same commingled pool of funds into which all investors unknowingly contributed." *See* CFTC Action [Dkt. No. 431].

27.      Of the $260 million in contributions from Customers, only a total of about $14 million of EminiFX Customer funds were actively invested (all at a loss). Substantially more funds were held passively as crypto currency, which declined in value tens of millions of dollars before the Receiver was appointed.

28.      By the time the Receiver was appointed to take over EminiFX, the losses in EminiFX (excluding any promised profits) totaled $55,397,380, according to the Financial Condition Report[4] filed by the Receiver in the CFTC Action. Since his appointment, the Receiver has secured and liquidated over $150 million in assets of EminiFX, which were funded solely by Customer contributions.

---

[4] The CFTC Action, Dkt. No. 199 at p. 61.

9

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

### Dieuveuil's Perpetration of the Ponzi Scheme as Chief Financial Officer

29.     Alexandre and Dieuveuil hired numerous individuals to serve as members of Senior Management at EminiFX.  These individuals comprised roles at EminiFX such as Senior Vice President of Client Relations, Senior Vice President of Business Development, Chief Customer Officer, and Regional Director.  Upon information and belief, while some in Senior Management, like Dieuveuil, had knowledge of the fraud, and others may have as well, others did not.  For this reason, the movement of the Customer funds, including from EminiFX accounts to Alexandre's accounts and elsewhere, were shielded from the knowledge of some in Senior Management positions, who upon further information and belief would have interfered with the fraud had they known.

30.     Dieuveuil's knowledge of EminiFX's finances and her role in the management of EminiFX staff reflect that she was aware of and helped to perpetrate Alexandre's fraud against the Customers.

31.     As CFO, Dieuveuil was privy to executive-level information about EminiFX and its financial condition from Alexandre, including its bank account and Coinpayments account balances, withdrawals and actual investment activity. Dieuveuil knew that the money being deposited by Customers was not being invested, but rather was sitting in accounts, and that the returns being allocated to Customers were fictitious and had no relationship to actual investment activity and returns.

32.     As CFO, Dieuveuil directed a group of staff at EminiFX who were described as "accountants" and who communicated in a Slack channel at EminiFX called "finance_accounting."  Dieuveuil also monitored the performance of EminiFX staff and assisted with hiring new staff.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

33.    Despite staff designations as "accounting," the Receiver has not found any indication that EminiFX kept a ledger or any accounting records.  Rather the function of the accounting team at EminiFX blurred with that of a customer service team, which ensured, through Dieuveuil's guidance, that Customers remained unaware of the fraud.

34.    Specifically, Dieuveuil trained and directed EminiFX's staff in how to deal with various Customer complaints that were submitted to the company, so as to pacify the Customers. This training included directing staff to allocate fake returns to Customers who did not receive promised returns on their deposits, thereby perpetrating the fraud against Customers by allocating fictitious profits.

35.    Deposits were not automatically credited to a Customer's account, but, rather, required manual input on the Customer's "dashboard" upon receiving confirmation that a deposit was made by the Customer into one of the pools of commingled funds (e.g., EminiFX's TD Bank or Bank of America account or its CoinPayments account).  Dieuveuil would manually "credit" such amounts to Customers' accounts.

36.    Dieuveuil's instructions to EminiFX's staff to assign fake values to Customers' accounts reflect her understanding of the fraud as well as her critical role in continuing it.

37.    In March of 2022, after EminiFX's accounts at Bank of America and TD Bank were closed for deposits, Dieuveuil sent a message to EminiFX staff from "EminiFX, Inc. Administration":

Happy Monday team! Please Acknowledge this notice from the administration.

CRITICAL WARNING: As of today MONDAY MARCH28th any attempt to deposit funds into EminiFX' "closed" bank accounts at Bank of America ending in 3746 and TD BANK ending with 0637 will cause your account to be permanently blocked by accounting and all of your funds returned to you. Share that notice with your family and friends.

EminiFX, Inc.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Administration

38.     Dieuveuil thus instructed EminiFX staff to block Customers who were still trying to make deposits into closed bank accounts, likely because she knew that those Customers, through attempted transactions with the banks, might become aware of the fraud.

39.     Once EminiFX had stopped accepting bank deposits, Dieuveuil also had a critical function in facilitating deposits by cash.  Internal EminiFX records show that, in April 2022, Dieuveuil personally affixed her name to database entries recording over $389,000 in credits that were given to certain aggregators who were collecting cash from Customers for deposit into EminiFX.  Those aggregators then distributed those credits to Customers.  Over $6 million in funds were collected in this manner from late March to early May 2022.

40.     As CFO, Dieuveuil was responsible for ensuring the proper deposit of these funds. Yet, when the Receiver reviewed and collected the property in EminiFX's office, only $1 million in cash collected in this manner was deposited into EminiFX accounts.  The $1 million deposited was far short of the over $6 million that should have been deposited into EminiFX accounts.

41.     Dieuveuil substantially assisted in taking the cash from EminiFX and crediting the Customers' accounts, but failed to deposit it into any of the EminiFX accounts or return it to EminiFX.  The Receiver gave the Customers credit for these deposits when calculating their claims against the Receivership Estate.

42.     Dieuveuil's knowledge about the company and continuation of its fraud demonstrate that she was aware of and helped to continue Alexandre's Ponzi scheme, which harmed tens of thousands of innocent individuals.

## **The Voidable Transfers**

43.     In further contravention of her duties as CFO of EminiFX, Dieuveuil accepted multiple electronic transfers of EminiFX customer funds to her own personal accounts.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

44.     First, in December 2021, Dieuveuil accepted transfers of Bitcoin, which at the time, totaled $27,588.20 from a CoinPayments account held by EminiFX (the "EminiFX CoinPayments Account") to a wallet address that EminiFX records reflect is owned by Dieuveuil (the "Dieuveuil Wallet"), as follows:

   a.  BTC 0.17130319 on December 31, 2021 ($7,978.63 at the time of the transfer)
   b.  BTC 0.12852247 on December 27, 2021 ($6,461.63 at the time of the transfer)
   c.   BTC 0.10727831 on December 19, 2021 ($4,993.62 at the time of the transfer)
   d.  BTC 0.07238693 on December 15, 2021 ($3,531.28 at the time of the transfer)
   e.  BTC 0.04837688 on December 3, 2021 ($2,609.57 at the time of the transfer)
   f.  BTC 0.03431093 on December 1, 2021 ($2,013.47 at the time of the transfer)

45.     On April 8, 2022, Dieuveuil accepted a transfer by wire of $200,000 from an EminiFX account at TD Bank (the "EminiFX Bank Account") to an account held in the name of Marie C. Dieuveuil and Ernst Dieuveuil (the "Dieuveuil Bank Account").

46.     Dieuveuil also accepted transfers of Bitcoin, which at the time totaled $310,308.19, from the EminiFX CoinPayments Account to a wallet address that the Receiver's team has traced to an account at Gemini held by Dieuveuil (the "Dieuveuil Gemini Account"), as follows:

   a.  BTC 4.26109946 on April 3, 2022 ($198,513.49 at the time of the transfer)
   b.  BTC 1.27658412 on March 13, 2022 ($49,436.21 at the time of the transfer)
   c.   BTC 0.74265607 on February 18, 2022 ($29,841.89 at the time of the transfer)
   d.  BTC 0.61052936 on February 4, 2022 ($24,794.08 at the time of the transfer)
   e.  BTC 0.20380319 on January 28, 2022 ($7,722.52 at the time of the transfer)

47.     The Receiver has not found any records suggesting that any value was provided by or on behalf of Dieuveuil to EminiFX in return for any of the above transfers.

### AS AND FOR A FIRST CAUSE OF ACTION
**(Violation of N.Y. Debt. & Cred. Law § 273(a)(1))**

48.     Plaintiff repeats and re-alleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 1

Case 1:22-cv-03822-VEC    Document 465-1    Filed 03/26/25    Page 17 of 23

RECEIVED NYSCEF: 03/25/2025

49.     As set forth above, Dieuveuil received significant transfers totaling at least $537,896.39 from the EminiFX CoinPayments Account and the EminiFX Bank Account to the Dieuveuil Wallet, the Dieuveuil Bank Account, and the Dieuveuil Gemini Account.

50.     As described more fully above, EminiFX was at all times operated as a Ponzi scheme and therefore, any transfers made in the course of such scheme, including the transfers to Dieuveuil, were made for the purpose of hindering, delaying and/or defrauding the Customers who entrusted their funds with EminiFX.

51.     Additionally, Dieuveuil was an insider of EminiFX, the transfers to Dieuveuil were concealed, EminiFX was insolvent or became insolvent shortly after the first transfer was made, the transfers occurred shortly before or shortly after a substantial debt was incurred, and/or EminiFX, through Alexandre, removed and/or concealed its assets while it was operating.

52.     By reason of the foregoing, Plaintiff seeks judgment against Dieuveuil in the amount of at least $537,896.39 and an injunction against further disposition of the funds.

### AS AND FOR A SECOND CAUSE OF ACTION
#### (Violation of N.Y. Debt. & Cred. Law § 273(a)(2))

53.     Plaintiff repeats and re-alleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

54.     As set forth above, Dieuveuil received significant transfers totaling at least $537,896.39 from the EminiFX CoinPayments Account and the EminiFX Bank Account to the Dieuveuil Wallet, the Dieuveuil Bank Account, and the Dieuveuil Gemini Account.

55.     EminiFX did not receive any value in exchange for any of these transfers.

56.     At the time of each of the transfers, EminiFX (a) was engaged or was about to engage in a business or a transaction for which the remaining assets of EminiFX were unreasonably small in relation to the business or transaction and/or (b) intended to incur, or believed or

14

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

reasonably should have believed that EminiFX would incur, debts beyond its ability to pay as they became due.

57.　By reason of the foregoing, Plaintiff seeks judgment against Dieuveuil in the amount of at least $537,896.39 and an injunction against further disposition of the funds.

<u>**AS AND FOR A THIRD CAUSE OF ACTION**</u>
**(Violation of N.Y. Debt. & Cred. Law § 274(a))**

58.　Plaintiff repeats and re-alleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

59.　As set forth above, Dieuveuil received significant transfers totaling at least $537,896.39 from the EminiFX CoinPayments Account and the EminiFX Bank Account to the Dieuveuil Wallet, the Dieuveuil Bank Account, and the Dieuveuil Gemini Account.

60.　EminiFX did not receive any value in exchange for any of these transfers.

61.　EminiFX was insolvent at the time of the transfers and/or EminiFX became insolvent as a result of the first transfer.

62.　By reason of the foregoing, Plaintiff seeks judgment against Dieuveuil in the amount of at least $537,896.39 and an injunction against further disposition of the funds.

<u>**AS AND FOR A FOURTH CAUSE OF ACTION**</u>
**(Unjust Enrichment)**

63.　Plaintiff repeats and re-alleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

64.　As set forth above, Dieuveuil received transfers totaling $537,896.39 directly from EminiFX.  Thus, Dieuveuil received a benefit at the expense of EminiFX and the Customers who deposited funds to EminiFX.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)
NYSCEF DOC. NO. 1

Case 1:22-cv-03822-VEC    Document 465-1    Filed 03/26/25    Page 19 of 23

INDEX NO. UNASSIGNED
RECEIVED NYSCEF: 03/25/2025

65.     Neither EminiFX nor the Customers received any value in exchange for the money that Dieuveuil received.

66.     It would certainly be against equity and good conscience to permit Dieuveuil to retain the transfers, particularly in light of the fraud perpetrated by Alexandre and Dieuveuil against the Customers of EminiFX.

67.     By reason of the foregoing, Plaintiff seeks judgment against Dieuveuil in the amount of at least $537,896.39 for unjust enrichment.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**(Conversion)**

68.     Plaintiff repeats and re-alleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

69.     As CFO of EminiFX, Dieuveuil accepted cash from Customers which they entrusted to her for the purpose of making investments in EminiFX.

70.     In derogation of that purpose, Dieuveuil failed to deposit that cash into any of the EminiFX accounts or return it to EminiFX.

71.     By reason of the foregoing, Plaintiff seeks judgment against Dieuveuil in the amount of the cash given by Customers and wrongly converted by her.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**(Breach of Fiduciary Duty)**

72.     Plaintiff repeats and re-alleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

73.     Dieuveuil was the Chief Financial Officer of EminiFX.  As CFO, Dieuveuil owed fiduciary duties to EminiFX, including duties of care and loyalty, as well as to the Customers.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

74.     Dieuveuil breached her fiduciary duties to EminiFX and the Customers by, as described more fully above, knowingly assisting Eddy Alexandre in operating EminiFX as a Ponzi scheme resulting in no profits and massive losses to EminiFX over the course of months.

75.     Dieuveuil also failed, as CFO, to properly deposit cash deposited by EminiFX Customers into any EminiFX account.

76.     By reason of the foregoing, Plaintiff seeks judgment against Dieuveuil in the amount of at least $55,397,380 for breach of her fiduciary duties.

### AS AND FOR A SEVENTH CAUSE OF ACTION
#### (Aiding and Abetting Breach of Fiduciary Duty)

77.     Plaintiff repeats and re-alleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

78.     Eddy Alexandre served as Chief Executive Officer of EminiFX.  As CEO, Alexandre owed fiduciary duties to EminiFX, including duties of care and loyalty, as well as to the Customers.  Dieuveuil knew that Alexandre owed a fiduciary duty to EminiFX.

79.     Dieuveuil aided and abetted Eddy Alexandre in breaching his fiduciary duties to EminiFX and the Customers by, as described more fully above, knowingly assisting Eddy Alexandre in operating EminiFX as a Ponzi scheme resulting in no profits and massive losses to EminiFX over the course of months.

80.     By reason of the foregoing, Plaintiff seeks judgment against Dieuveuil in the amount of at least $55,397,380 for aiding and abetting Alexandre's breach of his fiduciary duties.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
#### (Fraud)

81.     Plaintiff repeats and re-alleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

82. Dieuveuil knew that EminiFX was being operated as Ponzi scheme and that Customers were not receiving real returns for investments, but instead were being allocated false returns.

83. Dieuveuil instructed and directed EminiFX staff to credit such returns to Users, thereby, continuing the lie to Customers that their money was being invested, with the intention that investors would continue making deposits to EminiFX, so that Dieuveuil and Alexandre could use Customer deposits for their own personal gains.

84. Dieuveuil also misrepresented to Customers that cash they gave to EminiFX would be deposited in an EminiFX account for investment.

85. Thousands of Customers reasonably relied on EminiFX's representations that their deposits were being invested and they were receiving actual returns for their investments.

86. Dieuveuil's and Alexandre's fraud resulted in losses of millions of dollars to Customers.

87. By reason of the foregoing, Plaintiff seeks judgment against Dieuveuil in the amount of at least $55,397,380 for fraud.

## AS AND FOR AN NINTH CAUSE OF ACTION
### (Aiding and Abetting Fraud)

88. Plaintiff repeats and re-alleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

89. Alexandre and Dieuveuil knew that EminiFX was being operated as Ponzi scheme and that Customers were not receiving real returns for investments, but instead were being allocated false returns.

90. Dieuveuil instructed and directed EminiFX staff to credit such returns to Users, thereby, continuing the lie to Customers that their money was being invested, with the intention

18

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

that investors would continue making deposits to EminiFX, so that Dieuveuil and Alexandre could use Customer deposits for their own personal gains.

91.     Dieuveuil also misrepresented to Customers that cash they gave to EminiFX would be deposited in an EminiFX account for investment.

92.     Thus, Dieuveuil both herself directed, and assisted and enabled Alexandre's fraud against EminiFX's Customers.

93.     Thousands of Customers reasonably relied on EminiFX's representations that their deposits were being invested and they were receiving actual returns for their investments.

94.     Dieuveuil's and Alexandre's fraud resulted in losses of millions of dollars to Customers.

95.     By reason of the foregoing, Plaintiff seeks judgment against Dieuveuil in the amount of at least $55,397,380 for aiding and abetting Alexandre's fraud.

WHEREFORE, Plaintiff respectfully requests judgment as follows:

A.     On the First, Second, and Third Causes of Action, avoidance of and return to EminiFX of the transfers from EminiFX to Dieuveuil in an amount not less than $537,896.39, as well as an injunction against further disposition by the transferee, and any other relief required by the circumstances, including by not limited to, an award of reasonable attorneys' fees;

B.     On the Fourth Cause of Action, awarding in favor of Plaintiff and against Dieuveuil damages for Unjust Enrichment in an amount to be determined at trial not less than $537,896.39 plus interest thereon;

C.     On the Fifth Cause of Action, awarding in favor of Plaintiff and against Dieuveuil damages for Conversion in an amount to be determined at trial;

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

NYSCEF DOC. NO. 1     Case 1:22-cv-03822-VEC     Document 465-1     Filed 03/26/25     Page 23 of 23     INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 03/25/2025

D.      On the Sixth Cause of Action, awarding in favor of Plaintiff and against Dieuveuil damages for Breach of Fiduciary Duty in an amount to be determined at trial not less than $55,397,380;

E.      On the Seventh Cause of Action, awarding in favor of Plaintiff and against Dieuveuil damages for Aiding and Abetting Breach of Fiduciary Duty in an amount to be determined at trial not less than $55,397,380;

F.      On the Eighth Cause of Action, awarding in favor of Plaintiff and against Dieuveuil damages for Fraud in an amount to be determined at trial not less than $55,397,380;

G.      On the Ninth Cause of Action, awarding in favor of Plaintiff and against Dieuveuil damages for Aiding and Abetting Fraud in an amount to be determined at trial not less than $55,397,380;

H.      Awarding Plaintiff such other and further relief as this Court deems just and proper.

Dated: New York, New York
       March 25, 2025

**OTTERBOURG P.C.**

By:   */s/ William M. Moran*
      William M. Moran
      Jennifer S. Feeney

230 Park Avenue
New York, New York 10169
(212) 661-9100
wmoran@otterbourg.com
jfeeney@otterbourg.com

*Attorneys for Plaintiff David A. Castleman as Receiver for EminiFX, Inc.*

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.