**MEMO ENDORSED**



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X

COMMODITY FUTURES TRADING
COMMISSION,

        Plaintiff,

        v.

EDDY ALEXANDRE, and
EMINIFX, INC.,

        Respondents.
----------------------------------------X

New York, N.Y.

Case No. 22-CV-3822 (VEC)

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/1/2025
```

## MOTION TO INTERVENE AND REMOVE RECEIVER'S ACTION TO THE SOUTHERN DISTRICT OF NEW YORK

    This motion is brought on behalf of Eddy Alexandre, (hereinafter "Mr. Alexandre" and "Intervenor"), acting pro se, Respondent in the aforementioned action, respectfully moves this Honorable Court for an order allowing him to intervene as a matter of right pursuant to Fed.R.Civ.P. Rule 24 and as a necessary party pursuant to state rule New York Code Civil Practice Law and Rules (CPLR) Article 7 Section 1001, and to request the removal of the Receiver's action from its current jurisdiction in the New York State Supreme Court Index #651642/2025 to the Southern District of New York (SDNY) as docketed at CFTC Dkt. #465, 465-1 in this Court pursuant to 28 U.S.C. SSSS 1331, 1332, & 1441. Given the ongoing litigation between the Commodity Futures Trading Commission ("CFTC") and Respondent Mr. Alexandre, as well as the case currently being litigated by the receiver, David Castleman, this case presents issues of duplicative litigation and jurisdictional inefficiencies that necessitate relief under 28 U.S.C. SS 1446 and the principles set forth in relevant case law. This motion is based on the following grounds:

PRELIMINARY STATEMENT

    This case is the result of a joint-criminal federal prosecution between the CFTC and the US Attorney Office (USAO). EminiFX is an investment club promoting a Digital Assets Assets Platform (DAP) selling digital assets as digital packages using a profit-sharing strategy for its member-investors, in contrast to the traditional methods of investment reserved to the rich and affluent.

    In an unprecedented move, breaking with its own internal policy of the past thirty-three (33) years, the CFTC launched a joint-criminal federal investigation with the USAO, and secured a simultaneous ex-parte statutory restraining order (SRO) against EminiFX, and the CEO Eddy Alexandre, using misleading statements, falsehoods and omissions of material facts claiming in violation of federal statutes and rules as administered by the CFTC, inter alia, grave danger, threat of assets dissipation and imminent flight risk. The CFTC hired a receiver later appointed by the presiding judge. Mr. Alexandre disputes his liability in the CFTC action and also brought a collateral attack in the Crim docket claiming his innocence and reversing his plea to not guilty.

    The CFTC Hired the receiver pre-action and presented him to this Court for temporary and permanent appointment to serve as the Receiver. See Dkt. #9 at 30 (appointing Plaintiff[CFTC & Castleman] as Receiver on a temporary basis); and later on appointing them as permanent Receiver. See Dkt. #56 at 37 (appointing Plaintiff as Receiver on a permanent basis). Equally relevant in that case, coterminous to that appointment is the Statutory Restraining Order (SRO) empowering the Receiver (CFTC & Castleman) to manage "all customer funds and property and the other assets traceable to customers in the possession or under the control of Eddy Alexandre," Former CEO & Founder of EminiFX, destroyed with the arrival of the Court

-appointed Receiver at inception without any conviction of civil judgment but to accomplish the goal of the CFTC to create a make believe loss to be putatively assigned to the CEO in support of the Federal violations claims in this instant action and the joint-criminal investigation.

Furthermore, the SRO clearly specified the fiduciary responsibilities of the Receiver to--preserve the ASSETS of EminiFX, investigate and resolve investors' claims, and oversee the distribution of funds to the investors. Dkt. #56 at 8. This is a Federal case claiming constitutional and Federal Statutory violations with a federal appointment, and going through federal proceedings to adjudicate these open federal issues with their respective counterclaims.

FACTUAL BACKGROUND

1. The CFTC is currently litigating the same claims against Respondent Mr. Alexandre as CEO of EminiFX, in the SDNY, establishing federal jurisdiction over the matters surrounding the actions of the EminiFX CEO and the Receiver's District Court appointment.

2. The Receiver, acting on behalf of EminiFX, the CFTC, and the Court, initiated an action in New York State against the CEO's spouse, while accusing the CEO in half of the claims BY NAME, and indirectly in the totality of the claims, yet coming short of naming him as a party to defend against the action, incorporating claims that mirror several substantive claims brought against the CEO in the CFTC's federal action in the SDNY, including allegations based on the same purported falsehoods and rife with lies, misleading statements and carefully crafted omissions now disguised as claims dressed under the "State tortious acts". They are not different, they are identical and inherently interdependent. See Case Nos 22-CR-326(JPC) & 24-CV-5767 (JPC).

3. The Receiver's actions, particularly the liquidation of the crypto portfolios at an artificially low price (approximately $13-$16 per coin in mid-2023), and the liquidation of EminiFX Real Estate portfolio at an extra 30% off acquisition costs even though these properties have primarily been purchased at significant discount in court auctions, in addition to totally destroy the company from day ONE firing every employee to cause massive shock and awe effort, have substantially skewed the financial position of the company and misrepresented the losses as being actionable against the CEO and the spouse to cover his own destruction and creation of Receiver-made losses in an attempt to shift liability from himself to the CEO and his family, and make the the CFTC's federal violations claims true acting as a perfect trojan-horse. The Receiver must be held accountable and answer for his actions in this Court that empowered him to cause such a massive destruction under the color of law. He is now openly showing that he was always an undercover prosecutor, faking to step into the shoes of EminiFX only to cause so much destruction to make the CFTC's federal violations claims true and eat as much funds as possible along the way. Obviously who petition the Court to place Castleman in the shoes of EminiFX? The CFTC! It's not hard to figure out why: Because the receiver is tasked to give them the $15 million they are trying to impose as fine to be adjudicated in-house between them, the judge and the receiver without the assistance of a jury trial. Everything about this action is based on the Federal violations claims.

4. The unilateral decisions by the Receiver appear to be exploiting the legal system for additional billable hours, rather than pursuing equitable recovery for the EminiFX Estate, having already taken possession of all assets of the CEO and EminiFX with the active assistance of the CEO, and starting an action with the hope of recovering nothing for it but more steep billable hours from the investment funds for himself and his team at the rate of $1.5-$2.5 million per quarter to eat the rest of the funds not yet distributed to the investors.

5. The Plaintiff has brought this civil suit against Defendant Clarelle Dieuveuil concerning allegations of wrongful conduct that allegedly transpired during the EminiFX operations over the period of September 2021 to May 2022 as claimed to be in violation of a federal statute challenged by the Intervenor on multiple grounds for being a non-offense.

6. The Intervenor, Mr. Alexandre, has been directly mentioned by name multiple times (in over a dozen clauses) in the Complaint as a co-conspirator in the very claims underlying this lawsuit, albeit he is not named as a party to this action.

7. Currently, the Intervenor is litigating similar claims in the United States District Court for the Southern District of New York under the same claims raised by the same receiver and his boss who hired him, and presented him to be appointed by Honorable Judge Caproni, inter alia, the Commodity Futures Trading Commission (CFTC).

8. Pending in the Court of Appeals for the Second Circuit is a decision from this Court declaring EminiFX a PONZI scheme based on "evidence put forth by the Receiver in support of his proposed distribution plan." The presiding judge abused her discretion and violated the Intervenor's constitutional rights pursuant to Title III and Seventh Amendment safeguards against judge made factual determination without the providence of the jury and without holding an evidentiary hearing adjudicating in

favor of her court-appointed receiver in "its entirety". Armed with that abusive determination, that should have stayed open until the final resolution of the case, the receiver has started mounting numerous lawsuits on various individuals under the cover tortious acts at the State level for a Federal question not yet resolved, vigorously challenged and pending at the Appellate court. Dkt #431. All that in the backdrop of a pending motion for summary judgment suggested to the CFTC by the presiding judge and indeed requested by the CFTC over six months ago since September 2024 and yet open unresolved with the same issues at the heart of the ongoing litigation. This is not only premature but extremely damaging at it shows the deep-seeded bias of the presiding judge against the Intervenor while affording significant latitude to the government and the court-appointed receiver.

LEGAL STANDARD FOR REMOVAL TO FEDERAL COURT

Pursuant to 28 U.S.C. SS 1446, a defendant may remove a civil action from state court to federal court if it could have originally been brought in federal court. The grounds for removal include:

a) Federal question jurisdiction under 28 U.S.C. SS 1331, where the plaintiff is asserting claims that arise under the Constitution, laws, or treaties of the United States. This is civil action adjudicating "rights" for claims arising under the Constitution, treaties and/or laws of the United States whereas the CFTC and Castleman identified by this court as "Receiver" over the Assets of EminiFX and Mr. Alexandre have brought Federal statutes and claims that created a liberty interests and related interests that are yet to be resolved as Mr. Alexandre has disputed these claims and requested a jury trial for a fair and just resolution. See Rivet v. Regions Bank of Louisiana, 522 U.S. 470, 474, 75 (1998) (quotation and citations omitted).

Furthermore it's notable to focus on the requirements of the Federal question jurisdiction as it requires "either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law." See Perpetual Sec., Inc. v. Tang. 290 F.3d 132, 137 (2nd Cir. 2002) (cleaned up). This open issue of material facts in the CFTC action and the improper determination could not be more substantive.

b) Diversity jurisdiction under 28 U.S.C. SS 1332 when there is complete diversity of citizenship and the amount in controversy exceeds $75,000.

c) Federal district court jurisdiction under 28 U.S.C. SS 1441(a). Generally, except as otherwise expressly provided by Act of Congress, any civil action brought in a State Court in which the district court of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

d) As established by Rule 24(a) of the Federal Rules of Civil Procedure (and its state counterparts CPLR Article 7 Section 1001 [Necessary parties]), a party may intervene in an action when:

1. Timeliness: The motion to intervene is timely.

2. Interest: The applicant has a significant interest in the subject matter of the litigation.

3. Protecting Interest: The existing parties do not adequately represent that interest.

4. Impairment of Interest: The applicant's interest may be impaired or impeded by the decision in the action.
In the case of Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc., 72 F.3d 361 (3d Cir. 1995),

[LEFT EMPTY]

the Second Circuit also reiterated that parties have right to intervene when their interests are significant enough to warrant intervention, especially if the interests are at stake in a way that their absence could lead to impairment of those interests as in the case at bar where the Intervenor will be forced to bear the results of these proceedings without being named as REQUIRED PARTY as a result of a violation of a non-joinder under the excuse the receiver could not yet find the opportunity to sue Mr. Alexandre.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Duplicative Litigation and Judicial Economy

The Supreme Court of the United States has consistently recognized the importance of avoiding duplicative litigation and the potential for inconsistent judgments. In Curtis v. Citibank, N.A., 226 F.3d (2d Cir. 2000), the Second Circuit emphasized that efficiency requires litigation involving significant common issues to be consolidated in ONE FORUM.

In this case, the ongoing litigation in the SDNY directly pertains to the same facts and parties involved in the current New York State action. The claims against the spouse are grounded in a broader context involving the CEO's conduct under the light of the Federal statutes going through ongoing litigation. Allowing separate proceedings would not only waste judicial resources but could also lead to conflicting outcomes.

### II. Federal Jurisdiction Prevails

The actions initiated by the Receiver (for the CFTC [as they are officially both nominated Receiver by this court]), in State court are deeply intertwined with and dependent on the federal offenses alleged in the ongoing CFTC litigation. The U.S. Supreme Court in Grabble & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, 545 U.S. 308 (2005), recognized the necessity of federal adjudication when federal law is a substantial component of the case.

Here, in the case at bar, the Receiver's claims arose from the same set of federal regulations and statutes that are being actively and vigorously litigated in the SDNY making removal warranted. Under Thompson v. Dryvit Systems, Inc., 170 F.3d 1003 (10th Cir. 1999), the court held that the presence of federal questions in a State court proceedings can serve as grounds for removal.

### III. Potential for Injustice and Fair Trial

The alleged misconduct of the Receiver under federal statutes, including claims of manipulative liquidation practices and violations of Code of Federal Regulations and the Statutes the CFTC agency administers, raise pertinent issues of fairness and due procedure. The unique ability of the SDNY to address these claims, given the comprehensive federal oversight of the CFTC and the Receiver, will be better serve the interests of justice.

As noted in Newman v. Piggie Park Enterprises, Inc., 390 F.2d 30 (4th Cir. 1968), unnecessary complexity and potential unjust results in duplicated litigation further justify removal to a singular, competent forum.

### IV. Timeliness

The Intervenor submits this motion without delay, as he has only recently become aware of the implications of the new allegations made against him and the direct reference to him in the Receiver's Complaint as docketed at Dkt. 465.

### V. Significant Interest

The Intervenor has a direct and substantial interest in the outcome of this litigation since the claims being brought against him and his spouse involve his alleged conduct and his name is repeatedly mentioned directly and in the context of the allegations. And, the Intervenor will be significantly impacted and unable to defend against these litigations in multiple venues,

while Castleman is using the investors and the EminiFX Estate funds to bring the lawsuits and generate billable hours for himself and his law firm without any expectations of getting anything back in return knowing that it will destroy the lives of the defendants just to defend against these baseless allegations, and yet the only winner is and will be Castleman and his team billing the Estate at the rate of $1.5-2.5 million in fees per quarter whether or not he looses the case, he will get paid without any scrutiny from Judge Caproni.

It's notable that president Biden said before leaving office, "My family has been subjected to unrelenting attacks and threats, motivated solely by a desire to hurt me the worst kind of partisan politics. .. I believe in the rule of la, and I am optimistic that the strength of our legal institutions will ultimately prevail over politics. But baseless and politically motivated investigations wreak havoc on the lives, safety, and financial security of targeted individuals and their families. Even when individuals have done nothing wrong and will ultimately be exonerated, the mere fact of being investigated or prosecuted can irreparably damage their reputations and finances." My family has been subjected to the same vendetta. See Exhibit 1.

For the receiver to go after the CEO's spouse asking for $55 million knowingly and willingly misleading the court and the public about the frivolous nature of his request because he has control of the CEO assets and destroyed as much as he could destroyed or liquidate thus far, hence he knows he is lying and is expecting to bring NOTHING in return to the Estate but to himself and his team at the tone of millions for his pockets in fees by generating unlimited billable hours over frivolous lawsuits in violation of his fiduciary responsibility to preserve the Estate funds and not to bring any suits without any hope of bringing value to the Estate. This vendetta of his while the CFTC Federal claims are ongoing has gone too far. The Intervenor has tremendous interests in removing this case to the Southern District Court of New York. His end goal is to drive the CEO's children to be homeless and destroy the good character and reputation of his Spouse just so he can eat some more of the funds. The Receiver is the only one who will eat more money than any investor in this CFTC-Receiver made debacle while returning pennies to the investors for their hard earned funds. This is not justice, this is a travesty.

### VI. Ongoing Litigation

Mr. Alexandre, the Intervenor, has vigorously contested liability in the CFTC action, he pled guilty to commodities fraud count in a joint-criminal prosecution with the same CFTC/Receiver and the USAO and has since brought a collateral attack on his conviction and changed his plea from guilty to not-guilty having pled to a non-offense and claiming lack of jurisdiction among others, although he specifically pled to "omission to the EminiFX club members about the EminiFX's trading functionalities." See 22-CR-326 (JPC) in this district.

### VII. Inadequate Representation

The existing parties, particularly the Defendant (the Intervenor's spouse), Is NOT a party to this CFTC-action and is the subject of a personal vendetta from the receiver and the CFTC who is using the receiver to destroy her good character and reputation knowing that she cannot make any statements that would incriminate herself or her husband under spousal privilege especially given the context of the pending criminal and civil federal litigation where ONLY the intervenor is a Defendant against entities involved in this case. The Intervenor's family has been subjected to unrelenting attacks and threats, motivated solely by a desire to hurt him and by greed to generate billable hours for the receiver.

It's notable to quote former President Biden on the potential damages of selective and vindictive prosecution and the hurt they cause to the defendants. "I believe in the rule of law, and I am optimist that the strength of our legal institutions will ultimately prevails over politics. But baseless and politically motivated investigations wreak havoc on the lives, safety, and financial security of targeted individuals and their families. Even when individuals have done nothing wrong and will ultimately be exonerated, the mere facts of being investigated or prosecuted can irreparably damage their reputations and finances." This is the end goal of such prosecution by the receiver and his bosses with nothing more to generate billable hours in the investment funds and destroy the life of a citizen who has done nothing wrong.

In Peterson v. Wren, 14 F.4th 698 (8th Cir. 2021), the court ruled that the intervention is warranted when existing parties do not adequately represent the interests of the Intervenor, particularly when the interests of the existing party diverge from those of the intervenor. The 2nd Circuit holds the same to be true.

### VIII. Risk of Impairment

The Intervenor is currently facing significant financial challenges due to his incarceration, which has placed an extreme financial burden on his family. As the primary support for the family during this difficult time, his spouse is more than overextended and the family's ability to meet all financial obligations has been severely impacted. Creating duplicative claims on multiple venues exponentially exposed the Intervenor and his family to grave risk of impairment.

Although Judge Caproni in an unrelated ruling Dkt #469 at 1 nonchalantly declared "If Mr. Alexandre is correct that the allegations against his spouse are unfounded, then she will quickly be able to dispose of the Receiver's case against her without this Court's intervention", this only illustrates the lack of empathy of the presiding judge for having spent so much time on the bench has become insensitive to the burden, heavy costs and damages of defending against a baseless lawsuit. Ex. 1 Id.

In light of the difficulties he is currently facing while incarcerated and his commitment to resolving this matter, should the Court rule in this proceeding without allowing the Intervenor to present his defenses and/or position, the outcome may substantially affect his rights and obligations in the federal case, as well as his reputation and the integrity of his legal and personal affairs.

The Intervenor request the court to consider his rights to defend against this action based on the lack of substantiation of the alleged "tortious acts", as well as his genuine desire to properly litigate the ongoing federal claims at issues giving rise to the underlining alleged torts claims.

## REQUEST FOR CONFIDENTIALY IN CIVIL PROCEEDINGS

Mr. Alexandre received a copy of the filing at Dkt. #465 with his home address fully exposed. Without access to the docket, and out of abundance of caution, the Intervenor hereby requests that his residential address and telephone numbers be kept confidential from any party, in any pleadings, and any other papers submitted to the court, and that such address be safeguarded and sealed in order to prevent its inadvertent or unauthorized use or disclosure pursuant to N.Y. CPLR R2103-A, Fed.R.Civ.P. 5.2 and relevant case law.

Mr. Alexandre and his family have been subjected to credible threats verified by the US Marshalls in the joint-proceeding of the CFTC-USAO in the SDNY, whereas threat were made on his life as the CEO of EminiFX during the criminal proceeding that extensively publicized by the USAO and later promoted by bloggers paid by the receiver for "publicity." These threats are real and should not be taken lightly nor ignored by the Receiver and this court as previously raised in both the CFTC civil action and the CFTC-USAO criminal proceedings. Therefore, other appropriate sealing judicial orders have been issued in these proceedings and warrant the same level of care to protect the safety and well being of his family.

Conclusion

In the light of the foregoing, and in accordance with 28 U.S.C. SSSS 1331, 1332, 1441 & 1446, Respondent respectfully requests that this Court GRANT the motion to remove this action to the Southern District of New York; and GRANT his motion to intervene as a Matter of Right, allowing him to join the proceedings as a party, and further allowing him the opportunity to defend against the allegations made against him and to protect his significant interests. Allowing for removal will preserve judicial efficiencies, promote coherent resolution of the intertwined legal principles, and serve the fair administration of justice.

WHEREFORE, Respondent, Mr. Alexandre requests that the Court GRANT this motion and issue an order transferring this action to the Southern District of New York and further request that both courts issue an Order to the Clerk of court to seal his home address from all and any proceedings.

Dated: April 23, 2025

                        Respectfully submitted,

                        /S/ Eddy Alexandre

                        Eddy Alexandre, pro se
                        Reg. No. 00712-510
                        Former CEO & Founder of EminiFX
                        FCC Allenwood Low
                        P.O. Box 1000
                        White Deer, PA 17887

Enclosure: First page of Receiver's notice of action.

Application DENIED. This Court has no jurisdiction to issue orders affecting the state court action described in this submission.

The Clerk of the Court is respectfully directed to mail a copy of this order to Mr. Alexandre and to note mailing on the docket.

SO ORDERED.

*Valerie Caproni*   5/1/2025

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE