**MEMO ENDORSED**

IN THE UNITED STATES DISCTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____X

COMMODITY FUTURES TRADING
COMMISSION,
    Plaintiff,

v.

EDDY ALEXANDRE, and
EMINIFX, Inc.,
    Respondents.
_____X



New York, N.Y.

Case No. 22-CV-3822 (VEC)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/16/2025

### EMERGENCY MOTION TO STAY CIVIL PROCEEDINGS AND ENJOIN RECEIVER'S ACTION

    The Respondent, Eddy Alexandre, (hereinafter "Mr. Alexandre"), acting pro se, respectfully moves this Honorable Court for an order staying the above-captioned civil action brought by the the Commodity Futures Trading Commission (CFTC) pending the resolution of critical outstanding motions, including motions for recusal and various substantive motions that fundamentally impact the Respondent's rights and the fairness of these proceedings. The Respondent moves for an emergency stay of the civil proceedings in the above-captioned matter and seeks an injunction to prevent the Receiver from taking any further actions that are based on the presiding judge's orders, which are currently under appeal pursuant to Article III, the Fifth and Seventh Amendments as applied in Sparf and Jakersy. In support this motion, Respondent states as follows:

PRELIMINARY STATEMENT

    Respondent seeks a stay of these proceedings due to several substantial issues that have arisen in this case, specifically the denial of fundamental rights to due process and jury trial under Article III, the Fifth and Seventh Amendments of the United States Constitution. It is well established that common law claims had to be heard by a jury; the public rights to exception to Article III jurisdiction does not apply because the CFTC action did not fall within any of the distinctive areas involving governmental prerogatives where the U.S. Supreme Court had concluded that a matter could be resolved outside of an Article III court, without a jury. Therefore, Respondent contends and asserts that the Seventh Amendment applied and a jury is required for such factual determination. Sec v. Jarkesy 219 LEd.2d 650 (2024), (An SEC Action that, inter alia, leveled civil penalties implicated the Seventh Amendment as the SEC's antifraud provisions [...], replicated common law, and it was well established that common law claims had to be heard by a jury) (quotation marks omitted) [cleaned up].

    Respondent has filled four critical motions currently pending before this Court each addressing severe concerns regarding due process, bias, and the legitimacy of the proceedings:

    1. Leave to File Counterclaim and Crossclaim: Respondent seeks to file a counterclaim and crossclaim against the Receiver, which was previously denied by Judge Caproni on grounds of meritless claims without considering the merits of the content presented.

    2. Motion for Recusal and Reassignment: Under 28 U.S.C. Section 455(a), Respondent has requested recusal based on adverse appearances due to Judge Caproni's prior role as chief legal counsel at the FBI, which involved government practices, similar to claims raised in the current action, and which Respondent believes leads to deep-seeded bias.

    3. Opposition to Receiver's Distribution Plan: Respondent opposes the Receiver's initial distribution plan which entails a

coterminous factual determination labeling Respondent's associated entity, EminiFX, as a Ponzi Scheme. This determination occurred without a jury trial or proper evidentiary hearings, violating Article III and the Seventh Amendment rights.

4. Motion to Intervene and Remove: Respondent seeks to remove a parallel tortious lawsuit filed by the Receiver in New York State Supreme Court to this court, arguing judicial economy, asserting jurisdiction and that adjudicating similar claims in different forums would unjustly prejudice Respondent.

Each of these motions raises critical federal legal issues that warrant a stay of these proceedings until they can be properly resolved, also dealing with governmental abuse that is central to this case.

## FACTUAL AND PROCEDURAL BACKGROUND

The respondent has recently contended that it cannot obtain a fair and just outcome in these proceedings. The judge has demonstrated an abuse of discretion through various rulings leading to irreversible damages:

1. PONZI Scheme Determination.
The presiding Judge has already made a factual determination treating the company as a PONZI scheme, which is contested in a pending motion for summary judgment. This determination was based on "evidence" proffered by the Receiver without the benefit of an evidentiary hearing, thus violating fundamental principles of due process and the Federal Rules of Evidence pursuant to Article III, the Fifth and Seventh Amendments of the United States Constitution.

2. Denial of Motion to Reconsider
The denial of the Respondent's motion for leave to file a counterclaim and crossclaim against the receiver was deemed meritless before even reviewing the content on its merits.

## MEMORANDUM OF POINTS AND AUTHORITIES

## LEGAL AUTHORITY FOR EMERGENCY STAY

A party seeking a stay must demonstrate:
   A-A Likelihood of success on the merits.
   B-Irreparable harm in the absence of a stay.
   C-The balance of hardships tips in the movant's favor.
   D-The stay is in the public interest.
      (See in re World Trade Center Disaster Site Litigation, 503 F.3d 167, 170 (2d Cir. 2007)).

A. Likelihood of Success on the Merits
The Respondent has raised substantial arguments regarding the Judge's recusal under 28 U.S.C. SS 455(a). The appearance of bias stemming from prior roles and the improper handling of evidence presents strong arguments that the Respondent is likely to succeed on appeal.

B. Irreparable Harm
The actions taken by the Receiver, under the authority of the presiding judge's orders, pose a risk of irreversible damages to the Respondent. As stated in New York v. United States, 752 F.2d 1077, 1080 (2d Cir. 1985), if a party does not receive a stay, they may suffer harm that cannot be rectified by monetary damages or other remedies.

C. Balance of Hardships
The hardships facing the Respondent if the stay is not granted, such as the improper judicial determinations, unadjudicated liabilities, and a irreversible potential reputational impact, far outweigh any delay in proceedings that may occur as a result of the stay.

D. Public Interest
The integrity of the judicial process must be preserved. It is in the public interest to ensure that cases are decided without bias or preconceived notions. As emphasized in Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847 (1988), ensuring impartiality is a cornerstone of judicial proceedings.

Considering the totality of circumstances and the elements to qualify for a stay, the facts presented advocate in favor of an emergency stay of this present action.

LEGAL FRAMEWORK

Federal courts possesses the inherent authority to stay proceedings to promote judicial efficiency or prevent prejudice to parties. See Landis v. North American Co., 299 U.S. 248, 254 (1936) (a court may consider "the competing interests which will be affected by the granting or refusal to grant a stay"); Dall v. Weber, 154 F.2d 498, 499 (2d Cir. 1946) (stay granted to avoid duplicative efforts and protect parties' rights).

In balancing the totality of circumstances, the court must weigh the potential irreparable harm from a denial of the stay against any potential harm to other parties. The Respondent asserts that the fundamental principles of the Fifth Amendment due process are at stake, and more specifically Article III and the Seventh Amendment concerning the prejudicial factual determinations made by the court that impact the Respondent's rights without the time-tested protections of the an evidentiary hearing or Jury trial.

ARGUMENT

1. Motion to Reconsider Leave to File Counterclaim and Crossclaim
The Respondent's motion for leave to file a counterclaim and crossclaim must be granted as it is essential for a complete adjudication of the Respondent's rights. The denial of this motion by Judge Caproni, based on a determination of meritlessness without reviewing the content of the actual claims, is a clear procedural misstep. Federal Rules of Civil Procedure 15(a)(2) encourages courts to "freely give leave when justice so requires." This emphasizes that the denial of leave without consideration of the merits contravenes the spirit of the law.

In Foman v. Davis, 371 U.S. 178 (1962), the Supreme Court reinforced that lave to amend should be granted unless there is a "showing of undue delay, bad faith, futility of amendment, or unfair prejudice." Here, the Respondent's proposed counterclaim is integral to defending against the claims made by the CFTC and inherently tied to the issues of due process related to the Receiver's actions.

2. Motion for Recusal, Qualification and Reassignment
The Respondent's second motion for recusal is grounded in 28 U.S.C. section 455(a), which mandates that a judge disqualify themselves in any proceeding in which their impartiality might reasonably be questioned. The prior role of Judge Caproni as chief legal counsel at the FBI, particularly in cases involving government practices, raises potential biases that cannot be overlooked. Furthermore, the standard established in Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847 (1988) reinforces the necessity for recusal when the appearance of bias is present. The Respondent argues the necessity of impartial adjudication, free from taint of possible bias, and these proceedings cannot continue under such precarious circumstances.

Given the serious implications of the Judge's rulings, potential irreparable harm to the Respondent, the community at large, and the necessity to uphold the integrity of the court, it is imperative that this Court grant an emergency stay of the civil proceedings, and issue an injunction to halt the Receiver from pursuing actions based on the challenged rulings pending the resolution of the appeal.

3. Motion Challenging the Receiver's Distribution Plan
The approval of the Receiver's distribution plan prior to a jury trial on the substantive issues constitutes a violation of fundamental rights inherent in both the Seventh Amendment and Article III of the United States Constitution. The determination by this Court that EminiFX is a Ponzi Scheme, made in absence of a jury trial and without adequate evidentiary hearings, contravenes established principles of due process as delineated in Matthews v. Eldridge, 424 U.S. 319 (1976). The Respondent's rights are further Jeopardized as the Receiver is empowered to initiate legal actions against third parties based on this unsupported determination, leading to irrevocable harm.

4. Motion to Intervene and Remove
Respondent seeks to remove a parallel tortious lawsuit filed by the Receiver in New York State Supreme Court to this court, inter alia, the Southern District Court of New York: NYC, arguing for judicial economy and asserting that adjudicating similar claims in different forums would unjustly prejudice Respondent.

The CFTC Receiver, acting on behalf of EminiFX, the CFTC, and as an agent of this Court, initiated an action in New York

State against the CEO's spouse, while accusing the CEO in the majority of the claims by name, and indirectly in the totality of the claims, yet coming short of naming the CEO as a party to defend against the action, incorporating claims that mirror several substantive claims brought against the CEO in the CFTC's federal action in the SDNY, including allegations based on the same purported falsehoods and rife with lies, misleading statements and carefully crafted omissions now disguised as claims under the "State Tortious Acts". They are not different, they are identical and inherently interdependent. See Case Nos 22-CV-326 (JPC) & 24-CV-5767 (JPC).

The Receiver has brought this civil suit against defendant Dieuveuil and the CEO concerning allegations of wrongful conduct that allegedly transpired during the EminiFX operations over the period of September 2021 to May 2022 as claimed to be in violation of a federal statute challenged by the Intervenor on multiple grounds for being a non-offense.

The Ruling in Sparf v. United States 156 U.S. 51 (1985) reinforces the foundational principle that it is the jury, not the judge, that is tasked with making determinations on disputed factual issues as experienced in this instant CFTC-action. There is not a shred of a doubt that there are significant open issues of material facts, proffered with sworn affidavits, that are vigorously disputed in the case at bar. However, Respondent is dealing with a team (CFTC-JUDGE & CFTC_RECEIVER) making determination in-house against the interests on the other side (Respondent) standing without due process and protections even though in theory the presiding judge was supposed to be a NEUTRAL ARBITER. That's why the Court in Sparf underscored that juries are the arbiters of fact.

Article III of the Constitution, the Fifth Amendment of Due Process Clause, and the Seventh Amendments protect the right to a jury trial in civil cases and require that any factual determinations that affect rights or liberties are made by a jury. It's unconscionable that this court is attempting to contravene or circumvent these safeguards and constitutional protections in favor of the Executive, inter alia, the government. It is imperative that courts respect this delineation of roles and allow juries to assess the material facts that underpin a defendant's character, loss of rights or liberties as required by the United States Constitution.

According to the Constitutional principles established in Sparf v. United States, and relevant provisions of Article III, the Fifth and Seventh Amendments of the United States Constitution, it is asserted that a Judge's role is to interpret and apply the law, while determinations regarding constitutionally disputed facts must be reserved for a jury. Furthermore, the application of SEC v. Jarkesy, 219 LEd.2d 650 (2024) compels Article III judges not to engage in factual determinations about a defendant; in all common-law cases in violations of provisions of the United States Constitutions Article III, and the Seventh Amendment affording the rights to a jury trial to any defendant in any cases with a controversy of $20 and above. In this instant action the controversy as provided by the CFTC and the CFTC-Receiver is around $213 millions with an added penalty of $15 million as fines in favor of the CFTC. For these factual determinations to be adjudicated in-house (between the judge, the government and the court-appointed receiver) is a travesty of justice in violation of all the safeguards afforded in a title III court as opposed to an agency-court [Title One] where the defendant does not have all these protections.

It's notable in the Jarkesy's holding that the Supreme Court stated on Record that the SEC won 90% of all cases they adjudicated in-house (in their own private courts-Title One) contrasting with 50% when they take their actions to a regular court [Title III] where the Defendant is afforded all the safeguards, and the protections of the United States Constitution. The gap is so significant that the highest court of the land had to step in and put a stop to that meat grinder of in-house adjudication. For the presiding judge Caproni to attempt to replicate the same behavior in a Title III court to lend a hand to the CFTC, a governmental agency, against the interest of the Respondents in this CFTC action, is quite alarming. Such determinations are meant to be within the purview of a jury as requested numerous time by Mr. Alexandre on the records.

In this CFTC-Action, the presiding judge is acting as Grand Jury and a petite jury, in doing so the judge violates her oath of office created under Article III. The judge cannot be judge, parties, and jurors without violating her oath of office. It has been the bedrock of our democracy and the foundation of the judicial system, that ONLY the jury is the trier of fact. It has been settled that the exclusive function of the jury is to determine issues of fact, while the power to determine issues of law is reserved for the trial judge. Henceforth, that Ponzi determination lacks authority and was imposed in violation of constitutional protections, including the empowerment of the receiver with that determination to start mounting lawsuits against entities while the decision has been challenged and appealed to the Second Circuit Court of Appeal for being unlawful and abusive for being a judge made-crime and judge made factual determination without the statutory protection as a remnant of the Biden administration witch hunt against crypto investors.

5. Prejudice and Irreparable Harm

Proceeding with this action in its current state would result in irreparable harm to the respondent. The absence of a fair proceeding inclusive of the Respondent's right to counterclaims and the potential biases of the presiding judge threaten the integrity of the judicial process and the fundamental right to a fair trial. Without a formal jury determination on the key facts at issue, the Respondent faces undue prejudice and the risk of a considerable miscarriage of justice. The actions of this receiver reverberates across the lives of ten of thousands of investors and will hurt them for generations to come by destroying the very investment they looked to secure for their children by destroying the Crypto and Real Estate Portfolios of EminiFX, this receiver caused the community grave torts with the intent of helping the CFTC make an impossible case in line with the Biden administration witch hunt against any crypto investors, but Crypto prevailed as illustrated in Exhibit A, Bitcoin is poised to reach heights never seen before in the history of mankind. (The received destroyed us all.)

Given the current posture of the case, the ongoing threat of irreparable harm to the Respondent is not only certain but imminent. The factual determinations made by this Court concerning the Ponzi scheme designation[as requested by the Receiver], akin to a verdict without the procedural safeguards that a jury trial affords, expose the Respondent to misuse of judicial determinations in other contexts, including but not limited to parallel actions in state courts, without any determination of liability being concluded via the proper adversarial process. This is just wrong.

In civil as well as criminal cases, the right to a fair trial is fundamental. In either type of case, the court must be alert to avoid practices that may undermine the fairness of the factfinding process. In its willingness to accept evidence, the court should have conducted evidentiary hearing in this civil case brought by the CFTC where colloquy strongly indicated the need for an evidentiary hearing as to whether the allegations of the CFTC-Receiver/Court-Appointed-Receiver met the threshold of the adversarial process according the protection of the due process clause, the Federal Rules of Evidence, and the Respondent's constitutional rights. The role of the jury in a civil as well as in federal criminal cases is to decide only the issues of fact as the ultimate trier of fact, "for the settled function of the Jury is to determine issues of fact; and the power to decide issues of law is for the trial judge. Dimick v. Schiedt, 293 US 474, 486, 79 L.Ed 603, 611, 55 S.Ct. 296, 95 ALR 1150, 36 NCCA184; Patton v. United States, 281 US 276, 288, 74 L.Ed 854, 858, 50 S.Ct. 253, 70 ALR 263; Sparf v. United States, 156, 156 US 51, 39 L.Ed 343, 15 S.Ct. 273. See also Steele 593, 605, 71 L.Ed 793, 799, 47 S.Ct. 531.

Indeed, without a stay, the Respondent is at risk of being unfairly prejudiced by the factual determinations that may resonate throughout the parallel state litigation and compromise his ability to defend against the claims vigorously. Judge Caproni's refusal to allow for a meaningful adversarial process, as well as her prior decisions, give rise to significant concerns regarding her deep-seeded bias and the integrity of the judicial process involved. This Court must recognize the importance of upholding the constitutional principle that factual determinations are to be determined by a jury and not the judge. The dangerousness of such abuse is significant and detrimental to the Respondent and for the public interest to regain faith in a fair and just judicial system.

WHEREFORE, for the foregoing reasons, the Respondent respectfully requests this Honorable Court to grant an emergency stay of all proceedings in this action pending resolution of the aforementioned motions to reconsider leave to file the counterclaim and crossclaim, recusal of Honorable Judge Caproni, request to intervene and remove the Receiver's actions from the State Supreme Court, and challenging the Receiver's distribution plan cloaked with the Ponzi determination, ensuring that all parties receive a fair and substantive resolution in line with the principles of due process. The Respondent further asserts that such a stay would serve the interests of justice and equity.

Dated on May 5, 2025

Respectfully submitted,

/S/ Eddy Alexandre

Eddy Alexandre, pro se
Reg. No. 00712-510
Former CEO & Founder of EminiFX
FCC Allenwood Low
P.O. Box 1000
White Deer, PA 17887

Application DENIED. None of the four motions that Mr. Alexandre describes as "outstanding" is, in fact, outstanding; the Court has ruled on all of them. *See* January 21, 2025, Order, Dkt. 431 (granting the Receiver's Motion to Approve the Distribution Plan); March 13, 2025, Order, Dkt. 462 (denying the Motion for Recusal); April 9, 2025, Order, Dkt. 469 (denying the Motion for Leave to File Counterclaims and Cross-Claims against the Receiver); May 1, 2025, Order, Dkt. 481 (denying the Motion to Intervene and Remove). That Mr. Alexandre has now pursued frivolous interlocutory appeals of some of his frivolous motions is no reason to delay proceedings or impede the Receiver's distributions.

Given the lack of legal authority for Mr. Alexandre's motion, the Court hereby certifies pursuant to 28 U.S.C. § 1915(a)(3) that any interlocutory appeal of this order would not be taken in good faith. Therefore, permission to proceed in forma pauperis on interlocutory appeal of this order is DENIED.

The Clerk of the Court is respectfully directed to mail a copy of this order to Mr. Alexandre and to note mailing on the docket.

SO ORDERED.

5/16/2025

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE