**MEMO ENDORSED**

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT COURT OF NEW YORK
---------------------------------------------------------------X

COMMODITY FUTURES TRADING
COMMISSION,
        Plaintiff,

v.

EDDY ALEXANDRE and
EMINIFX, INC.,
        Respondents.
---------------------------------------------------------------X

New York, N.Y.

Case No.: 22-CV-3822 (VEC)

RECEIVED MAY 20 2025 PRO SE OFFICE

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/22/2025

## MOTION TO REFUTE FINANCIAL REPORT AND APPLICATION FOR PAYMENT
## FROM COURT-APPOINTED RECEIVER FOR 1ST QUARTER 2025 OR TWELFTH STATUS REPORT

Eddy Alexandre, (hereinafter, "Mr. Alexandre"), acting pro se, hereby submits this motion to refute the financial report and related application for payment submitted by the CFTC's Court-Appointed Receiver for the period ending in the first quarter of 2025 ("Receiver's Report"). This motion is grounded in procedural, evidentiary, and substantive inadequacies contained within the Receiver's Report, (the Twelfth status report) as well as broader issues surrounding due process and compliance with applicable legal standards.

Introduction

    The Receiver's Report includes non-standardized financial figures that do not conform to Generally Accepted Accounting Principles (GAAP), as explicitly acknowledged by the Receiver. In light of the Receiver's own admission, these figures should not be admissible or relied upon for financial determinations or applications for payment. The inconsistencies and lack of adherence to regulatory standards contravene core principles of transparency and accountability essential in legal proceedings, particularly those with implications for property rights and due process.

    The assertions in the Twelfth Status Reports were developed without the benefit of adversarial litigation and therefore, as the Receiver acknowledged in the submission, "illustrative" "NON-GAAP" compliant, subject to revision over time. And this time the EminiFX Estate captured $650,000 in earned interest, while the Receiver spent $1,300,000 in legal bills and expenses (approximately.) [Gleaned from the

illustrative report the Receiver has about $74 million in Cash on hands and disbursed $83 million to 20,000 EminiFX investors with the remaining balance from the $100 million temporary halted for failure to provide banking or payment information.

Now that the EminiFX is spending twice more than it is earning, the Receiver is appropriating more investors funds as time goes by. The ratio for expenses/earnings is now 2x more than earning, without any end in sight because the Receiver is contemplating of starting a litany of lawsuits where he will be the only one getting paid while using the funds of the EminiFX Estate.

General Statements

1- EminiFX is a modern "Investment Club" taking advantage of the Digital Assets Portfolios combining Finance and Technology (FINTECH) to promote "Digital Packages" as a shared profit vehicle for the average investor not able to participate in more traditional ventures.

2- EminiFX is NOT a Ponzi-scheme, and was never one. EminiFX is a full-fledge fully operational modern Digital Asset investment club company.

3- EminiFx is NOT a "multi-level investment" company. EminiFX offered a multi-level REWARDS structure to the investors. NO member/investor was required to sponsor anyone to benefit from the digital packages. The EminiFX Digital package is all encompassing and does not need anything else other than the digital package investment ALONE.

4- The EminiFX Estate is made of investors' funds, EminiFX assets, Mr. Alexandre's Assets, and proceeds from the high yields interests from the investors' funds as required by regulations in compliance with the Statutes.

5- The entire EminiFX Estate is the basis for Mr. Alexandre's Restitution payment to be RETURNED to the members of EminiFX, thus belonging to the investors of EMINIFX.

6- On the dreaded Thursday morning of May 12, 2022, the CFTC with the assistance of the temporary Receiver-hired, walked in, destroyed the operations, took control of EminiFX assets and operations, armed with the the Judge Temporary Restraining Order (TRO) obtained via an ex-parte (one-way) proceeding, started dismantling everything to prove that there is something wrong to

be fixed by the savior, the Receiver, who broke everything. All assets were liquidated, causing a significant loss of $30 million dollars in the Cryptocurrency portfolio from $120 million down to $90 million at the conclusion of the liquidation trades to convert into US Dollars at the worst possible time in the history of cryptocurrency liquidation. And this is not withstanding the destruction of the Real Estate portfolio After-Repair-Value (ARV) also liquidated at below 30% of the already low acquisition costs which costs EminiFX around 40-60% below ARV (without logic.) 37 months later, Mr. Alexandre, EminiFX and the Investors are still trying to find out what was the emergency used as the basis for the expedited "wash sale," knowing that any panic sale in Real Estate will cause massive losses.

7- The Receiver came in with a baggage, the law firm who hired him to work for them, and he will in turn supervise that same law firm by paying them million of dollars that he will swear is a good thing for us. Does that sound like conflict of interests? Yes, it does.

8- The Receiver from inception in his first newly found executive power, seized the salaries of every employee and later released most but of the CEO, and the CFO (not a party to this instant action,) and fired everyone from day one. In an arbitrary action to go around and seize without due process, ex-parte (one-sided) with the Judge allowing him a free reign, he is free to arbitrarily be both the judge and executioner with the assurance to have his actions rubber-stamped by the presiding Judge.

9- The Receiver, after 37 months, is dragging his feet not sharing WHEN he will complete the distribution plan. Each filing says about at least two more semesters to figure out the verification process again and start on implementing the final distribution plan. He now wants to drag out until he has completed his maximum withdrawals and use of the Estate funds through frivolous lawsuits with no expected profitable returns for the Estate but plenty of legal and receivership fees for him and his various teams. Dkt 477.

10- The Receiver has been submitting the same type of reports before, sometimes as "partial" to avoid the scrutiny. And, after 37 months, he persists in providing "illustrative" accounting reports to a real case with lifetime consequences far from being illustrative in substance and in consequences.

11- With extensive resources, and the number of professionals of all backgrounds working for

the receivership, to persist in producing these "illustrative" reports and failing to meet the standards is abhorrent and devoid of any desire to do good by the parties involved. What's worst is that the Receiver submitted the "invoices under seal" to support the submitted reports.

## MEMORANDUM OF POINTS AND AUTHORITIES

A- Legal Authority and Case Law

### 1. Inadmissibility of Non-GAAP Financial Reports

Under the CFTC's regulations outlined in 17 CFR section 17.1 the federal agency is required to maintain and provide standard financial reports for enforcement proceedings as in this case at bar. Courts have routinely held that financial reports not adhering to recognized accounting standards may be deemed inadmissible. For instance, in Seaboard Coast Line Railroad Company v. United States, 473 F.2d 352 (5th Cir. 1973), the court emphasized the necessity of adherence to recognized accounting principles when evaluating financial reports for legal purposes.

### 2. Due Process Considerations

The action to convert EminiFX S-Corp into a qualified fund, (QSF) subjecting it to liabilities proportional to the highest tax brackets, constitutes a significant alteration of the Defendant's property rights without due process. The Case of Matthews v. Eldridge, 424 U.S. 319 (1976), highlights the need for fair procedural safeguards, especially when individuals face potential loss of property. The Receiver's unilateral decisions and lack of transparency infringe upon Mr. Alexandre's rights to a fair process, creating inherent conflicts that undermine judicial integrity.

### 3. Evidentiary Hearings and Jury Trials

The Defendant has repeatedly asserted the right to an evidentiary herein and a jury trial prior to any determination regarding the alleged Ponzi scheme. The principles articulated in Ferguson v. Mc Donald, 140 F.3d 796 (9th Cir. 1998), indicate that meaningful factual determinations regarding liability require thorough examination through adversarial processes. Without such processes, any determinations made based on the Receiver's Reports are fundamentally flawed and subject to objection.

B- Contentions Relating to the Receiver's Actions

### 1. Failure to Provide Adequate Information

The Receiver claims that approximately $83 million has been disbursed to 20,000 EminiFX investors from the initial distribution plan but has not adequately accounted for the remaining balance that remains stagnant. This necessitates a clearer financial overview and substantiation of claims made within the report.

2. Recruitment of Additional Litigation

The Receiver's intent to commence further litigation seems aligned with generating billable hours rather than addressing rightful claims of victims. This raises serious concerns regarding the motives behind prolonging the litigation process at the cost of estate.

3. Lack of Transparency and Adversarial Participation

The Consistent sealing of reports submitted to the court, excluding Mr. Alexandre from the review process, undermines the fundamental principles of fairness and procedural justice. The court's role requires promoting transparent judicial proceedings to uphold public confidence in the legal process.

WHEREFORE In light of the foregoing arguments, Mr. Alexandre respectfully requests the Court to dismiss the Receiver's financial report and all applications for payment contained therein, given their foundational non-compliance with legal requirements and standards. Additionally, Mr. Alexandre seeks the establishment of a timeline for the resolution of all outstanding issues, including but not limited to potential distribution and the initiation of a jury trial to ensure the rights of the Defendant are preserved, and that the Court mandate full transparency regarding financial records and future actions taken by the Receiver.

Dated on May 15, 2025

Respectfully submitted,

/S/ Eddy Alexandre

Eddy Alexandre, pro se
Reg. No. 00712-510
Former CEO & Founder of EminiFX
FCC Allenwood Low
P.O. Box 1000
White Deer, PA 17887

Enclosure: Motion to oppose the Request to Seal the Receiver's Report

Application DENIED. The Court has already reviewed the Receiver's Q1 2025 status report and approved his fee application. *See* Dkt. 490.

As the Court has repeatedly admonished, Mr. Alexandre, having pled guilty in the criminal case to defrauding investors, cannot now position himself as the guardian of their best interests. *See* Dkt. 353, 430. The Court need not consider Mr. Alexandre's preferences when assessing the Receiver's work.

Given the lack of legal authority for Mr. Alexandre's motion, the Court hereby certifies pursuant to 28 U.S.C. § 1915(a)(3) that any interlocutory appeal of this order would not be taken in good faith. Therefore, permission to proceed in forma pauperis on interlocutory appeal of this order is DENIED.

The Clerk of the Court is respectfully directed to mail a copy of this order to Mr. Alexandre and to note mailing on the docket.

SO ORDERED.

5/22/2025

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE