UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------- X
                                                                 :
COMMODITY FUTURES TRADING                                        :
COMMISSION,                                                      :
                                                                 :        22-CV-3822 (VEC)
                                        Plaintiff,              :
                                                                 :        OPINION & ORDER
                     -against-                                   :
                                                                 :
                                                                 :
EDDY ALEXANDRE and EMINIFX, INC.,                               :
                                                                 :
                                        Defendants.             :
                                                                 :
----------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

    Plaintiff Commodity Futures Trading Commission ("CFTC") sued Defendants Eddy

Alexandre and EminiFX, Inc., a company he founded and operated, for various violations of the

Commodities Exchange Act.  7 U.S.C. § 1 *et seq.*  The CFTC now seek summary judgment as to

all claims.  *See* Mot. for Summary Judgment (the "Motion"), Dkt. 395.  Alexandre, who is

proceeding *pro se*, opposes.  *See* Opp., Dkt. 428.  The Motion is GRANTED.

## BACKGROUND

    Alexandre founded, owned, and operated EminiFX, Inc.  Plaintiff's Statement of Facts

("SOF"), Dkt. 397, ¶ 1.[1]  Describing itself as an "investment club," CFTC Ex. 7, Dkt. 397-2, at

---

[1]      Pursuant to Local Rule 56.1(a), any motion for summary judgment filed in this District "must be
accompanied by a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which
the moving party contends there is no genuine issue to be tried."  The party opposing summary judgment must file
"a correspondingly numbered paragraph admitting or denying, and otherwise responding to, each numbered
paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short
and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be
tried."  Local Rule 56.1(b).  Each statement setting forth or controverting a material fact "must be followed by
citation to evidence."  Local Rule 56.1(d).  All assertions contained in the 56.1 statements "will be deemed to be
admitted for purposes of the motion unless specifically denied and controverted by a correspondingly numbered
paragraph in the statement required to be served by the opposing party."  Local Rule 56.1(c).  Additionally, Rule

73,[2] EminiFX purported to provide investors "with an affordable solution that offers easy access to cryptocurrency and Forex trading . . . using the latest technology available, in this case a roboassisted advisor account (RA3)."  SOF ¶ 5.  Neither EminiFX nor Alexandre ever registered with the CFTC in any capacity.  *Id.* ¶ 3.

Over the course of its eight months of existence, tens of thousands of investors poured money into EminiFX, with total contributions exceeding $262 million.  *Id.* ¶¶ 2, 8, 12.  To its customers, EminiFX appeared unbeatable:  the company reported astonishing returns on investment (ROIs) of 5% to 9.99% *per week*, with additional referral bonuses available for investors who recruited others to join.  *Id.* ¶¶ 7, 9.  The company partially attributed its success to its use of cutting-edge technology, including a "Robo-Advisor Assisted Account (RA3)" that allowed for automated trading.  *Id.* ¶ 25.

But it was all a lie.  In reality, EminiFX experienced net losses of more than $49 million.  *Id.* ¶¶ 11, 18.  At least $15 million of EminiFX's losses were caused by Alexandre diverting investor contributions to bank and investment accounts in his own name.  *Id.* ¶ 17.  Alexandre used investors' money to pay for everything from his personal credit card bills, to cars, to cash

---

4(G)(ii) of the Undersigned's Individual Practices in Civil Cases requires the parties to compile both sides' 56.1 Statements and responses into "one, final consolidated 56.1 Statement" by the time briefing has closed.

Given Mr. Alexandre's *pro se* status and the fact that he is currently incarcerated, the Court may overlook his failure to comply with the Court's formatting requirements.  The Court cannot, however, ignore the fact that neither Alexandre's responses to the CFTC's Statement of Facts nor his additions to it, *see* Opp. at 47–61, cite any evidence.  *See McKenzie v. City of New York*, No. 18-CV-6913, 2021 WL 3375613, at *1 (S.D.N.Y. Feb. 26, 2021) ("[A] a party's pro se status does not relieve him of the responsibility of providing admissible evidence to dispute the opposing party's assertions that there are no genuine disputes of material fact requiring a trial."); *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) (the Court's "discretion to consider the substance of [a *pro se* litigant's] arguments" arises only when such arguments are "actually supported by evidentiary submissions").  Accordingly, the Court construes the CFTC's Statement of Facts as largely undisputed, and will address factual disputes only where Alexandre has presented evidence that may, applying the most liberal plausible interpretation, be viewed as an attempt to rebut the CFTC.

[2]    The CFTC filed its exhibits as a single filing.  *See* CFTC Exs. 1-18, Dkt. 397-2.  For clarity, the Court will cite to the exhibits using the ECF-provided pagination.

withdrawals.  *Id.*  Investors, for their part, withdrew approximately $34 million from their accounts, and many withdrew amounts in excess of what they deposited.  *Id.* ¶ 20.  EminiFX paid investors from the same pool of commingled funds in which user contributions were held.  CFTC Ex. 9 at 105.

The CFTC brought this action and the U.S. Attorney's Office brought a parallel criminal prosecution, *United States v. Alexandre*, 22-CR-326 (S.D.N.Y.) (the "Criminal Action"), in May 2022.  The Indictment, dated June 9, 2022, charged Alexandre with commodities fraud in violation of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1 and wire fraud in violation of 18 U.S.C. § 1343.  *See* Criminal Action, Indictment, Dkt. 15.  Alexandre pled guilty to commodities fraud, admitting that he made false statements to induce customers to invest with EminiFX, that the ROI figures he presented "were not based on investment returns," and that EminiFX did not actually have access to the technology it claimed to use.  *Id.* ¶¶ 26, 28–31.  The court accepted Alexandre's plea, sentenced him to 108 months' imprisonment, and ordered him to pay more than $213 million in restitution.  *Id.* ¶ 32.

Meanwhile, in the CFTC's civil case, this Court appointed an Equity Receiver to oversee "all customer funds and property and other assets traceable to customers in the possession of or under the control of Eddy Alexandre."  *See* Statutory Restraining Order, Dkt. 9, ¶ 30.  The Court granted the Receiver "full control of the Receivership Defendants" and "exclusive custody, control, and possession of the Receivership Estate."  *Id.* ¶ 31; *see also* Consent Order for Preliminary Injunction, Dkt. 56, ¶ 59 (providing that the Statutory Restraining Order appointing the Receiver would "remain in full force and effect until the final trial of this case, or until further order of this Court").

Following months of investigation and efforts to recover as many of Defendants' assets as possible, the Receiver moved for approval of a plan to distribute assets to defrauded EminiFX investors.  *See* Mot. to Approve Distribution Plan, Dkt. 381.  The Court approved the Receiver's plan in January 2025 and distributions have been underway since then.  *See* Jan. 21, 2025, Opinion & Order, Dkt. 431.  In the opinion approving the plan of distribution, the Court determined as a matter of law that EminiFX operated as a Ponzi scheme.  *Id.* at 9–11.

The Court denied Alexandre's motion to dismiss, *see* Jul. 10, 2024, Opinion & Order, Dkt. 355, and the parties agreed to proceed directly to summary judgment. *See* Jul. 16, 2024, Order, Dkt. 358.  The CFTC filed a Motion for Summary Judgment as to all counts. Alexandre, who is representing himself *pro se*, opposes the Motion, *see* Opp., and the Receiver, on behalf of the company, does not, *see* Receiver Resp. to Mot., Dkt. 411.

## DISCUSSION

### I.    Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks and citation omitted).

Although the Court must construe the facts in the light most favorable to the nonmoving party, "a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  *Fed. Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019) (internal quotation marks and citation omitted).  Accordingly, to defeat a motion for summary judgment, the nonmoving party must produce "specific facts showing that there is a

4

genuine issue for trial;" a "scintilla of evidence" is not enough.  *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010) (internal quotation marks and citation omitted); *Sista v. CDC Ixis N. Am., Inc*., 445 F.3d 161, 169 (2d Cir. 2006).

When a party moves for summary judgment against a *pro se* litigant, courts afford the nonmoving party "special solicitude."  *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010).  District courts must read a *pro se* litigant's submissions "liberally" and construe them "to raise the strongest arguments that they suggest."  *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003).  Courts "are less demanding of [*pro se*] litigants generally, particularly where motions for summary judgment are concerned."  *Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014).  This lower standard for *pro se* litigants does not, however, "relieve [the *pro se* party] of his duty to meet the requirements necessary to defeat a motion for summary judgment."  *Jorgensen*, 351 F.3d at 50 (quotation marks and citations omitted).

## II.    Alexandre and EminiFX Are Liable for One Another's Conduct

The Complaint alleges various violations of the Commodities Exchange Act ("CEA").  The CEA provides that any "act, omission, or failure of any official, agent, or other person acting for any individual, association, partnership, corporation, or trust within the scope of his employment or office shall be deemed the act, omission, or failure of such individual, association, partnership, corporation, or trust, as well as of such official, agent, or other person."  7 U.S.C. § 2(a)(1)(B); 17 C.F.R. § 1.2.  Alexandre does not dispute that he established, owned, and exercised total control over EminiFX throughout its pre-receivership existence.  SOF ¶ 1.  EminiFX is, therefore, liable for any violations of the CEA and its associated regulations committed by Alexandre.

The inverse is also true:  Alexandre is liable for EminiFX's violations of the CEA.  "A fundamental purpose of [the CEA] is to allow the Commission to reach behind the corporate

entity to the controlling individuals of the corporation and to impose liability for violations of the Act directly on such individuals as well as on the corporation itself." *CFTC v. R.J. Fitzgerald & Co.*, 310 F.3d 1321, 1334 (11th Cir. 2002). Accordingly, the CEA provides that any person who "controls any person who has violated any provision of [the CEA] or any of the rules, regulations, or orders issued pursuant to [the CEA] may be held liable for such violation in any action brought by the Commission to the same extent as such controlled person." 7 U.S.C. § 13c(b). "To establish controlling person liability, the CFTC must show '(1) control and (2) lack of good faith or knowing inducement of the acts constituting the violation.'" *CFTC v. Safety Cap. Mgmt., Inc*., No. 15-CV-5551, 2024 WL 4235453, at *9 (E.D.N.Y. Sept. 19, 2024) (quoting *CFTC v. McDonnell*, 332 F. Supp. 3d 641, 723 (E.D.N.Y. 2018)).

It is undisputed that Alexandre controlled EminiFX during the relevant time period. SOF ¶ 1. It is also clear that he knowingly induced the acts at issue in the CFTC's complaint, given that he personally misrepresented ROI data and other information about the company and misappropriated investor money for personal gain. *Id.* ¶¶ 4–6, 17. Alexandre admitted when he pled guilty that the ROI data he reported to investors "were not based on investment returns," proving that he acted in bad faith. *Id.* ¶¶ 24, 30. Accordingly, controlling person liability is warranted; the acts of EminiFX may, for liability purposes, be imputed to Alexandre, and vice versa.

### III.    Defendants Committed Fraud

Counts I–IV of the Complaint allege that Defendants violated the CEA and its regulations by committing various forms of fraud. *See* Compl. ¶¶ 39–71. Summary judgment is warranted as to each Count, in large part because Alexandre's own guilty plea in the Criminal Action establishes his liability in this civil action. *See Gelb v. Royal Globe Ins. Co*., 798 F.2d 38, 43 (2d Cir. 1986) (defendant cannot re-litigate issues that were decided in connection with a criminal

conviction because "the Government bears a higher burden of proof in the criminal than in the

civil context").

### A.  Collateral Estoppel Bars Defendants from Contesting Liability as to Count IV

In the Criminal Action, Alexandre pled guilty to fraud in violation of Section 6(c)(1) of

the CEA, 7 U.S.C. § 9(1), and its associated regulation, 17 C.F.R. § 180.1.  *See* Criminal Action,

Judgment, Dkt. 106.  Section 6(c)(1) makes it

> unlawful for any person, directly or indirectly, to use or employ, or attempt to use
> or employ, in connection with any swap, or a contract of sale of any commodity
> in interstate commerce, or for future delivery on or subject to the rules of any
> registered entity, any manipulative or deceptive device or contrivance, in
> contravention of such rules and regulations as the Commission shall promulgate
> . . .

7 U.S.C. § 9(1).  The regulation, in turn, makes it unlawful for any person, in connection with

any contract for future delivery on or subject to the rules of any registered entity, to intentionally

or recklessly:

> (1) Use or employ, or attempt to use or employ, any manipulative device, scheme,
> or artifice to defraud;
>
> (2) Make, or attempt to make, any untrue or misleading statement of a material
> fact or to omit to state a material fact necessary in order to make the statements
> made not untrue or misleading;
>
> (3) Engage, or attempt to engage, in any act, practice, or course of business which
> operates or would operate as a fraud or deceit upon any person.

17 C.F.R. § 180.1(a).

Pursuant to the doctrine of collateral estoppel, Alexandre's guilty plea in the Criminal

Action prevents him from denying liability as to Count IV of the Complaint, which makes a civil

claim pursuant to the same section of the CEA to which he pled guilty.  It is well established that

"a criminal conviction, whether by jury verdict or guilty plea, constitutes estoppel in favor of the

[government] in a subsequent civil proceeding as to those matters determined by the judgment in

the criminal case." *New York v. Julius Nasso Concrete Corp.*, 202 F.3d 82, 86 (2d Cir. 2000)

(quoting *United States v. Podell*, 572 F.2d 31, 35 (2d Cir. 1978)).  A matter is determined by the

judgment in the criminal case if "(1) the issues in both proceedings are identical, (2) the issue in

the prior proceeding was actually litigated and actually decided, (3) there was full and fair

opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was

necessary to support a valid and final judgment on the merits."  *NLRB v. Thalbo Corp*., 171 F.3d

102, 109 (2d Cir. 1999).

      All four elements are satisfied here.  As to the first element, Count IV of the Complaint

and Count One of the Indictment accuse Alexandre of violating the same section of the CEA by,

among other things, presenting false ROI data to investors.  SOF ¶ 27; Criminal Action,

Indictment ¶ 1.  As to the second and third elements, Alexandre was represented by counsel in

the criminal proceeding, had the opportunity to contest the charges, and entered his plea

knowingly and voluntarily.  SOF ¶ 28; *see also* Criminal Action, Aug. 28, 2022, Tr., Dkt. 35, at

25:5–42:9 (proceeding in which Alexandre affirmed, under oath, that he understood the rights he

was giving up by pleading guilty and explained the conduct in which he engaged that violated

the CEA).  The fourth element is self-evidently satisfied:  it was necessary to find that Alexandre

committed commodities fraud in order to support his conviction on the merits because the statute

pursuant to which he pled guilty is the same one that he is accused of violating here.

      Alexandre argues that his guilty plea cannot be invoked for collateral estoppel purposes

because he has since moved to set aside his criminal sentence pursuant to 28 U.S.C. § 2255.

Opp. at 32[3]; Alexandre Ex. 6, Dkt. 435, at 42–105.  Alexandre cites no authority for that

proposition, which is ludicrous on its face.  Even if the court in the Criminal Action were to grant

---

[3]     Because the party-provided pagination in Alexandre's Opposition is inconsistent, the Court cites to the
ECF-provided pagination.

Alexandre's motion in full, he would simply be re-sentenced; his motion does not seek to vacate his guilty plea or strike from the record the admissions that he offered voluntarily and under oath.  Even if he had made such a motion, "the pendency of a criminal appeal" — to say nothing of a pending motion for post-conviction relief — "generally does not deprive a judgment of its preclusive effect." *United States v. Int'l Bhd. of Teamsters*, 905 F.2d 610, 621 (2d Cir. 1990); *see also* Fed. R. Civ. P. 60(c)(2) (pendency of a § 2255 motion "does not affect the judgment's finality or suspend its operation").  The Court, therefore, applies the doctrine of collateral estoppel to conclude, as a matter of law, that Defendants violated Section 6b(c)(1) and, hence, that they are liable as to Count IV.

### B. There is No Question of Fact whether Defendants Committed Fraud (Counts I–IV)

Even if the Court were to ignore the estoppel effect of Alexandre's plea, the evidence in the record would be more than sufficient to find, as a matter of law, that Defendants committed fraud.  To prove fraud pursuant to the CEA, the CFTC must show "(1) the making of a misrepresentation, misleading statement, or a deceptive omission; (2) scienter; and (3) materiality." *CFTC v. S. Tr. Metals, Inc.*, 894 F.3d 1313, 1325 (11th Cir. 2018).  The evidence overwhelmingly shows that all three elements are satisfied with respect to at least two categories of Defendants' statements: the false reported ROI and the misrepresentations about "roboassisted" advising.

With respect to the reported ROI, the evidence shows that Defendants consistently represented to investors that they were earning 5% to 9.99% on their investments every week. SOF ¶ 7.  Those representations were categorically false:  EminiFX lost money during 24 of its 30 weeks of operation, *id.* ¶ 22, and, even in its best week, when it reported an ROI of 9.98%, its actual ROI was just 2.28%.  *Id.* ¶ 23.  Alexandre himself has explained why his lies were both

intentional and material; in a sentencing letter he filed in the Criminal Action, he admitted that

he knew "the weekly figures [he] provided were not based on investment returns" and that the

reported ROI "would have been important to the decision-making process for EminiFX

investors."  CFTC Ex. 2 at 54; *see also McDonnell*, 332 F. Supp. 3d at 720

("[M]isrepresentations concerning profit and risk go to the heart of a customer's investment

decision and are therefore material as a matter of law.").

　　　　With respect to the "roboassisted" claims, it is indisputable that Defendants'

representations that they used a "Robo-Advisor Assisted Account (RA3)" to facilitate automated

trading were false.  SOF ¶¶ 25–26.  Alexandre admitted in the Criminal Action that the RA3 and

other promised technological enhancements never materialized.  *Id.* ¶ 26.  He further admitted

that he knew the technologies needed to facilitate use of the RA3 "were still missing" when he

said they were in effect, satisfying the scienter requirement.  CFTC Ex. 2 at 53.  The materiality

of the lie is obvious:  "[a]ny fact that enables investors to assess the risk inherent in their

investment and the likelihood of profit is material," *McDonnell*, 332 F. Supp. 3d at 720, and

Defendants specifically told investors that, by using RA3, EminiFX "lets you retain more of your

profits, and the low pip spreads ensure you stay abreast of price movements."  CFTC Ex. 6 at 66.

　　　　In reliance on Defendants' fraudulent statements, investors contributed hundreds of

millions of dollars, all of which was misappropriated.  The funds were used to pay investor

withdrawals as well as Alexandre's own expenses.  *See* SOF ¶¶ 17–18, 20.  In short, Alexandre

and EminiFX operated a Ponzi scheme.  *See* Jan. 21, 2025, Opinion & Order at 8–11.

　　　　There is simply no question of fact that Defendants committed fraud within the meaning

of Section 6(c)(1) of the Commodity Exchange Act, as alleged in Count IV of the Complaint.

For the same reasons, there is also no question of fact that Defendants committed fraud in

violation of Sections 4b(a)(1), 4b(a)(2), and 4*o*(1) of the CEA, as alleged in Counts I, II, and III, respectively, of the Complaint.  *See Jing v. Sun*, No. 21-CV-2350, 2022 WL 1505950, at *17 (E.D.N.Y. Jan. 4, 2022) ("Courts apply the same standards in determining these elements of Section 6(c) commodities fraud as those applied under the anti-fraud provisions of Section 4b of the Act, codified at 7 U.S.C. 6b."); *CFTC v. Friedrichsen*, No. 18-CV-1830, 2018 WL 7253430, at *4 (S.D.N.Y. Nov. 26, 2018) ("[T]he elements required to establish[] a fraud claim under 7 U.S.C. § 6o(1)(A) are 'essentially the same' as for a fraud claim under 7 U.S.C. § 6b").  The sole remaining question is whether that fraud occurred in the particular contexts required by the various provisions of the CEA as alleged in Counts I–III of the Complaint.  The Court concludes that there is no question of fact that it did.

Section 4b(a)(1) (Count I) prohibits fraud "in connection with any order to make, or making of, any contract of sale of any commodity . . . for future delivery that is made, or to be made, on or subject to the rules of a designated contract market."  7 U.S.C. § 6b(a)(1). Defendants traded stock index and E-mini futures, both of which are traded on designated contract markets, via Alexandre's account with Interactive Brokers.  SOF ¶ 13; *see CFTC v. Main & Prospect Cap., LLC*, No. 19-CV-9736, 2022 WL 17666395, at *2 (C.D. Cal. Aug. 22, 2022) (E-mini futures are traded on designated contract markets); *CFTC v. Mady*, No. 02-73294, 2003 WL 23190188, at *2 (E.D. Mich. Nov. 8, 2003) (stock price index futures are traded on designated contract markets).

Section 4b(a)(2) (Count II) prohibits fraud in connection with commodity interests "other than on or subject to the rules of a designated contract market."  7 U.S.C. § 6b(a)(2).  Of relevance here, Section 4b(a)(2) contains no "actual trading requirement," meaning that conduct is unlawful under this Section so long as Defendants solicited funds for the purpose of trading in

commodity interests.  *CFTC v. Ikkurty*, No. 22-CV-2465, 2024 WL 3251348, at *9 (N.D. Ill. Jul. 1, 2024).  Defendants' conduct is within the scope of this Section because they represented to investors that they would trade on the foreign exchange ("Forex") market, which is outside of designated contract markets.  SOF ¶¶ 4–5; 7 U.S.C. § 2(c)(2)(C)(i), (iii) (Section 4b(a)(2) of the CEA applies to Defendants' foreign currency transactions "as if" they were a contract of sale of a commodity for future delivery); *CFTC v. Paramount Mgmt., LLC*, No. 13-4436, 2013 WL 5586216, at *7 (S.D.N.Y. Sept. 9, 2013) (Section 4b(a)(2) reaches foreign currency transactions).

Section 4*o*(1) (Count III) prohibits any commodity pool operator ("CPO") or its associated person ("AP") from committing fraud.  7 U.S.C. § 6*o*(1)(A)–(B).  As discussed in Section IV of this Opinion, *infra*, EminiFX acted as a CPO and Alexandre was its AP; hence, their fraud is punishable pursuant to Section 4*o*(1).

In short, there is no question of fact to try; Defendants are liable on Counts I, II, III, and IV.

### IV.    EminiFX Was an Unregistered Commodity Pool Operator (Count V) and Alexandre Was an Unregistered Associated Person (Count VI)

Count V alleges that Defendants violated the CEA by failing to register as a Commodity Pool Operator ("CPO") and Associated Person ("AP").  Compl. ¶¶ 72–79.  The CFTC argues that EminiFX acted as a CPO and Alexandre acted as its AP "by soliciting and accepting funds for the purpose of trading commodity interests" in violation of 7 U.S.C. §§ 6(m)(1), 6k(2) and 17 C.F.R. § 5.3(a)(2)(ii).  CFTC Mem. at 14–15.  Commodity interests may include contracts for the purchase or sale of a commodity for future delivery (or an option on such a contract), securities futures products, swaps, commodity options, and leveraged transactions.  7 U.S.C. § 1a(11)(A).

There is no question of fact whether EminiFX acted as a CPO.  The CEA defines a CPO, in relevant part, as a person who is engaged in an investment-related business and who, in

connection with that business, solicits or accepts funds "for the purpose of trading in commodity interests." 7 U.S.C. § 1a(11)(A)(i). EminiFX meets that definition by its own description; it represented to investors that it would help them build "wealth with investments in the crypto and forex trading business" and that it "offer[ed] easy access to cryptocurrency and Forex trading." SOF ¶¶ 4–5. Foreign currency is a commodity interest within the meaning of the CEA, so EminiFX's purported trades on the Forex market rendered it a CPO. *See* 7 U.S.C. §1a(11)(A)(i)(II) (commodity interests include "transactions described in 2(c)(2)(C)(i) of this title," which includes foreign currency transactions). EminiFX's trading of stock futures via Alexandre's Interactive Brokers account also qualifies it as a CPO. SOF ¶ 13; *see United States v. Wilkinson*, 986 F.3d 740, 745–46 (7th Cir. 2021) (defendant qualified as a CPO because he solicited funds to trade securities index futures).

There is also no question of fact whether Alexandre acted as EminiFX's AP. The CEA defines an AP, in relevant part, as a person associated with a CPO as a "partner, officer, employee, consultant or agent . . . in any capacity that involves the solicitation of funds." 7 U.S.C. § 6k(2) (cleaned up). It is undisputed that Alexandre solicited funds on behalf of EminiFX. *See* SOF ¶ 4.

Having determined that EminiFX was a CPO and Alexandre was its AP, the remaining question is whether there is a question of fact whether they registered as required. The CFTC has presented sworn statements by the relevant official in charge of recordkeeping indicating that neither EminiFX nor Alexandre ever registered with the Commission in any capacity. SOF ¶ 3; CFTC Exs. 4–5 at 58–63. The sole evidence Alexandre presents to the contrary is the representation that he may have submitted (or attempted to submit) CFTC Form 40, a different registration document that is sometimes required for certain commodity traders. *See* Alexandre

Ex. 13, Dkt. 432-1, at 177–202.  Even assuming Alexandre submitted that form correctly (which is not at all clear from the evidence Alexandre has provided), it is irrelevant because it does not show that he or EminiFX registered as an AP and CPO, respectively.  In light of the unrefuted evidence that Defendants never complied with the relevant registration requirements, summary judgment is granted as to Counts V and VI.

### V.    Restitution and Disgorgement Are Warranted

When a person violates the CEA and causes losses to others, the CEA authorizes the Court to impose equitable remedies as appropriate, including "restitution to persons who have sustained losses proximately caused by such violation (in the amount of such losses)" and "disgorgement of gains received in connection with such violation."  7 U.S.C. § 13a-1(d)(3).

The CFTC seeks restitution on behalf of EminiFX's investors in the amount of $228,576,962, which is the amount of money contributed to the company by EminiFX investors minus withdrawals.  CFTC Mem. at 21; SOF ¶¶ 8, 20.  The Court's opinion approving the Receiver's plan of distribution explains in greater detail why this method of calculating investor losses is appropriate.  *See* Jan. 21, 2025, Opinion & Order at 8–14.  Simply put, EminiFX was a Ponzi scheme, and investors' decisions to give their money to Defendants was predicated entirely on fraudulent misrepresentations.  Equity, therefore, demands that the money be returned.  *See CFTC v. Long Leaf Trading Grp., Inc*., No. 20-CV-3758, 2022 WL 2967452, at *9 (N.D. Ill. July 27, 2022), *aff'd in part, rev'd in part on other grounds sub nom. CFTC v. Donelson*, 115 F.4th 791 (7th Cir. 2024) ("[T]he Court may presume reliance by customers if the violations involve "material omissions in the context of a fraudulent scheme, or pervasive or widespread misrepresentation." (cleaned up)).  It is also appropriate to subtract withdrawals from the total amount of restitution for the reasons the Court explained in its opinion approving the plan of distribution:

> [B]ecause EminiFX was a Ponzi scheme that did not generate any actual profits, every withdrawal from an EminiFX account came out of the same commingled pool of funds into which all investors unknowingly contributed. Any pre-Receivership withdrawal from that pool of funds accomplished the same goal that [restitution] now aims to achieve: returning to investors as much of the money they contributed to EminiFX as possible.

Jan. 21, 2025, Opinion & Order at 14.

The CFTC also seeks disgorgement. Disgorgement "is a method of forcing a defendant to give up the amount by which he was unjustly enriched." *Sec. & Exch. Comm'n v. Tome*, 833 F.2d 1086, 1096 (2d Cir. 1987). Here, the Receiver found that Alexandre transferred $15,049,500 of investor funds from EminiFX accounts to his personal bank and trading accounts and, hence, was unjustly enriched in that amount. SOF ¶ 17. Because all funds were commingled, the amount ordered in restitution encompasses the disgorgement; accordingly, any amount Alexandre pays toward restitution shall offset his disgorgement obligation.

The sole argument Alexandre presents as to why the proposed restitution and disgorgement amounts are unreliable is that the Receiver did not rely on Generally Accepted Accounting Principles ("GAAP") to calculate them. Opp. at 37–38. This objection is incomprehensible. Alexandre provides no explanation as to how GAAP would even apply to the Receiver's analysis, why GAAP would be preferable in this context to straightforward arithmetic, or how using GAAP would alter the loss amounts calculated by the Receiver. Accordingly, the amounts calculated by Receiver and proposed as restitution and disgorgement by the CFTC are appropriate.

## VI.    Alexandre's Discovery-Related Objections Are Unpersuasive

Although the Court must, in light of Alexandre's *pro se* status, construe his arguments liberally, it is not obligated to give weight to "conclusory assertions," baseless "legal arguments," and "*ad hominem* invective." *Anthony Pappas for Cong. v. Lorintz*, No. 18-CV-

4199, 2019 WL 4396589, at *3 (E.D.N.Y. Aug. 2, 2019), *report and recommendation adopted sub nom. Pappas v. Lorintz*, No. 18-CV-4199, 2019 WL 4396761 (E.D.N.Y. Aug. 26, 2019), *aff'd*, 832 F. App'x 8 (2d Cir. 2020).  Much of Alexandre's Opposition consists of precisely that and, therefore, does not need to be considered.

The Court will, however, address Alexandre's assertion that the Court has deprived him of the "full, fair and liberal discovery to lead to the necessary fact-finding for a trial by jury." Opp. at 7.  This is simply untrue.  There was extensive discovery in the Criminal Action, and Alexandre apparently served discovery requests on the CFTC at various points over the course of this action without ever seeking the Court's intervention.  *See, e.g.*, Alexandre Ex. 7, Dkt. 435, at 106–13.  The Court stayed discovery in September 2022, Dkt. 160, and, after denying the motion to dismiss, ordered the parties to "file a letter stating whether CFTC intends to move for summary judgment or whether the Court should set a discovery schedule.  Either way, the parties should propose a schedule for next steps that is reasonable recognizing that Mr. Alexandre is incarcerated."  Jul. 10, 2024, Opinion & Order at 8.  The parties then proposed a briefing schedule for summary judgment without reference to discovery.  *See* Jul. 16, 2024, Letter, Dkt. 356.  It is unclear what more the Court could have done to permit fulsome discovery if desired by either party.

Even if there were any truth to Alexandre's claim that he was not given the opportunity to take discovery, summary judgment would still be appropriate.  Courts routinely permit summary judgment even without discovery.  In determining whether it is appropriate to do so, courts consider:

> (1) whether the lack of discovery was in any way due to fault or delay on the part of the nonmovant; (2) whether the nonmovant filed a sufficient Rule 56(f) affidavit explaining: (i) what facts are sought and how they are to be obtained, (ii) how those facts are reasonably expected to create a genuine issue of material fact,

(iii) what effort the affiant has made to obtain them, and (iv) why the affiant was unsuccessful in those efforts; and (3) whether the nonmovant provided any basis for its belief that further discovery would alter the outcome of the summary judgment motion.

*Wells Fargo Bank v. Taca Int'l Airlines*, 247 F. Supp. 2d 352, 360 (S.D.N.Y. 2002).  The first factor favors allowing summary judgment to proceed.  The nonmovant was specifically given the opportunity to propose a discovery schedule after the Court decided the motion to dismiss, and he failed to do so.  The second factor also favors allowing summary judgment because Alexandre has not filed a Rule 56(f) affidavit or otherwise asserted, in a non-conclusory fashion, that he has insufficient information to oppose the motion.  The third factor, too, favors summary judgment because Alexandre has not identified any evidence that could have been uncovered over the course of discovery that would have altered the outcome of any aspect of the CFTC's Motion.

## CONCLUSION

For the foregoing reasons, the CFTC's Motion for Summary Judgment is GRANTED.  Defendants Alexandre and EminiFX are jointly and severally liable to pay restitution in the total amount of $228,576,962.  Defendant Alexandre is liable to pay disgorgement in the amount of $15,049,500.  Any amount Alexandre pays toward restitution shall offset his disgorgement obligation.

The Clerk of the Court is respectfully directed to CLOSE the open motion at Dkt. 395.  Because the Receiver's distributions are ongoing, this case will remain OPEN.

**SO ORDERED.**

Date:  **August 19, 2025**
        **New York, NY**

_____
        **VALERIE CAPRONI**
        **United States District Judge**