UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------- X
                                :

COMMODITY FUTURES TRADING        :
COMMISSION,                            :
                                :         22-CV-3822 (VEC)
                     Plaintiff,     :
                                :        <u>OPINION & ORDER</u>
          -against-              :
                                :

EDDY ALEXANDRE and EMINIFX, INC.,      :
                                :
                  Defendants.     :
                                :
----------------------------------------------------------------- X

**VALERIE CAPRONI, United States District Judge:**

Pursuant to a Consent Order, Dkt. 56, Defendant Eddy Alexandre agreed to turn over to the Court-appointed Equity Receiver assets and information relevant to EminiFX, Inc., a company he founded and operated. Alexandre now refuses to produce (1) the credentials needed to access his personal laptop ("the Laptop") and Gmail account, which are believed to contain EminiFX-related information; (2) two luxury wristwatches allegedly purchased with EminiFX funds; and (3) information and assets related to previously undisclosed cash payments made to EminiFX; and (4) information and assets related to a previously undisclosed currency fraud scheme that was part of the overall Ponzi scheme. The Receiver moved to compel production of identified assets and information. *See* Mot. to Compel, Dkt. 448 (the "Motion"). Alexandre opposed. *See* Opp., Dkt. 466. The Motion is GRANTED.

**BACKGROUND**

In May 2022, the Commodity Futures Trading Commission ("CFTC") filed this action and the United States Attorney's Office commenced a parallel criminal prosecution, *see United*

States v. Alexandre, 22-CR-326 (S.D.N.Y.) (the "Criminal Action"), accusing Defendant Eddy

Alexandre and the company he founded and controlled, Defendant EminiFX, of perpetrating a

Ponzi scheme. *See* Compl., Dkt. 5. This Court entered a Statutory Restraining Order ("SRO")

appointing an Equity Receiver to oversee "all customer funds and property and other assets

traceable to customers in the possession of or under the control of Eddy Alexandre." SRO, Dkt.

9, ¶ 30. The Court granted the Receiver "full control of the Receivership Defendants" and

"exclusive custody, control, and possession of the Receivership Estate." *Id.* ¶ 31(a), (b).

Approximately a month later, the parties agreed to, and the Court entered, a Consent Order,

which provided that the Receivership would "remain in full force and effect until the final trial of

this case, or until further order of this Court." Consent Order ¶ 59.

The Consent Order provides, in relevant part:

> Defendants and all other persons or entities served with a copy of this Order shall
> cooperate fully with and assist the Receiver. This cooperation and assistance
> shall, absent a valid assertion by such person of his or her own right against self-
> incrimination under the Fifth Amendment, include, but not be limited to,
> providing any information to the Receiver that the Receiver deems necessary to
> exercising the authority as provided in this Order [and] providing any password
> required to access any computer or electronic files in any medium . . . provided,
> however, that Alexandre and other persons bound by this Order are not required
> to waive the right against self-incrimination under the Fifth Amendment or
> provide the Receiver with privileged communications or documents, and the
> Receiver shall take reasonable measures to ensure privileged communications or
> documents are not taken from the Defendants or otherwise reviewed.

*Id.* ¶ 42. It further provides:

> Upon service of this Order, and to the extent the Defendants have not done so
> pursuant to the SRO, Defendants (except when a Defendant makes a valid
> assertion of privilege or a valid claim under the self-incrimination clause of the
> Fifth Amendment), and any other person or entity served with a copy of this
> Order, shall, subject to the notice procedure in paragraph 38, immediately or
> within such time as permitted by the Receiver in writing, deliver over to the
> Receiver:

      a.   Possession and custody of all funds, assets, property, and all other assets, owned beneficially or otherwise, wherever situated, by the EminiFX Receivership Defendants;

      . . .

      e.   All keys, computer or cloud computing passwords, entry codes, combinations to locks, cryptocurrency addresses, and private keys necessary to gain or to secure access to any of the assets or records of the Defendants, including but not limited to, access to the Defendants' business premises, means of communication, accounts, computer systems, mobile electronic devices, cryptocurrency wallets, or other property . . . .

*Id.* ¶ 43(a), (e).

Alexandre, who was represented by counsel at the time, promptly turned over various assets to the Receivership, as well as "a list of accounts" believed to be "in the name of one or both of Mr. Alexandre and EminiFX." Castleman Decl. Ex. A, Dkt. 451-1, at 1–2. The Receiver also took control of the Laptop. Castleman Decl., Ex. 451, ¶ 10; *see also* Receiver Resp. to Mot. for Return of Seized Property ("Receiver Resp."), Ex. 284, at 2–6 (explaining how the Receiver obtained possession of the Laptop). During the Receiver's investigation, he determined that Alexandre used a Gmail account to conduct EminiFX-related business. *Id.* at 2.

In March 2024, after his attorneys withdrew and he began proceeding *pro se*, Alexandre moved the Court to order the Receiver to return the Laptop, arguing that it was taken in violation of his Fourth Amendment rights. *See* Mot. for Return of Seized Property, Dkt. 278. The Court denied that motion without prejudice, finding "that the Receiver's possession of the [L]aptop is an appropriate exercise of his authority to take control of assets belonging to EminiFX that may aid in his efforts to return stolen funds to EminiFX customers." [1] Mar. 25, 2024, Order, Dkt. 287, at 7.

---

[1]     Alexandre filed an interlocutory appeal of that order, which the Court of Appeals dismissed for lack of jurisdiction. *See* Mandate, Dkt. 426.

Shortly thereafter, the Receiver asked Alexandre for the credentials necessary to access the Laptop and Gmail account. Castleman Decl. ¶ 12. In the letter making the request, the Receiver represented that he would only seek to obtain emails and information related to EminiFX, would take precautions to limit his review to files likely to contain relevant information, and would not review emails between Alexandre and his former counsel. *Id.* ¶¶ 13–14. To date, Alexandre has not provided the credentials for either the Laptop or the Gmail account. *Id.* ¶ 15.

Additionally, over the course of his review of claims from EminiFX investors seeking to recover money that Defendants stole, the Receiver uncovered three other categories of assets about which he was previously unaware. First, the Receiver traced two suspicious EminiFX transactions to a watch store, where it appears that Alexandre purchased two very expensive wristwatches: an Audemars Piguet Royal Oak 41 mm Chronograph Black Men's watch for $129,609.43, plus tax, and a Patek Philippe Rose Gold Nautilus watch for $351,509.44, plus tax. Castleman Decl. ¶¶ 17–22, Castleman Decl. Exs. B–D, Dkts. 451-2–4. Although the Receiver informed Alexandre that he was investigating the suspicious payments as early as October 2022, *see* Oct. 12, 2022, Receiver Status Report, Dkt. 163, at 17–20, Alexandre never disclosed the existence of the watches to the Receiver. Castleman Decl. ¶ 23. After the payments were traced to the watch store, the Receiver sent Alexandre a letter demanding that he provide the watches to the Receiver. Castleman Decl. Ex. H, Dkt. 451-8, at 2. Alexandre responded (falsely) that he had already disclosed the Patek Phillip watch to the Receiver and that the Receiver "should refrain from asking or requesting anything from [him] that is part of [his] restitution amount with EminiFX as imposed by the court and provided directly by you in the legal proceedings." *Id*. at 1–2. To date, Alexandre has not surrendered the watches to the Receiver. Castleman Decl. ¶ 28.

Second, EminiFX investors have submitted claims to the Receiver seeking to recover over $6 million in cash that they purportedly gave to EminiFX employees in-person. *Id.* ¶ 29. The Receiver has confirmed that the cash was deposited into EminiFX accounts; the actual funds were moved through accounts to make it appear as if the investors had made a deposit. *Id.* ¶ 30. Only $1 million of the cash was, however, deposited into accounts that have been disclosed to the Receiver, meaning there may be as much as $5 million in unreported cash. *Id.* ¶ 31.

Third, the Receiver has learned that certain users with EminiFX dummy accounts deposited money into EminiFX using foreign currencies, such as Vietnamese Dong, Iranian Rial, or BTT.TRC20. *Id.* ¶¶ 32–33; Jan. 31, 2025, Receiver Status Report, Dkt. 444, at 24–25. The EminiFX system purportedly recognized those currencies' full nominal value as if they were U.S. dollars, irrespective of actual conversion rates. Castleman Decl. ¶ 34. The users who made the foreign deposits then withdrew their account balances immediately, effectively giving themselves instant returns of more than 10,000%. *Id.* The Receiver estimates that users stole between $5–$10 million in this manner. *Id.*

In light of these developments and Alexandre's refusal to turn over additional assets and information, the Receiver filed the instant Motion. He seeks an order directing Alexandre and any third parties in possession of EminiFX assets to turn over assets and information in compliance with the Consent Order. Receiver Mem., Dkt. 449, at 1. Alexandre opposes. *See* Opp.

## DISCUSSION

The Court "ha[s] inherent power to enforce [its] orders." *Hunt v. Enzo Biochem, Inc.*, 904 F. Supp. 2d 337, 344 (S.D.N.Y. 2012). Pursuant to the Consent Order, Alexandre must turn over to the Receiver all EminiFX assets as well as any "password[s] required to access any computer

or electronic files in any medium." Consent Order ¶ 42. Because the Receiver has shown that the Laptop and Gmail account are likely to contain EminiFX-related information, and because the watches, missing cash payments, and funds attributable to the alleged currency fraud scheme are all EminiFX assets, the Consent Order requires Alexandre to turn over to the Receiver those assets and any information that may assist the Receiver in locating them. *See id.* (Defendants must "cooperate fully with and assist the Receiver. This cooperation and assistance shall . . . include, but not be limited to, providing any information to the Receiver that the Receiver deems necessary to exercising the authority as provided in this Order . . . ."); *id.* ¶ 43(a) (Defendants must provide to the Receiver "[p]ossession and custody of all funds, assets, property, and all other assets, owned beneficially or otherwise, wherever situated, by the EminiFX Receivership Defendants . . . .").

As has been his pattern in this case, Alexandre's Opposition consists predominately of baseless factual assertions and personal attacks on the Court, the CFTC, and the Receiver. To the extent the Opposition makes actual arguments, none is persuasive.

First, to the extent Alexandre intends to argue that the seizure of his Laptop violated his Fourth Amendment rights and hence that the fruits of any search of the Laptop should be excluded, *see* Opp. at 11–13, the Court rejects that argument. A party challenging a government search or seizure bears the "burden to establish that the search violated his Fourth Amendment rights." *United States v. Lewis*, 62 F.4th 733, 741 (2d Cir. 2023). Alexandre has presented no evidence whatsoever that the search that resulted in the seizure of his Laptop was conducted via illegal means; indeed, the Receiver has previously represented — and Alexandre has provided no

evidence to the contrary — that EminiFX's CFO "voluntarily handed over the Laptop to the Receiver's agents."  Receiver Resp. at 2.[2]

Second, Alexandre's argument that the Receiver's Motion is "premature" because this case has not reached its "final stage of litigation," Opp. at 13, is moot because the Court has now issued an opinion and order on the CFTC's Motion for Summary Judgment, Dkt. 395, finding Alexandre liable as to all counts alleged in the Complaint.  Even if that were not the case, the argument would still be baseless because the Consent Order was effective "immediately" upon entry.  Consent Order ¶¶ 28, 43.  To the extent Alexandre means to argue that the Motion is premature because the Court of Appeals declined to adjudicate Alexandre's interlocutory appeal of the Court's order denying his motion to have the Laptop returned pending final resolution of the case, that argument is irrelevant; the standard for interlocutory appellate review is unrelated to the terms of the Consent Order.

Third, Alexandre's argument that complying with the Consent Order would violate his Fifth Amendment right against self-incrimination, *see* Opp. at 14, is unpersuasive.  As an initial matter, it is unclear whether that right is implicated at all by the Receiver's request that Alexandre produce the passwords for his Laptop and Gmail account.  Courts in this Circuit disagree about whether requiring a defendant to provide the passcode for an electronic device or account known to belong to him is tantamount to compelling testimony and, therefore, subject to Fifth Amendment protection.  *Compare United States v. Smith*, 706 F. Supp. 3d 404, 408 (S.D.N.Y. 2023) (because the only "testimonial significance of unlocking a cellphone or providing the password is the implied statement: 'I am the person who knows the password for

---

[2]    Notably, there was another laptop at Alexandre's house on the day the Laptop was obtained that the CFO did not surrender.  Because she represented to the Receiver's agents that it was not used for EminiFX business, they did not take it.  Receiver Resp. at 3.

this phone,'" compelling a defendant to produce the password does not implicate the Fifth Amendment "if the Government can independently show the phone belonged to the defendant and that the defendant knew the password") *with United States v. Gogic*, 770 F. Supp. 3d 529, 538–39 (E.D.N.Y. 2025) ("[T]he revelation of a passcode from a suspect's mind or memory is testimonial in character" irrespective of whether "the government knows that the defendant is the owner of the phone and knows how to unlock it") *and United States v. Shvartsman*, 722 F. Supp. 3d 276, 314–20 (S.D.N.Y. 2024) (same).

Even assuming that providing the passwords would be a testimonial act, Alexandre's attempt to assert his Fifth Amendment privilege falls short. When a party asserts the privilege, "[t]he danger of self-incrimination must be real, not remote or speculative. When the danger is not readily apparent from the implications of the question asked or the circumstances surrounding the inquiry, the burden of establishing its existence rests on the person claiming the privilege." *Est. of Fisher v. Comm'r*, 905 F.2d 645, 649 (2d Cir. 1990) (citation omitted). Here, the Receiver requested the passwords in connection with his investigation into fraud that Alexandre perpetrated via EminiFX. Given that Alexandre has already pled guilty and been sentenced in the Criminal Action, *see* Criminal Action, Judgment, Dkt. 106, it is not clear how he could further incriminate himself in connection with a commodities fraud investigation into EminiFX.[3] To the extent Alexandre intends to argue that providing the passwords for the Laptop or Gmail account may incriminate him in connection with other crimes, he has not suggested,

---

[3]     The fact that Alexandre has moved to vacate his sentence pursuant to 28 U.S.C. § 2255 does not alter the Court's analysis. "[A]s a general rule, there can be no further incrimination" and thus "no basis for the assertion of the [Fifth Amendment] privilege" after "the sentence has been fixed and the judgment of conviction has become final." *Mitchell v. United States*, 526 U.S. 314, 326 (1999). The pendency of a § 2255 motion "does not affect the judgment's finality or suspend its operation." Fed. R. Civ. P. 60(c)(2).

and the Court cannot speculate, what those crimes might be given the breadth of coverage provided by the plea agreement.

Fourth, Alexandre's argument that he has already disclosed the missing assets to the Receiver, and thus that he has been subjected to "double jeopardy" or "double counting of assets," Opp. at 15, is legally and factually incorrect. Legally, the Double Jeopardy Clause of the Fifth Amendment refers to the principle that "no person may be tried more than once for the same offence." *Currier v. Virginia*, 585 U.S. 493, 498 (2018) (internal quotation marks omitted). It has no bearing on the conduct of an Equity Receiver in a civil action. Factually, Alexandre has failed to rebut the Receiver's evidence that Alexandre did not disclose the missing assets, so his concerns about the "double counting of assets" are unfounded. *See* Castleman Decl. ¶¶ 3, 16–35.

Fifth, Alexandre's argument that the Receiver has failed to disclose the basis for his estimate that $5–10 million of funds were stolen via currency fraud, *see* Opp. at 16–17, is irrelevant. It does not matter, for purposes of this Motion, precisely how much money has been lost, and indeed it would be unrealistic to expect the Receiver to have an exact calculation inasmuch as Alexandre has failed to produce any relevant evidence. Because the Receiver has presented credible evidence that the currency fraud occurred as part of the overarching Ponzi scheme, Alexandre is obligated, by the terms of the Consent Order, to produce any relevant information and evidence about it. *See* Consent Order ¶ 42 ("Defendants and all other persons or entities served with a copy of this Order shall cooperate fully with and assist the Receiver.").

Sixth, Alexandre seeks sanctions against the Receiver. This is a frivolous proposition because the Receiver's request is supported by substantial evidence.

**CONCLUSION**

For the foregoing reasons, the Receiver's Motion to Compel is GRANTED.  Alexandre is ordered to comply with the Consent Order, Dkt. 56, and immediately provide to the Receiver (1) the passwords and any other necessary credentials to enable the Receiver to access the Laptop and Alexander's Gmail account; (2) the Audemars Piguet Royal Oak 41 mm Chronograph Black Men's watch and a the Philippe Rose Gold Nautilus watch; (3) any relevant information pertaining to the missing cash balances, and the alleged currency fraud; and (4) any other assets or information subject to turnover pursuant to the Consent Order.

Mr. Alexandre is warned that failure to comply with this Order could result in him being held in civil contempt.  Punishment for civil contempt can include incarceration.  If that were to happen, any period of imprisonment served under civil contempt would not count towards his criminal sentence.  *See Ochoa v. United States*, 819 F.2d 366, 370 (2d Cir. 1987).

The Receiver is reminded that, assuming Alexandre complies with this Order and provides the necessary credentials to access the Laptop and Gmail account, he must "take reasonable measures to ensure privileged communications or documents are not taken from the Defendants or otherwise reviewed."  Consent Order ¶ 42.  The measures the Receiver has proposed — declining to review materials, emails to, from, or copying counsel as well as other materials that he and his team can "discern without opening" are "obviously protected" — does not appear sufficient to the Court.  Castleman Decl. ¶¶ 13–14.  The Receiver is ordered to propose to the Court a more rigorous process for protecting privileged materials prior to reviewing the contents of the Laptop or Gmail account.

The Clerk of the Court is respectfully directed to CLOSE the open motion at Dkt. 448, to mail a copy of this Opinion and Order to Mr. Alexandre, and to note mailing on the docket.


**SO ORDERED.**

**Date:  August 19, 2025**
**New York, NY**

_____

**VALERIE CAPRONI**
**United States District Judge**