Otterbourg P.C.

230 Park Avenue
New York, NY 10169
otterbourg.com
212 661 9100

**David A. Castleman**
Member of the Firm
DCastleman@otterbourg.com

**MEMO ENDORSED**

July 31, 2025

**VIA ECF**

Hon. Valerie E. Caproni
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:_____
> DATE FILED: 8/26/2025

Re:     *CFTC* v. *Alexandre and EminiFX, Inc.*, No. 22 Civ. 3822 (VEC)
          Application for Payment of Fees and Expenses – Second Quarter 2025

Dear Judge Caproni:

Pursuant to this Court's Order dated June 10, 2022 concerning applications for professional fees and expenses [Dkt. 47], as amended on February 2, 2023 [Dkt. 187] and on June 30, 2023 [Dkt. 209] (the "**Employment Order**"), David Castleman, the court-appointed receiver (the "**Receiver**") over Defendant EminiFX, Inc. ("**EminiFX**") and certain assets of Defendant Eddy Alexandre ("**Alexandre**"), in the above-referenced action (the "**Civil Action**") pursuant to the Consent Order for Preliminary Injunction [Dkt. 56] ("**Consent Order**"), respectfully submits this application (the "**Application**") for the payment of professional fees and expenses for the period of April 1, 2025 through June 30, 2025 (the "**Application Period**"). The Receiver requests approval of payment of fees and expenses to the Receiver and the following firms: Otterbourg P.C. ("**Otterbourg**"), J.S. Held LLC ("**JS Held**"), Deloitte Tax LLP ("**Deloitte Tax**"), Crowe LLP ("**Crowe**"), and Stretto, Inc., ("**Stretto**") (collectively, the "**Professional Firms**").

During the Application Period, the Receiver and the Professional Firms continued to resolve the remaining users' disputed transactions. This review was completed shortly after the end of the Application period. The Receiver filed first and final submissions contain schedules for users whose claims could not be resolved. During the Application Period, as users updated and provided payment information, the Receiver continued to make distributions as part of the initial distribution, bringing the number of completed distributions to 22,476 users and the total completed distributions to $88 million of the $100 million budget. The Receiver also continued to litigate and pursue third party claims and added additional parties to an existing action.

The Receiver and each of the Professional Firms have agreed to a public-service discount of their fees given the circumstances of the receivership. For the Application Period, (i) the Receiver requests fees of $80,385.00; (ii) Otterbourg requests fees of $620,110.70 and expenses of $107.84; (iii) JS Held requests fees of $153,622.50 and expenses of $12,878.80; (iv) Deloitte Tax requests fees of $8,600.00 and expenses of $430.00; (v) Crowe requests fees of $1,980.50; and (vi) Stretto requests fees of $260,164.25 and expenses of $24,073.02. The combined Receiver and Otterbourg discount totals $212,901.30, as reflected in the respective invoices.



Page 2

The total requested or incurred fees of $1,124,862.95 and expenses of $37,489.66 for the Application Period are reasonable given the significant complexity and substantial work completed, as set forth in detail in Part III. The total request is somewhat less than the First Quarter 2025, which was itself somewhat less than the Fourth Quarter 2024. The Receiver expects fees and expenses to substantially decline as the claims process is completed and more initial distributions are made. The Standardized Fund Accounting Report annexed to the Receiver's affidavit shows the cash flows in and out of the Receivership.

The Receiver and his professionals have maintained and presented their time and expense charges as set forth in the Billing Instructions for Receivers in Civil Actions Commenced by the Commodity Futures Trading Commission ("**CFTC**") (the "**CFTC Billing Instructions**"), as required by the Employment Order. These detailed time entries have been approved by the CFTC, which consents to this request, and those time entries will be submitted to the Court separately under seal pursuant to the Employment Order. Attached as Exhibits 1-6 are affidavits setting forth narrative explanations of the services provided.

This Application will be posted on the homepage of the Receiver's website at www.eminifxreceivership.com. Any EminiFX members who have any questions regarding this Application may send an email to the Receiver's team at EminiFX@Stretto.com, as directed by this Court in its order dated August 12, 2022 [Dkt. 106]. Unless a party has made a motion to intervene, and that motion has been granted by the Court, parties should **not** send any inquiries directly to the Court [Dkts. 174, 176].

## I.    Authority for Requested Relief

A receiver appointed by a court "who reasonably and diligently discharges his duties is entitled to be fairly compensated for services rendered and expenses incurred. The amount of the compensation is to be determined by the court in the exercise of its reasonable discretion." *SEC* v. *Byers*, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008). "This presumption of reasonable compensation extends to a receiver's counsel and professionals." *SEC* v. *Morgan*, 504 F. Supp. 3d 221, 223 (W.D.N.Y. 2020) (quoting *SEC* v. *Platinum Mgmt. (NY) LLC*, No. 16-CV-6848, 2018 WL 4623012, at *4 (E.D.N.Y. Sept. 26, 2018)). "The Court considers several factors in determining a reasonable fee, including '(1) the complexity of problems faced, (2) the benefits to the receivership estate, (3) the quality of the work performed, and (4) the time records presented.'" *Id.* (quotations omitted). The Court may also consider "the reasonableness of the hourly rate charged and the reasonableness of the number of hours billed." *SEC* v. *Amerindo Inv. Advisors Inc*., No. 05 Civ. 5231, 2015 WL 13678841, at *1 (S.D.N.Y. Sept. 14, 2015) (citations omitted). "In addition, in a securities receivership, opposition or acquiescence by the [regulatory agency] to the fee application will be given great weight." *Byers*, 590 F. Supp. 2d at 644 (cleaned up).



Page 3

## II.    Procedural History

The Receiver's Second Quarter 2025 Report, filed on July 31, 2025, sets forth in detail the procedural history during the Application Period [Dkt. 511, at 7-8].

On February 19, 2025, the Receiver filed a motion to compel Alexandre to turnover assets and information (the "Motion to Compel") [Dkt. 448-451].  Mr. Alexandre filed a response on April 1, 2025 [Dkt. 466], and the Receiver replied on April 15, 2025 [Dkt. 470]. The motion is currently pending.

On April 7, 2025, Mr. Alexandre filed a motion for leave to file counterclaim and cross-claim against the Receiver [Dkt. 468]. On April 8, the Court entered an order denying his motion [Dkt. 469]. On April 29, Mr. Alexandre filed a motion for reconsideration [Dkt. 475].  On May 1, the court denied the motion for reconsideration stating it is an extraordinary remedy and Mr. Alexandre's motion lacks legal authority [Dkt. 485].

On April 23, 2025, the leader of a group of EminiFX users who had sought to intervene in this case filed a letter requesting a stay of proceedings pending the appeal [Dkt. 472].  On April 28, the Court entered an order denying the motion stating the Receiver has vigorously protected investors and they will not be prejudiced if the case proceeds pending the appeal [Dkt. 473].

On April 29, 2025, Mr. Alexandre filed a motion to intervene and remove Receiver's action against the EminiFX Chief Financial Officer, currently pending in New York state court, to the Southern District of New York [Dkt. 474].  On May 1, the court entered an order denying the motion [Dkt. 481].

On April 30, 2025, the Receiver filed a First Quarter 2025 status report [Dkt. 476] and a motion to file a report supplement under seal due to the highly confidential nature of certain matters related to the Receivership [Dkt. 479-480].  In addition, on April 30, the Receiver filed a fee application for the first quarter [Dkt. 478].  On May 20, Mr. Alexandre filed (i) a motion to oppose the request to seal the Receiver's Report [Dkt. 488]; and (ii) motion to refute financial report and application for payment from court-appointed receiver for first quarter 2025 or Twelfth Status Report [Dkt. 489].  On May 21, the Court approved the Receiver's fee application for fees and expenses for the first quarter [Dkt. 490].  On May 22, the Court denied Mr. Alexandre's motions [Dkts. 492 and 493].

On May 12, 2025, Mr. Alexandre filed an emergency motion to stay civil proceedings and enjoin Receiver's action [Dkt. 483].  On May 16, the court denied the motion due to the lack of legal authority [Dkt. 485]. The Court also noted that Mr. Alexandre has pursued frivolous interlocutory appeals of some of his frivolous motions and that is no reason to delay or impede the Receiver's distributions.



Page 4

On May 14, 2025, Mr. Alexandre filed an emergency motion for leave to proceed on an interlocutory appeal regarding the order denying his motion to intervene and the order denying his motion for reconsideration of counterclaim and crossclaim against the Receiver [Dkt. 484]. The Court denied the motion [Dkt. 491]. Mr. Alexandre filed an appeal and that appeal is pending in the Second Circuit [Case No. 25-1278].

On May 23 and July 17, 2025, the Receiver filed his notices of submission of user objections [Dkt. 496 and 503] requesting the Court enter an order overruling the user objections and verifying the disputed transactions at the Receiver's determined amount. On July 23, the Receiver filed a letter application formally seeking that the Court overrule the remaining user objections [Dkt. 506]. That application remains pending.

On June 6, 2025, Mr. Alexandre filed a motion to warn of delay in adjudication of Plaintiff's motion for summary judgment [Dkt. 499] requesting a decision on his motion for within thirty days. On June 13, the Court entered an order denying that motion stating the plan of distribution has already been approved and no party has experienced any prejudice while the summary judgment motion is pending [Dkt. 502].

## III.    Summary of Services During the Application Period

**Transaction Verification and User Claims**. The Receiver and his teams at Otterbourg, JS Held, and Stretto continued to implement the transaction verification and claims process, completing their quality control review during the fourth quarter 2024. On October 30, 2024, the Schedule of User Transactions was filed which showed the results of the Receiver's review, in which most of the nearly 120,000 transactions were resolved but for which just over 7,000 transactions (about 6% of the total) remained disputed, affecting 3,627 users (around 10% of the total—some users had both disputed and undisputed transactions).

During the Application Period the Receiver and his teams continued to communicate with those remaining users in order to resolve their claims as well as review those users with holds on their accounts. Users were given multiple opportunities to submit additional documentation or proof of their transactions. These efforts resulted in the successful resolution of many user objections. The Receiver and his teams completed their review of the remaining user objections shortly after the second quarter. At the end of the review, less than .5% of the total transactions were under dispute (the "Disputed Transactions"). On May 23 and July 17, 2025, the Receiver filed his first and final submissions of user objections ("User Objection Submissions") [Dkts. 496-497 and 503-504] containing schedules for the Disputed Transactions and the basis for the dispute. On July 23, the Receiver also submitted a letter application to formally seek approval of the Receiver's determinations contained in the User Objection Submissions, given that all objections had been submitted to the Court. Once the Court rules on the User Objection Submissions, the Receiver will implement the Court's decision, and, at that time, all user claims



Page 5

will be fixed marking the end of the transaction review and resolution process. At that point, the Receiver will file a final claims analysis report.

**Net Winners**. During the prior application period, the Receiver and his team began to implement the settlement process for net winners, including creating a model settlement agreement and functionality on the User Portal to allow net winners to accept the settlement and make the appropriate payment. During the Application Period, demand letters were sent out and some settlements were consummated. If a net winner account cannot be resolved, the Receiver may, if in the best interest of the estate, decide to commence litigation.

**Distributions.** On January 21, 2025, the Court approved the Receiver's Proposed Plan (the "Plan") [Dkt. 431]. The Receiver filed a Notice of Initial Distribution [Dkt. No. 434], announcing initial distribution and rising tide percentages at 45% for Class 3 and 55% for Class 3A. The total budget for the initial distribution is approximately $100 million which is a majority of the over $150 million held in the Receivership before distributions began.

During the Application Period, as part of the ongoing initial distribution under the Plan, the Receiver and his team distributed approximately $11.1 million to over 4,500 eligible users. Those distributions follow the $76.8 million already distributed to nearly 18,000 users during the first quarter, bringing the total distributed to $88 of the $100 million allocated for the initial distribution. The primary reason users have not received distributions is that they have not provided the Receiver with valid payment information. As users update and provide their information, additional distributions will be made to those users throughout the rest of the year.

**Tax Liability**. Deloitte Tax also prepared the New York State filing with the relatively de minimis tax liability of $9,750.00, which was finalized and filed during the Application Period. The Receiver also worked with his tax advisors to monitor the status of the federal pre-receivership tax return for EminiFX and the qualified settlement fund tax return for post-Receivership activity. Both returns were filed with a request for prompt assessment.

**Third Party Claims**. The Receiver's legal team at Otterbourg, in consultation with and supervised by the Receiver, continued its investigation into potential claims that the receivership may have against third parties. Such claims could result in a direct financial recovery of the estate, or in the reduction or elimination of certain claims against the estate. The Receiver continued an investigation into an issue concerning millions of dollars of EminiFX funds. At this point, other than any litigation commenced against net winners, the Receiver does not anticipate any other litigation to be commenced.

In addition, in light of information discerned during the non-user claims process, the Receiver discovered that over $500,000 in EminiFX funds was used by Alexandre to purchase two luxury watches, and the Receiver initiated turnover request to Alexandre. Alexandre responded



Page 6

refusing to comply with the turnover request. As stated above, the Receiver filed the Motion to Compel which requests Alexandre to turnover the watches, any EminiFX assets and any information and passwords needed to access his EminiFX laptop as well as his Gmail password. The Motion to Compel is pending.

During the first quarter, Interactive Brokers LLC ("IBKR") removed the state court action filed against it by the Receiver to this Court.  On April 10, the Court remanded the case to state court. On May 19, 2025, IBKR filed a motion to dismiss [IBKR Dkt. 18].  As of June 20, 2025, the motion to dismiss has been fully briefed and a decision remains pending.

During the Application Period, the Receiver continued prosecution of the action commenced against Clarelle Dieuveuil, the former Chief Financial Officer of EminiFX, *David A. Castleman as Receiver for EminiFX, Inc. v. Clarelle Dieuveuil*, Index No. 651642/2025 in the Supreme Court for the County of New York. After significant research and investigation, on May 14, 2025, the Receiver filed an amended complaint in the same action to include John Edvard Maisonneuve and Sophia Maisonneuve, who collected millions of dollars from EminiFX users.

**Administration of the Estate and Case**.  The Receiver, assisted by his counsel at Otterbourg, supervised the administration of the estate, including monitoring bank accounts, redirecting and opening mail, and other tasks incidental to the management of the estate.  The Receiver, with the assistance of Otterbourg, filed a status report advising the Court of the activities from the prior quarter [Dkts. 476, 480].  The Receiver also continues to communicate with Alexandre regarding the Receivership as necessary via the CorrLinks system and the U.S. Mail. In general, the Receiver will conserve estate resources by filing responses to motions by Alexandre only when necessary or when ordered by the Court.

## IV.    Summary of Fees and Expenses Requested

The Receiver includes herewith affidavits from himself and the lead from each of the Professional Firms.  Pursuant to the Employment Order, detailed time entries are filed separately under seal.  The aggregate fees being requested have been discounted for the public service each firm has been performing.  The Receiver and the Professional Firms have reasonably and diligently exercised their duties during the Application Period, and the Receiver respectfully submits that they are entitled to be fairly compensated for services rendered.

**The Receiver**.  As set forth above, the Receiver spent substantial time administering all aspects of the receivership.  The Receiver respectfully requests the Court approve payment of $80,385.00 in fees to the Receiver, which reflects a discount of over 50% from his normal rate. The Castleman Affidavit attached as Exhibit 1 includes additional detail on his billing, as well as his supervision of the various Professional Firms.



Page 7

**Otterbourg.**  As set forth above, Otterbourg spent substantial time assisting the Receiver in administering and providing legal advice concerning all aspects of the receivership, including assisting with the initial distribution, completing the labor-intensive process to resolve remaining user claims and investigating and litigating potential third-party claims.  The Receiver respectfully requests the Court approve payment of $620,110.70 in fees (reflecting the 15% public service discount and additional discounts as requested by the Receiver) to Otterbourg, and expenses in the amount of $107.84 for filing fees, all other expenses were waived.  The Feeney Affidavit attached as Exhibit 2 describes in more detail the work performed.

**JS Held**.  JS Held continued to provide substantial forensic services to the estate, including the development and maintenance of the review platform and analysis of remaining user transactions in connection claims process and assisting in the claims and distribution process.  The Receiver respectfully requests the Court approve payment of $153,622.50 in fees and $12,878.80 in expenses to JS Held.  The O'Malley Affidavit attached as Exhibit 3 describes in more detail the work performed.

**Deloitte Tax**. Deloitte Tax has provided the estate with tax analysis and strategic advice, in connection with determining EminiFX's pre-receivership tax liability.  Deloitte Tax assisted in preparing and filing the federal corporate tax return and took initial steps towards preparing to file a New York state corporate tax return.  The Receiver respectfully requests the Court approve payment of $8,600.00 in fees and $430.00 in expenses to Deloitte Tax.  The Young Affidavit attached as Exhibit 4 describes the work performed.

**Crowe**.  Crowe has provided the estate with critical tax support and analysis, including assisting in preparing the corporate tax return.  The Receiver respectfully requests the Court approve payment of $1,980.50 in fees to Crowe.  The Davis Affidavit attached as Exhibit 5 describes the work performed.

**Stretto**.  Stretto played a key role in implementing the initial distribution by collecting payment information through the Portal and preparing checks and wires for distribution. Stretto has managed all user communications and continued to play a key role in the implementation of the Portal and the transaction verification and claims process and the claims resolution and plan process. The Receiver respectfully requests the Court approve payment of $260,164.25 in fees and $24,073.02 in expenses to Stretto.  The McElhinney Affidavit attached as Exhibit 6 describes in more detail the work performed.



Page 8

## V.    Conclusion

The Receiver respectfully requests that the Court approve the fee and expense requests as set forth in this Application.

Respectfully submitted,

David A. Castleman
OTTERBOURG, P.C.
230 Park Avenue
New York, NY 10169
(212) 661-9100
dcastleman@otterbourg.com
*Receiver*

Attachments

cc:    Counsel of Record (*via ECF*)
       Eddy Alexandre (via U.S. Mail)

Application GRANTED.

SO ORDERED.

8/26/2025

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE