UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------------X
                                                    :
COMMODITY FUTURES TRADING                           :
COMMISSION,                                         :
                                                    :
                              Plaintiff,            :        22-CV-3822 (VEC)
                                                    :
              -against-                             :        OMNIBUS ORDER
                                                    :
                                                    :
EDDY ALEXANDRE, EMINIFX, INC.,                      :
                                                    :
                              Defendants.           :
-------------------------------------------------------------------X
```

VALERIE CAPRONI, United States District Judge:

The Court issues this omnibus order to address the outstanding motions in this case.

## I.    CFTC's Motion for a Permanent Injunction and Civil Monetary Penalties

The CFTC moves pursuant to 7 U.S.C. §§ 13a-1(a), (d)(1)(A) and 17 C.F.R. §§ 143.8(a),

(b)(1) for (1) a permanent injunction barring Defendants from violating the provisions of the

Commodity Exchange Act ("CEA") and Commission Regulations for which they have been

found liable and from registering with the CFTC and trading commodities interests, and (2) a

civil monetary penalty.  *See* Dkt. 529.  The Court considers each request in turn.

### A.    Permanent Injunction

The CFTC is permitted to seek permanent injunctive relief "[w]henever it shall appear to

the Commission that any . . . person has engaged, is engaging, or is about to engage in any act or

practice constituting a violation of any provision of [the CEA] or any rule, regulation or order,

thereunder." 7 U.S.C. § 13a-1(a).  "The CFTC is entitled to a preliminary injunction upon a

*prima facie* showing that defendants have violated the [CEA] and 'that there is a reasonable

likelihood that the wrong will be repeated.'" *CFTC v. Commodity Inv. Grp., Inc*., No. 05-CV-

5741 (HB), 2006 WL 353466, at *1 (S.D.N.Y. Feb. 11, 2006) (quoting *CFTC v. British Am. Commodity Options Corp.*, 560 F.2d 135, 141 (2d Cir. 1977)).  "[T]he likelihood of future violations of law can be inferred from defendants' past illegal conduct."  *CFTC v. Reynolds*, No. 19-CV-05631-MKV, 2021 WL 796683, at *6 (S.D.N.Y. Mar. 2, 2021) (quoting *CFTC v. Morgan, Harris & Scott, Ltd.*, 484 F. Supp. 669, 677 (S.D.N.Y. 1979)).

The Court has already found that Defendants violated the CEA and its associated regulations by operating a massive, months-long Ponzi scheme involving thousands of investors and over $200 million in misappropriated funds.  *See* August 19, 2025, Opinion & Order on Motion for Summary Judgment, Dkt. 515 ("SJ Op.").  Such far-reaching prior illegal conduct easily establishes a *prima facie* showing that Defendants have violated the CEA and are reasonably likely to do so in the future.  *See CFTC v. Am. Bd. of Trade, Inc.*, 803 F.2d 1242, 1251 (2d Cir. 1986) ("A district court may properly infer a likelihood of future violations from the defendant's past unlawful conduct."); *SEC v. Mgmt. Dynamics, Inc.,* 515 F.2d 801, 807 (2d Cir. 1975) ("[P]ast illegal conduct is highly suggestive of the likelihood of future violations").  The CFTC's request to ban Defendants from registering with the CFTC in any capacity and from trading in commodity interests is also justified given Defendants' "recurrent, systematic process of egregious intentional violations of the [CEA]."  *CFTC v. McDonnell*, 332 F. Supp. 3d 641, 726 (E.D.N.Y. 2018); *see* SJ Op. at 9–10 ("Alexandre himself has explained why his lies were both intentional and material; in a sentencing letter he filed in the Criminal Action, he admitted that he knew 'the weekly figures [he] provided were not based on investment returns' and that the reported ROI 'would have been important to the decision-making process for EminiFX investors.'" (citation omitted)).  Accordingly, an injunction barring Defendants from further

violating the CEA and CFTC regulations, from engaging in commodities trades, and from registering with the CFTC is appropriate.

Alexandre's opposition does not meaningfully dispute any of the points raised by the CFTC but, instead, rehashes arguments that the Court already considered and rejected in the motion for summary judgment. Indeed, the Opposition consists primarily of a request that the Court reconsider its opinion granting the CFTC's motion for summary judgment. Alexandre Opp. to Mot. for Preliminary Injunction & Civil Penalty, Dkt. 547 ("Opp.") at 1–8. "A motion for reconsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources, and may be granted only where a court has overlooked controlling decisions or factual matters that were put before it on the underlying motion and which, if examined, might reasonably have led to a different result." *Drapkin v. Mafco Consol. Grp., Inc.*, 818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011) (citations and internal quotation marks omitted). Alexandre's opposition consists merely of conclusory assertions that there are facts that remain "[g]enuinely [d]isputed," but it does not address any of the Court's actual findings about the factual record in this case — let alone present controlling decisions or factual matters that the Court overlooked. Opp. at 4.

### B.    Civil Monetary Penalty

When a defendant is found liable for violating the CEA and its associated regulations, the Court may impose a civil monetary penalty equal to the greater of three times the monetary gain to Defendants or $100,000 for each violation. 7 U.S.C. §13a-1(d)(1)(A); 17 C.F.R. §§ 143.8(a), (b)(1). "In deciding the amount of a civil monetary penalty, the court should focus on the gravity of the misconduct, considering such factors as (1) the relationship of the violation at issue to the regulatory purposes of the [CEA]; (2) defendants' state of mind; (3) the consequences flowing

3

from the violative conduct; and (4) defendants' post-violation conduct." *CFTC v. Yorkshire Grp., Inc.*, No. 13-CV-5323 (AMD) (ST), 2016 WL 8256380, at *6 (E.D.N.Y. Aug. 19, 2016), *report and recommendation adopted*, No. 13-CV-5323 (AMD) (ST), 2016 WL 5942310 (E.D.N.Y. Oct. 12, 2016) (cleaned up).  "Courts in this circuit have imposed the treble amount in cases involving egregious and intentional fraudulent conduct." *CFTC v. Wright*, No. 17 CV 4722-LTS-DCF, 2018 WL 6437055, at *5 (S.D.N.Y. Dec. 7, 2018) (citing *CFTC v. 4X Sols., Inc.*, No. 13-CV-2287 (RMB) (FM), 2015 WL 9943241, at *4 (S.D.N.Y. Dec. 28, 2015), *report and recommendation adopted,* No. 13-CV-2287 (RMB) (FM), 2016 WL 397672 (S.D.N.Y. Jan. 29, 2016)).

Here, Defendants were unjustly enriched in the amount of $15,049,500, *see* SJ Op. at 15, and the CFTC seeks a penalty of three times that amount, *see* CFTC Mem. in Support of Mot. for Preliminary Injunction & Civil Penalty, Dkt. 529-2 at 8.  The Court finds its request appropriate in light of the relevant factors.  *First*, because Alexandre ran a fraudulent scheme, his violations go to the heart of the CEA's purpose of ensuring "fair practice and honest dealing on the commodity exchanges." *NRT Metals, Inc. v. Manhattan Metals (Non-Ferrous) Ltd*., 576 F. Supp. 1046, 1050 (S.D.N.Y. 1983).  *Second*, as discussed, Alexandre has admitted that he knowingly lied to investors, meaning that he possessed a culpable state of mind.  *See* SJ Op. at 9–10.  *Third*, the consequences flowing from Alexandre's conduct were devastating: "investors contributed hundreds of millions of dollars, all of which was misappropriated." *Id.* at 10. *Fourth*, Alexandre's post-violation conduct makes clear that, notwithstanding his guilty plea in the criminal action, he has no remorse for his conduct; indeed, in his Opposition to the CFTC's motion, he asserts falsely that "EminiFX is a legitimate business."  Opp. at 6.  *Finally*, treble

damages are warranted in light of the Court's finding that Alexandre committed fraud in an egregious and intentional manner. *See* SJ Op. at 9–10.

Alexandre's opposition does not raise any valid arguments against entering a civil penalty. First, Alexandre asserts that he is entitled to a jury trial before such a penalty may be imposed. That is incorrect; the CEA expressly authorizes the Court to impose civil penalties when a defendant has been found liable for violating the statute and its regulations. 7 U.S.C. § 13a-1(d)(1)(A). Second, he argues, in a conclusory fashion, that the penalty proposed by the CFTC is "excessive and disproportionate." Opp. at 5. For the reasons already explained, the penalty proposed by the CFTC is appropriate in light of the Court's findings that Defendants were unjustly enriched and that Alexandre conducted a massive fraud. Finally, Alexandre requests that the Court stay enforcement of any penalty pending appeal. This request is procedurally improper; the Court has not yet issued a penalty, so it cannot stay enforcement of such penalty. Regardless, because Alexandre has not presented any legal or factual argument calling into question the validity of a civil penalty, the Court can discern no reason to delay entering one.

## II.     Receiver's Motion to Approve a Protocol for Protecting Privileged Materials

In August 2025, the Court ordered Alexandre to provide the Receiver with access to a laptop, a Gmail account, and other materials and information that he had theretofore failed to produce. *See* Aug. 19, 2025, Opinion & Order on Motion to Compel, Dkt. 516. In that order, the Court directed the Receiver to propose to the Court a process for protecting privileged materials appearing on the laptop and Gmail account prior to the Receiver reviewing their contents. *Id.* at 10.

The Receiver's proposed protocol for protecting privileged materials is outlined in detail in its supporting memorandum of law. *See* Receiver Mem. in Support of Motion to Approve

Proposed Process for Protection of Privileged Materials, Dkt. 538 at 4–6.  The proposed protocol consists of seven stages: (1) the Receiver's e-discovery team will image and store all documents; (2) a small group of attorneys from a law firm not otherwise involved in this action or any related actions (the "Clean Team") will be granted access to the documents; (3) the Clean Team will review the documents for relevance; (4) the Clean Team will review the relevant documents for privilege, apply redactions where appropriate, and prepare a privilege log; (5) the Clean Team will provide the privilege log, documents that are not privileged, and redacted copies of partially privileged documents to the Receiver,[1] who will review the documents and will raise any disputes regarding privilege with the Clean Team; (6) the Clean Team will provide Alexandre with any of the documents that it agrees with the Receiver are not privileged, and Alexandre will be given a reasonable amount of time to review those materials and to assert any claims of privilege over them; and (7) the Clean Team will submit to the Court any materials over which Alexandre has asserted a claim of privilege for *in camera* review.  *Id.*

The Court finds that the protocol proposed by the Receiver somewhat protects Alexandre's privilege, but additional safeguards are needed.  The Clean Team does not represent Alexandre, so it cannot be presumed to act in furtherance of his interests.  Alexandre himself must be given the opportunity to review the documents that will be provided to the Receiver and to assert any claims of privilege prior to the Receiver gaining access to those documents.  *See* Consent Order, Dkt. 56 ¶ 42 ("Alexandre and other persons bound by this Order are not required to . . . provide the Receiver with privileged communications or documents, and the Receiver shall take reasonable measures to ensure privileged communications or documents are not taken from the Defendants or otherwise reviewed.").

---

[1] For purposes of the protocol, "the Receiver" includes lawyers and support staff from his law firm assigned to this matter.

The appropriate protocol, therefore, is as follows: (1) the Receiver's e-discovery team will image and store all documents without disclosing them to the Receiver; (2) the Clean Team, but not the Receiver, will be granted access to the documents; (3) the Clean Team will review the documents for relevance; (4) the Clean Team will review the relevant documents for privilege, apply redactions where appropriate, and prepare a privilege log; (5) the Clean Team will provide Alexandre the full set of documents that it proposed to produce to the Receiver (including redacted and unredacted versions of documents that it intends to produce to the Receiver in redacted form); (6) Alexandre will be given a reasonable amount of time[2] to review the documents and to raise any further assertions of privilege with the Clean Team; (7) any relevant documents as to which there is no claim of privilege will be produced to the Receiver; (8) to the extent the Clean Team and Alexandre are unable to reach agreement on whether particular relevant documents are privileged, the Clean Team will submit to the Court the disputed documents for *in camera* review; (9) after the Court resolves any outstanding privilege disputes between Alexandre and the Clean Team, the Clean Team will produce to the Receiver the balance of the relevant, non-privileged documents, as well as a privilege log.  The Clean Team must not share with the Receiver any documents until Alexandre has been given a reasonable opportunity to review them and to assert any claims of privilege.

Alexandre's opposition to the Receiver's proposal does not identify any prejudice that he would suffer if the Court were to adopt the above-described protocol.  *First*, Alexandre states that the proposal "presupposes the legality" of seizing his laptop.  Alexandre Opp. to Receiver's Proposed Protocol, Dkt. 552 at 1.  That assertion is literally true, inasmuch as the Court has

---

[2]    In negotiating with Alexandre what constitutes a reasonable amount of time, the Clean Team must take into consideration Alexandre's *pro se* status as well as the fact that he is incarcerated.

already granted the Receiver's motion to compel Alexandre to turn over his laptop, *see* Aug. 19, 2025, Opinion & Order on Motion to Compel, but it does not give the Court any reason to believe that the decision to grant that motion was legally improper. *Second*, Alexandre asserts that the "joint" privilege review mechanism proposed by the Receiver "exposes attorney-client and work product information to adverse parties without independent oversight." Alexandre Opp. to Receiver's Proposed Protocol at 1. Setting aside the fact that it is the CFTC, not the Receiver, that is the party adverse to Alexandre, this argument is meritless in light of the protocol the Court has adopted, which specifically permits Alexandre to raise any outstanding assertions of privilege with the Court before the Receiver receives any documents. *Third*, Alexandre asserts that the proposed protocol "compounds" various due process and constitutional violations "stemming from the Court's invitation to the CFTC to move for summary judgment" without allowing time for discovery. *Id*. The Court cannot make sense of how that conclusory assertion relates either to the Receiver's proposed protocol or to the protocol put forth by the Court; regardless, as the Court explained in its opinion on the motion for summary judgment:

> There was extensive discovery in the Criminal Action, and Alexandre apparently served discovery requests on the CFTC at various points over the course of this action without ever seeking the Court's intervention. The Court stayed discovery in September 2022 and, after denying the motion to dismiss, ordered the parties to file a letter stating whether CFTC intends to move for summary judgment or whether the Court should set a discovery schedule. . . . The parties then proposed a briefing schedule for summary judgment without reference to discovery. It is unclear what more the Court could have done to permit fulsome discovery if desired by either party.

SJ Op. at 16 (cleaned up).

Accordingly, the Receiver's motion to approve his proposed protocol for protecting privileged materials is GRANTED IN PART. The Receiver and the Clean Team must adhere to the protocol described in this Order.

8

### III.    Receiver's Motion to Approve a Settlement Agreement

The Receiver moves to approve a settlement agreement between him and John and Sophia Maisonneuve to resolve an action that the Receiver filed against the Maisonneuves in New York state court.  *See* Dkt. 544.  That action alleged that the Maisonneuves, who are former employees of EminiFX, aided and abetted in Alexandre's fraud and breaches of fiduciary duty. *Id.* at 1.  The Maisonneuves have represented that they are not in possession of any funds or other property stolen by EminiFX, and have agreed to discharge any claims to distributions from the Receiver to which they otherwise may have been entitled.  *Id.* at 2.  The settlement proposed by the Receiver is without prejudice to the Receiver taking further action to recover stolen property from the Maisonneuves if their representations that they do not have such property are discovered to be false.  *Id.*

The Court agrees with the Receiver that the proposed settlement is fair and reasonable in light of the Maisonneuves' representations and the Receiver's analysis of the case.  The Court does not credit Alexandre's opposition to the settlement agreement, *see* Dkt. 556, because he has not explained how the agreement would prejudice him.  Alexandre is in no position to raise concerns about the "further erosion of the EminiFX estate"; the "EminiFX estate" consists solely of stolen funds to which Alexandre has no entitlement.  *Id.* at 2.  Alexandre's argument is also logically incoherent; the Receiver's action against the Maisonneuves was designed to *augment* the estate by locating additional stolen assets to be distributed to Alexandre's victims.

Accordingly, the Receiver's motion to approve the proposed settlement with the Maisonneuves is GRANTED.

### IV.    Alexandre's Motions

Alexandre has filed numerous additional motions in this case; the Court addresses them in turn.

### A.    Motions for Reconsideration

First, Mr. Alexandre has filed three motions for reconsideration: (1) a renewed motion for reconsideration of the Court's opinion granting the CFTC's motion for summary judgment, *see* Dkt. 556, and (2) a motion for reconsideration of the Court's opinion granting the Receiver's motion to compel production of Alexandre's laptop, Gmail account, and certain other belongings, *see* Dkt. 550, and (3) a motion for reconsideration of the Court's order granting the Receiver's Q2 2025 fee application, *see* Dkt. 557.

As discussed, "[a] motion for reconsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources, and may be granted only where a court has overlooked controlling decisions or factual matters that were put before it on the underlying motion and which, if examined, might reasonably have led to a different result." *Drapkin*, 818 F. Supp. 2d at 695 (cleaned up).  None of Alexandre's motions for reconsideration identifies any controlling law or relevant facts that the Court purportedly overlooked; instead, they simply repackage the baseless denials and *ad hominem* attacks against the CFTC, the Receiver, and the Undersigned that Alexandre has put forth in other submissions to the Court.  The motions, therefore, are DENIED.

### B.    Requests for Judicial Notice

Next, Alexandre files three "requests for judicial notice": one seeking acknowledgment of certain statements by SEC Chair Paul Atkins regarding past enforcement errors and of various letters of support filed by former EminiFX customers, *see* Dkt. 548, another seeking acknowledgment of certain congressional action concerning the regulation of digital assets, *see* Dkt. 572, and another concerning SEC and CFTC guidance regarding the regulation of cryptocurrency assets, *see* Dkt. 579.

10

Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  The Court need not decide whether the materials Alexandre has presented to the Court are judicially noticeable because, even assuming that they are, none is relevant.

With respect to the materials described in the first request, the Court notes that Mr. Atkins's statements do not concern the CFTC, Alexandre, EminiFX, or anything else of relevance in this case.  The supportive letters from investors are also irrelevant; they simply show that certain former EminiFX customers continue to believe the company was legitimate despite Alexandre's own guilty plea in which he admitted that it was not.  The Court need not believe Alexandre's lies or ignore his prior admissions simply because others do.

With respect to the second and third requests, the sole materials about which Alexandre requests the Court take notice are news articles that describe evolving regulatory frameworks affecting cryptocurrency and digital markets.  The articles are irrelevant.  The crux of this case is that Alexandre was *not* trading in digital asset markets or any other markets, but, rather, he was committing fraud by running a Ponzi scheme.

Because the matters about which Alexandre requests the Court take judicial notice are entirely irrelevant to any issue in this case, the requests are DENIED AS MOOT.

**C.      Motion for Accounting, Enhanced Fee Review, and Conditional Surcharge**

Finally, Alexandre moves for an order adopting various procedural safeguards to constrain the power of the Receiver, including "a detailed cost-benefit accounting of all litigation activities referenced in the [Receiver's] Fifteenth Status Report," "enhanced disclosure of

projected future litigation costs and anticipated net recoveries," "a framework for review of future professional fees," a "conditional surcharge or fee reduction" to be applied if "the accounting demonstrate[s] that certain litigation has not produced a net economic benefit to the Receivership Estate," and "a timetable for wind-down and distribution." Dkt. 574 at 1.

The motion is DENIED. The purpose of the Receivership is to protect the interests of Alexandre's victims. Alexandre is in no position to raise concerns about whether the Receiver is effectively doing his job. The Court is satisfied that the Receiver has acted in the best interest of Alexandre's victims pursuant to the frameworks established by the Court and does not credit Alexandre's conclusory allegations to the contrary.

## CONCLUSION

For the foregoing reasons, the CFTC's motion for a permanent injunction and civil monetary penalty is GRANTED. The Court will enter a separate order setting out the terms of the injunction and penalty. The Clerk of Court is directed to terminate the open motion at Dkt. 529.

The Receiver's motion for approval of its proposed process for the protection of privileged materials is GRANTED IN PART. Not later than **Monday, June 22, 2026**, the Receiver must file a letter proposing a deadline by which he will retain an independent group of lawyers to serve on the Clean Team and the fee structure for their work. Once retained, members of the Clean Team must file (1) notices of limited-scope representation pursuant to Local Civil Rule 1.4, confirming that they have been retained by the Receiver for the sole purpose of serving on the Clean Team, and (2) sworn declarations from each member of the Team confirming that he or she (i) will comply with the review protocol outlined in Section II of this Order and (ii) is not otherwise involved with this action or any related actions and has not

invested money with Alexandre or EminiFX.  The Clerk of Court is directed to terminate the open motions at Dkts. 535 and 536.

The Receiver's motion to approve its proposed settlement with the Maisonneuves is GRANTED.  The Clerk of Court is directed to terminate the open motion at Dkt. 556.

Mr. Alexandre's various motions are DENIED.  The Clerk of Court is directed to terminate the open motions at Dkts. 547, 556, 557, 565, and 574.  Given the lack of legal authority for Mr. Alexandre's motions, the Court hereby certifies pursuant to 28 U.S.C. § 1915(a)(3) that any interlocutory appeal of this order would not be taken in good faith. Permission to proceed *in forma pauperis* on appeal of this order is, therefore, DENIED.

To the extent Mr. Alexandre makes additional filings in this action, the CFTC and the Receiver need not respond unless and until the Court directs them to do so.

**SO ORDERED.**

Date:   June 12, 2026
        New York, NY

_____
        **VALERIE CAPRONI**
        **United States District Judge**