MEMO ENDORSED

14897557.3.2-19



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMMODITY FUTURES TRADING COMMISSION,

Plaintiff,

-against-

EDDY ALEXANDRE and EMINIFX, INC.,

Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/07/2026

Case No.: 22 Civ. 3822 (VEC)
Hon. Valerie E. Caproni, U.S.D.J.

**DEFENDANT EDDY ALEXANDRE'S EMERGENCY MOTION FOR INVESTOR PROTECTION AND SUBSTANTIAL INTERIM DISTRIBUTION OF RECEIVERSHIP ESTATE**

## PRELIMINARY STATEMENT

Defendant Eddy Alexandre, pro se, Reg. No. 00712-510, moves this Court on an emergency basis for an order directing the Receiver to make a substantial interim distribution to investor claimants from the receivership estate, currently holding $50,099,034 as of June 30, 2026 per the Receiver's own Standardized Accounting Report (Dkt. 616-1).

Thirty thousand investors have waited four years and four months for the return of their funds. In the second quarter of 2026 alone, the Receiver billed $560,550 in professional fees while distributing only $219,266 to investors — a ratio of 2.5 to one against the very people this

14897557.3.3-19



receivership was created to protect. Every quarter the estate sits uninvested, the professional fee drain reduces the funds available to investors. The receivership has fulfilled its identification and claims-processing functions. The time for a substantial distribution has arrived.

## I. THE RECEIVERSHIP ESTATE HOLDS $50 MILLION WHILE INVESTORS WAIT AND FEES ACCRUE

The Receiver's own Standardized Fund Accounting Report for the period ending June 30, 2026 (Dkt. 616-1) confirms the following:

| | |
|---|---|
| Beginning balance (April 1, 2026): | $51,138,565 |
| Interest income Q2 2026: | $184,703 |
| Disbursements to investors Q2 2026: | ($219,266) |
| Receivership operations Q2 2026: | ($1,004,968) |
| Professional fees Q2 2026: | ($974,243) |
| **Ending balance (June 30, 2026):** | **$50,099,034** |

In the second quarter of 2026, the Receiver distributed $219,266 to investors while billing $974,243 in professional fees — not counting operational expenses. The total professional fee drain in Q2 2026 was $560,550: $46,920 for the Receiver himself, $267,603.37 + $1,386.89 for Otterbourg P.C., $97,580.50 + $18,496.90 for JS Held forensics, $8,875 + $454 for Deloitte Tax,

14897557.3.4-19



$3,714.50 for Crowe, and $114,985 + $542.05 for Stretto. This quarterly fee burden depletes the estate at a rate that dwarfs investor distributions.

This pattern is not new. It has repeated every quarter for four years. The receivership's primary purpose — protecting investors — is being subordinated to the ongoing billing interests of the professional firms it employs.

## II. THE RECEIVER'S ACCOUNTING IS MATERIALLY INCOMPLETE: THE $49/MONTH SUBSCRIPTION REVENUE HAS NEVER BEEN DISCLOSED OR CREDITED

Every accounting report the Receiver has filed treats EminiFX's operational expenses as evidence of investor harm. Not one report discloses the contractual subscription revenue that funded those expenses.

EminiFX had approximately 30,000 investor-members. Each paid $49 per month — a contractually agreed membership fee generating approximately $1,470,000 per month in operational revenue. Over EminiFX's eight months of operation (September 2021 through May 2022), this constitutes approximately $11,760,000 in subscription revenue. This revenue was designed to fund exactly the operational expenses the Receiver characterizes as investor losses: professional staffing through Robert Half, compliance infrastructure through KROLL and Merkle Science, office space at 31 West 34th Street, technology development.

The EminiFX database — which the Receiver has had in his possession since 2022 and which he used to identify and pay investor claimants — contains 30,000 individual invoices and receipts

14897557.3.5-19



documenting each monthly payment. Every $49 charge was invoiced, receipted, and recorded. The Receiver has never disclosed this revenue in any quarterly accounting report. He has never credited it against the operational expenses he characterizes as misappropriation.

A receivership whose accounting omits $11.76 million in contractual subscription revenue while presenting every operational expense as investor loss has not produced a GAAP-compliant financial picture. It has produced a prosecution narrative. This Court should require the Receiver to produce a corrected accounting that discloses and credits the $49/month subscription revenue before approving any further fee applications or finalizaing any loss calculation.

## III. THE RECEIVERSHIP GROSSLY UNDERVALUES THE ACTUAL INVESTMENT ASSETS

The Receiver's accounting has consistently failed to credit the full investment picture. EminiFX deployed investor funds into documented investment positions across multiple platforms:

### A. The $107 Million Bitcoin — Liquidated at the Market Bottom

At the time of the CFTC freeze on May 12, 2022, the CoinPayments account held over $107 million in Bitcoin. This was real, documented, invested capital — 100% of it in a named exchange-based custody account. The Receiver did not access or liquidate this Bitcoin until November 2022, when Bitcoin's price had fallen from approximately $37,000 (May 2022) to approximately $16,000 — a 57% decline. The Receiver liquidated $107 million in Bitcoin assets at or near historic lows, realizing approximately $58 million. The approximately $49 million in value destroyed by the Receiver's liquidation timing decision is not investor loss caused by

14897557.3.6-19



Defendant. It is a loss caused by the Receiver's own market decisions. The receivership accounting has never addressed this distinction.

**B. The Real Estate Portfolio**

EminiFX acquired 46 residential properties through competitive court foreclosure auctions with a licensed professional real estate team, bank appraiser, and formal entity structure (Alexandre Estates LLC). These acquisitions were publicly disclosed to EminiFX members at weekly Thursday night meetings, documented in member recordings, and funded by traceable EminiFX capital. The Receiver has valued these properties using Broker Price Opinions — not GAAP-compliant appraisals. No Daubert hearing has ever been held on the Receiver's real estate methodology. No challenge has been permitted.

**C. The Trading Accounts**

EminiFX deployed capital into active trading across multiple platforms: $9 million+ to Interactive Brokers (Sharpe ratio of 3.96, since-inception return of +99.58% per the IBKR PortfolioAnalyst report); $960,000 to KOT4X for FOREX trading with documented profitable sessions; $600,000+ to Gemini for cryptocurrency holdings. These were real, active, documented investment positions. The IBKR trading losses that the Receiver cites as evidence of fraud were caused by trading restrictions the CFTC's own compliance file (F3371937/CFTC Large Trader Registration) placed on the account in March 2022 — before the arrest.

## IV. THE RECEIVERSHIP HAS FULFILLED ITS CORE FUNCTIONS: A SUBSTANTIAL DISTRIBUTION IS NOW APPROPRIATE

14897557.3.7-19



A receivership exists to protect investors by identifying assets, processing claims, and returning funds. After four years and four months, the Receiver has:

- ▸ Identified the investor pool (approximately 30,000 members)
- ▸ Processed investor claims and established distribution classes
- ▸ Liquidated the primary cryptocurrency holdings
- ▸ Made an initial distribution to qualifying investor claimants
- ▸ Completed affirmative litigation against third parties

The core receivership functions are substantially complete. The $50 million currently in the estate belongs to investors. Every day it remains uninvested and subject to a $560,000+ quarterly fee drain is a day investors lose money to overhead rather than receive it as distribution.

The Receiver's continued pursuit of Defendant's personal cell phone, Apple ID account, Gmail account, laptop, and answers to questions about the $5 million — all protected by the Fifth Amendment and all currently on appeal — serves no investor interest. It generates professional fees. The investors this receivership was created to protect are watching $560,000 per quarter leave their estate in fees while their distribution sits in a bank account earning minimal interest.

## V. THE COURT HAS EQUITABLE AUTHORITY TO ORDER A SUBSTANTIAL INTERIM DISTRIBUTION

14897557.3.8-19



This Court has broad equitable authority over the receivership estate. *SEC v. Forex Asset Mgmt. LLC,* 242 F.3d 325, 331 (5th Cir. 2001) (district courts have broad equitable authority to order distributions in receivership proceedings when investor claims have been verified and assets identified). The core prerequisites for a substantial distribution are met: investor claims have been verified, assets have been identified and partially liquidated, and the estate holds $50 million in cash.

Defendant respectfully requests that this Court order a substantial interim distribution of at least 50% of the current estate balance — approximately $25 million — to investor claimants in the established distribution classes, with the remaining balance retained for final distribution pending resolution of (1) the pending civil appeal in the Second Circuit (No. 26-2467), (2) the pending § 2255 motion before Judge Cronan, and (3) any outstanding third-party claims.

Additionally, Defendant requests that this Court require the Receiver to file a corrected accounting that (1) discloses and credits the $49/month subscription revenue from approximately 30,000 members over eight months of operation; (2) separately identifies the losses attributable to the Receiver's November 2022 Bitcoin liquidation timing rather than attributing them to Defendant; and (3) values the real estate portfolio using GAAP-compliant appraisals rather than Broker Price Opinions.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court:

(1) Order a substantial interim distribution of at least $25 million to investor claimants immediately, from the $50,099,034 confirmed as of June 30, 2026;

(2) Require the Receiver to file a corrected Standardized Accounting Report disclosing the $49/month subscription revenue from 30,000 members over eight months of operation, approximately $11,760,000, and crediting it against the operational expenses he characterizes as investor losses;

(3) Require the Receiver to separately account for losses attributable to his own November 2022 Bitcoin liquidation timing decision versus losses attributable to Defendant's conduct;

(4) Order a GAAP-compliant appraisal of the real estate portfolio and hold any further fee applications in abeyance until a corrected accounting is filed; and

(5) Grant such other and further relief as is necessary to protect the interests of the 30,000 investor-members whose funds have been held in this receivership for over four years.

Dated: September 18, 2026
Brooklyn, New York

Respectfully submitted,

/S/ Eddy Alexandre

Eddy Alexandre, pro se
Former CEO & Founder of EminiFX
Reg. No. 00712-510
MDC Brooklyn, Unit 71-J-A

14897557.3.10-19



P.O. Box 329002
Brooklyn, NY 11232

**CERTIFICATE OF SERVICE**

I hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 and 18 U.S.C. § 1621 that on September 18, 2026, I caused a true and complete copy of the foregoing to be served by depositing same for mailing via first-class United States mail service. Defendant respectfully requests the Clerk serve all parties via ECF as Defendant is unable to make copies at this time.

1 — Clerk of Court, U.S. SDNY, 500 Pearl Street, New York, NY 10007-1312

2 — Daniel C. Jordan, CFTC, 1155 21st Street NW, Washington, DC 20581 (ECF)

3 — David Castleman, Receiver, c/o Otterbourg P.C., 230 Park Avenue, New York, NY 10169 (ECF)

Done under Houston v. Lack, 487 U.S. 266 (1988).

/S/ Eddy Alexandre

______________________________

Eddy Alexandre, pro se
Reg. No. 00712-510

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
PAID
LETTERSTREAM

RECEIVED
SDNY PRO SE OFFICE
2026 OCT -2 AM 10: 13

Eddy Alexandre
Reg No 00712-510
MDC Brooklyn
Brooklyn NY 11232

RECEIVED
OCT 1 - 2026
CLERK'S OFFICE
S.D.N.Y.

Pro se

0014897557000010
The Clerk of Court
SDNY (MYC/
500 Pearl Street
New York NY 10007-1312
USA

SDNY

968204975 21 HBD6NF4 10007

Application DENIED. Mr. Alexandre is in no position to raise concerns regarding distribution or accounting of the Estate, which consists solely of stolen funds to which Mr. Alexandre has no entitlement.

The Receiver has already made distributions from the estate totaling approximately $100 million, which was a majority of the $152 million held in the Receivership at the time of distribution. *See* Dkt. 434. Moreover, as the Receiver has explained in multiple filings over a lengthy period of time, *see, e.g.*, Dkt. 603, "[t]he Receiver anticipates conducting a Second Distribution likely in 2027, *following resolution of various outstanding tax matters*." (emphasis added). The Court finds it accordingly prudent, consistent with the Receiver's explanation, for the Estate to retain the funds it currently holds until resolution of these tax issues.

Lastly, as to the accounting of the Estate, the Receiver has retained a qualified accountant to assist in its administration of the Estate. The Receiver has appropriately and effectively carried out his duties to date, and the Court has no reason to speculate that he will not continue to do so.

The Clerk of Court is respectfully directed to terminate the open motion at Dkt. 633, and to mail a copy of this Order to Mr. Alexandre at BOP Reg. No. 00712-510, MDC Brooklyn, P.O. Box 329002, Brooklyn, NY 11232.

SO ORDERED.

Valerie Caproni 10/07/2026

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE