15130567.3.4-13

**MEMO ENDORSED**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/10/2026

RECEIVED
SDNY PRO SE OFFICE
2026 NOV -5 AM 8:21

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

COMMODITY FUTURES TRADING COMMISSION,
Plaintiff,

v.

EDDY ALEXANDRE and EMINIFX, INC.,
Defendants.

**22 Civ. 3822 (VEC)**

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT EDDY ALEXANDRE'S MOTION FOR A STAY OF THE CIVIL CONTEMPT ORDER (DKT. 609) PENDING APPEAL

## PRELIMINARY STATEMENT

Defendant Eddy Alexandre, who appears *pro se* from the Metropolitan Detention Center in Brooklyn, moves under Federal Rule of Appellate Procedure 8(a)(1)(A) for a stay, pending his appeal to the Second Circuit, of the Court's civil contempt order of August 13, 2026 (Dkt. 609), including its direction that he be held at MDC Brooklyn, so that the Bureau of Prisons may place him as it sees fit while he serves his sentence in *United States v. Alexandre*, No. 22 Cr. 326 (JPC). He does not ask the Court to stay the Google Order (Dkts. 635, 636), the Clean Team protocol (Dkt. 586), or any act of the Receiver, including distributions to victims.

Mr. Alexandre first asked for this relief in Dkt. 615, his handwritten Emergency Notice of Appeal and Emergency Request to Stay Enforcement Pending Appeal, which the Clerk received on August 24, 2026. This motion renews and supplements that request to the extent it remains undecided. He has also asked the Court of Appeals for the same stay (2d Cir. No. 26-2467, DktEntry 32.1). The Receiver has told that court that Mr. Alexandre did not move here first. Receiver's Opposition, DktEntry 34.1 ("Opp.") at 1 n.1. This motion removes the point. Because Rule 8(a)(2)(A)(ii) requires a party who returns to the Court of Appeals to state any reasons the district court gave, he asks for a ruling as soon as the Court can give one and, if the motion is denied in any part, for a statement of reasons.

15130567.3.5-13

The reason for haste is that the days cannot be returned. The Court told Mr. Alexandre that, while he is held under Dkt. 609, "as of today your clock is not running on your criminal conviction." Tr. 40:23-25. Every day of confinement under the order is a day that, on the Court's own account, will not count toward his sentence.

## BACKGROUND

### A. The Contempt Order and the Hearing

Dkt. 609 finds Mr. Alexandre in civil contempt for refusing to obey orders mandating the turnover of two watches and "(2) any relevant information pertaining to the missing cash balances and the alleged currency fraud." It provides that he "is remanded to the custody of MDC Brooklyn until such time that he complies with this Court's orders as referenced above," and that he "will be summoned periodically to appear before this Court to provide updates on whether he will comply with this Court's orders and purge his contempt." It holds in abeyance the motions concerning the laptop and Gmail passwords. *Id.*

At the August 12, 2026 hearing (Dkt. 610-2, "Tr."), the Court explained that the contempt rests on "the watches and the $5 million, for which Mr. Alexandre has said he is not answering questions, and he will not tell us where the watches are or more information about the $5 million." Tr. 40:17-20. It had asked whether he would "provide the location of the two watches and information about what happened to the $5 million." Tr. 37:24-38:1. And it told him that, if he changed his mind, it would "bring you in promptly so that you can provide that information," and would bring him back "until you provide the information that you have now been ordered to provide." Tr. 41:3-8.

Mr. Alexandre had invoked the Fifth Amendment. Asked about "the five things that you need to do," he answered: "I can only answer to one thing without my Fifth Amendment violation." Tr. 19:4-5. Asked whether he was prepared to disclose where the watches are, he answered: "I will not answer anything else beside the password." Tr. 20:4-7. The Court told him,

15130567.3.6-13

"You will be held at the MDC," Tr. 40:25, and that "as of today your clock is not running on your criminal conviction." Tr. 40:23-25.

**B. The Appeal and the Request for a Stay**

Dkt. 615 gave notice of appeal from the contempt finding and asked the Court to stay enforcement pending appeal. The Court has since described it as "Mr. Alexandre's appeal of this Court's contempt finding." Dkt. 635 at 1. On September 15, 2026, the Receiver told the Court that it had not "exercised its discretion to enter a stay pending appeal." Dkt. 625 at 6. Mr. Alexandre moved the Court of Appeals for a stay on September 23, 2026. He did so because papers in this case reach him by mail days after they are entered, which leaves little or no time to respond, and because he has told the Court that he has no CorrLinks access. Tr. 41:10-12. The Receiver's Opposition in the Court of Appeals, for example, was certified as served on October 16, 2026 and reached MDC Brooklyn on October 21. He has also appealed from the Final Judgment (Dkt. 640), and his notice designates Dkt. 609 among the orders that merge into it. The Receiver acknowledges that Dkt. 640 "would likely operate as final judgment from which an appeal could be taken." Opp. 7 n.3.

## LEGAL STANDARD

A party "must ordinarily move first in the district court" for "a stay of the judgment or order of a district court pending appeal." Fed. R. App. P. 8(a)(1)(A). Courts consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) (footnote omitted) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *see also Nken v. Holder*, 556 U.S. 418, 433-34 (2009) (movant bears the burden; first two factors are the most critical). The Second Circuit has described the showing on the merits as "a substantial possibility, although less than a likelihood, of success," and has explained that "[t]he necessary

15130567.3.7-13

'level' or 'degree' of possibility of success will vary according to the court's assessment of the other [stay] factors." *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002) (citations omitted). The factors are applied on a sliding scale, in which "more of one [factor] excuses less of the other." *World Trade*, 503 F.3d at 170 (quoting *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006)).

## ARGUMENT

### I. THERE IS A SUBSTANTIAL POSSIBILITY OF SUCCESS ON APPEAL

#### A. The Order Compels Information, Not a Turnover of Property

The Receiver tells the Court of Appeals that the order could be obeyed "without any testimonial act." Opp. 3. The Court's own words describe something else. The order reaches "any relevant information pertaining to the missing cash balances and the alleged currency fraud." Dkt. 609. The Court explained that the contempt rests on his refusal to "tell us where the watches are or more information about the $5 million," Tr. 40:17-20, and that the way to end it is to "provide that information." Tr. 41:4. Telling a court where property is, or what happened to money, is testimony. Even a bare act of production may "implicitly communicate 'statements of fact'" about existence, possession, and authenticity. *United States v. Hubbell*, 530 U.S. 27, 36-37 (2000). The Court's own explanation for the contempt is that he is "not answering questions." Tr. 40:18-19.

#### B. The Privilege Has Not Ceased to Apply

The Court has held that Mr. Alexandre's guilty plea ended his privilege. Dkt. 516 at 8-9; Tr. 7:4-8:4. He respectfully submits that the Court of Appeals may see it differently. A convicted person keeps the privilege where "adverse consequences" can still "be visited upon the convicted person by reason of further testimony." *Mitchell v. United States*, 526 U.S. 314, 325-26 (1999).

*First*, the danger is not limited to the offense of conviction. The Court itself raised "the issue of the money laundering," and the answer was that it was "separate from the $5 million" but that there was "a possibility that that's in the hands of third parties." Tr. 37:14-20. Dkt. 609

15130567.3.8-13

speaks of "the alleged currency fraud." And the Receiver told the Court that the inquiry is what Mr. Alexandre "(and any others who assisted him) did with the $500,000 in watches and the at least $5 million." Dkt. 625 at 5. The Court's finding that the risk was "not obvious" rested on the premise that the plea agreement gave "coverage from a criminal prosecution perspective of the fraud that was associated with EminiFX." Tr. 7:18-21. Money laundering is not "the fraud that was associated with EminiFX," and the Receiver has identified no term of the plea agreement that reaches it or that restrains any other federal or state prosecutor.

*Second*, a claimant need not prove the hazard "in the sense in which a claim is usually required to be established in court," because then "he would be compelled to surrender the very protection which the privilege is designed to guarantee." *Hoffman v. United States*, 341 U.S. 479, 486 (1951). "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Id.* at 486-87. The privilege applies in "any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory." *Kastigar v. United States*, 406 U.S. 441, 444 (1972). The setting here makes the danger apparent: the Receiver himself anticipates that the Government may seek material recovered from Mr. Alexandre's Gmail account. Dkt. 625 at 6.

*Third*, the conviction is not beyond challenge. Mr. Alexandre's motion under 28 U.S.C. § 2255 is pending (24 Civ. 5767). *Mitchell*'s question is about adverse consequences, not labels, and if relief is granted, statements compelled now could be used on any retrial.

### C. A Sanction That Ends Only If He Gives Up the Privilege Is Not Coercive

Civil contempt is coercive when the contemnor "carries the keys of his prison in his own pocket." *Int'l Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 828 (1994) (quoting *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 442 (1911)). The Court described the key as "provide that information." Tr. 41:4. The only key is to speak, and speaking is what the privilege protects. Immunity is the "rational accommodation" between the privilege and the

15130567.3.9-13

government's power to compel testimony, *Kastigar*, 406 U.S. at 445-46, and no immunity has been offered. Dkt. 609 sets no end date. The Court said it would bring him back "until you provide the information," Tr. 41:6-8, so for as long as he maintains the privilege, the confinement has no end. Whether that is a lawful use of civil contempt is, at a minimum, a substantial question.

## II. MR. ALEXANDRE WILL BE IRREPARABLY HARMED WITHOUT A STAY

Dkt. 609 itself remands Mr. Alexandre to MDC Brooklyn, and the Court told him that "as of today your clock is not running on your criminal conviction." Tr. 40:23-25. The Receiver does not dispute that the Court so held. He answers only that the time "could—if later somehow found to be in error—be applied" to the sentence. Opp. 10-11. That concedes the days are lost unless the order is reversed, and it identifies no mechanism by which anyone could restore them. Loss of liberty time that cannot be recovered after a reversal is the injury a stay exists to prevent. *Nken*, 556 U.S. at 433-34.

## III. A STAY WILL NOT SUBSTANTIALLY INJURE THE RECEIVER

The Receiver's stated interest is "recovering the missing assets for the estate." Opp. 12. A stay of the contempt sanction does not impair it. The Clean Team and Google processes proceed regardless, Dkts. 586, 635, 636, and Dkt. 636 provides that nothing in it relieves Mr. Alexandre of any obligation under the Court's other orders. Dkt. 636 at 4. No distribution depends on the order: the Court found it "prudent . . . for the Estate to retain the funds it currently holds," with the Second Distribution "likely in 2027." Dkt. 638 at 11 (quoting Dkt. 603). The Court also keeps every other tool for enforcing its orders, and may revisit a stay if the Court of Appeals' decision or events in the case warrant.

## IV. THE PUBLIC INTEREST FAVORS A STAY

A stay returns Mr. Alexandre to the custody of the Bureau of Prisons to serve a 108-month sentence. It does not release him into the community, so the public is exposed to no risk. The public interest in enforcing court orders does not extend to enforcing, by confinement, an

15130567.3.10-13

order to testify over a valid claim of privilege. The public interest is served by a correct decision on that question before more time is lost.

## V. ALTERNATIVE RELIEF

If the Court is not inclined to grant the stay in full, Mr. Alexandre asks that it (1) grant it on whatever conditions it finds appropriate; (2) decide the motion on an expedited basis; and (3) if it denies the motion in any part, state its reasons, so that the Court of Appeals has them as Rule 8(a)(2)(A)(ii) requires.

## CONCLUSION

Mr. Alexandre respectfully asks the Court to stay the civil contempt order, Dkt. 609, including its direction that he be held at MDC Brooklyn, pending the appeal and the issuance of the mandate; to decide this motion on an expedited basis; and, if it denies the motion in whole or in part, to state its reasons.

Dated: Brooklyn, New York
October 22, 2026

Respectfully submitted,

/S/ Eddy Alexandre
Eddy Alexandre, *pro se*
Reg. No. 00712-510
MDC Brooklyn
P.O. Box 329002
Brooklyn, New York 11232

15130567 3.12-13

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

COMMODITY FUTURES TRADING COMMISSION,
Plaintiff,

v.

EDDY ALEXANDRE and EMINIFX, INC.,
Defendants.

**22 Civ. 3822 (VEC)**

**[PROPOSED] ORDER STAYING THE CIVIL CONTEMPT ORDER (DKT. 609) PENDING APPEAL**

Upon the motion of Defendant Eddy Alexandre, the supporting Memorandum of Law, and any opposition and reply, and good cause appearing, it is hereby ORDERED that:

1. Pursuant to Federal Rule of Appellate Procedure 8(a)(1)(A), the Court's civil contempt order of August 13, 2026 (Dkt. 609), including its direction that Mr. Alexandre be remanded to and held at MDC Brooklyn, is STAYED pending the determination of his appeal to the United States Court of Appeals for the Second Circuit and the issuance of that Court's mandate.

2. The Bureau of Prisons shall determine Mr. Alexandre's place of confinement for the service of his sentence in *United States v. Alexandre*, No. 22 Cr. 326 (JPC). Nothing in this Order alters that sentence.

3. This Order does not stay the Court's orders at Dkts. 586, 635 and 636, or any act of the Receiver, including distributions to victims.

**SO ORDERED.**

Dated: New York, New York
_____________, 2026

______________________________
VALERIE E. CAPRONI
United States District Judge

15130567.3.13-13

## CERTIFICATE OF SERVICE

I hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 and 18 U.S.C. § 1621 that on October 22, 2026, I caused a true and complete copy of the foregoing Notice of Motion, Memorandum of Law, and [Proposed] Order to be served by depositing same for mailing via first-class United States mail service. Defendant respectfully requests the Clerk serve all parties via ECF as Defendant is unable to make copies at this time — and further requests that any such service, and any service of this Court's endorsement or order on this motion, be made on Defendant by U.S. first-class mail only, and not via CorrLinks.

1 — Clerk of Court, U.S. District Court, S.D.N.Y., 500 Pearl Street, New York, NY 10007-1312

2 — Margaret P. Aisenbrey, Senior Assistant General Counsel, Commodity Futures Trading Commission, 2600 Grand Boulevard, Suite 210, Kansas City, MO 64113 (ECF)

3 — Daniel C. Jordan, Chief Trial Attorney, Commodity Futures Trading Commission, 1155 21st Street NW, Washington, DC 20581 (ECF)

4 — David A. Castleman, Court-Appointed Receiver, c/o Otterbourg P.C. (Attn: Jennifer S. Feeney), 230 Park Avenue, New York, NY 10169 (ECF)

Done under *Houston v. Lack*, 487 U.S. 266 (1988).

Dated: October 22, 2026

/S/ Eddy Alexandre
Eddy Alexandre, *pro se*
Reg. No. 00712-510

15130567.3.1-13

Eddy Alexandre
Reg No. 00712-510
MDC Brooklyn
P.O. Box 329002
Brooklyn NY 11232
LEGAL MAIL

0015130567000010
The Clerk of Court
SDNY (MYC/
500 Pearl Street
New York NY 10007-1312
USA

Application DENIED. In exercising its discretion to grant a stay of a court order pending appeal, the Court considers: (1) whether Defendant has made a strong showing that he is likely to succeed on the merits; (2) whether he will be irreparably injured absent a stay; (3) the balance of the harms; and (4) the public interest. *See Nken v. Holder*, 556 U.S. 433, 434 (2009). Mr. Alexandre has not satisfied any of these requirements.

Mr. Alexandre is unlikely to prevail on his appeal of the Court's civil contempt finding. Despite Mr. Alexandre's creative interpretations of this Court's remarks at his civil contempt hearing, the Court's contempt finding is based on Mr. Alexandre's failure to turn over assets, not for his asserting a Fifth Amendment privilege. *See generally* Dkt. 609. In other words, the turn over of these assets is not a testimonial act. Further, in asserting the privilege, Mr. Alexandre carries the burden of demonstrating that "[t]he danger of self-incrimination [is] real, not remote or speculative." *Est. of Fisher v. Comm'r*, 905 F.2d 645, 649 (2d Cir. 1990). Given that Mr. Alexandre has already pled guilty and been sentenced in his criminal case, it is not clear how he could further incriminate himself in connection with a commodities fraud investigation into EminiFX. The fact that Mr. Alexandre had a motion for post-conviction relief pending, which has since been denied, does not change the analysis. The balance of Mr. Alexandre's arguments regarding the privilege are therefore inapplicable. For this reason alone, Mr. Alexandre's request for a stay is denied.

The Court, however, will briefly address the other factors, none of which favors a stay in this case. Mr. Alexandre does not face a risk of irreparable harm from this Court's civil contempt finding because if that finding is later concluded to be in error, the time Mr. Alexandre has spent incarcerated for civil contempt can be applied to the balance of his criminal sentence. The balance of harms and the public interest also favor continuance of this Court's contempt finding because the purpose of the Court's order is to coerce Mr. Alexandre to cooperate with the Receiver (as he has agreed to do) so that the Receiver can recoup as many assets as possible for return to the victims of Mr. Alexandre's scheme. The public interest favors returning assets to defrauded investors and, as discussed above, Mr. Alexandre faces no irreparable harm if his request for a stay is denied. Accordingly, all factors weigh in favor of denying the stay.

The Clerk of Court is respectfully directed to close the open motion at Dkt. 651.

SO ORDERED.

Valerie Caproni 11/10/2026

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE